UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN I. GEHRICH, on behalf of Himself and other similarly situated Plaintiffs<br>    Plaintiffs,<br>vs.<br><br>CHASE BANK USA, N.A., and<br>JP MORGAN CHASE BANK, N.A.<br>    Defendants. | 1:12-cv-5510<br>Judge Feinerman<br><br><br><br>JURY TRIAL DEMAND |

## PLAINTIFF'S REFILED MOTION FOR CLASS CERTIFICATION

Plaintiff respectfully requests that, pursuant to both Fed.R.Civ.P. 23(b)(2) and 23(b)(3), this Court certify this Telephone Consumer Protection Act case as a class action for the following class of similarly situated persons:

> All persons who, on or after June 15, 2008, either defendant, or someone on its behalf, called or messaged to a cell phone number using an automated dialing equipment and/or a prerecorded or artificial voice where defendants did not obtain the phone number called from the called party, with respect to the subject matter of the account and/or the alleged debt being collected (for example, where the number was obtained through skip tracing or captured by the defendants' equipment from an inbound call, or defendants were calling a wrong number).[1]

Plaintiff further requests that the Court appoint plaintiff Jonathan I. Gehrich as the class representative, and Burke Law Offices, LLC as class counsel.

In further support of this motion, plaintiff states:

1. The TCPA, 47 U.S.C. §227(b) prohibits any person, including debt collection agencies, from calling cell phones using autodialers and/or prerecorded messages; so-called "robocalls." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 745 (2012); *Soppet v. Enhanced*

---
[1] While the bulk of this motion has not changed, plaintiff has altered the proposed class definition and the caption to comport with the Amended Complaint and updated some text and citations. This motion is intended as a placeholder motion, pursuant to *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011). Plaintiff intends to refile this motion after more discovery has been taken.

1

*Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012). Any telephone system that has the capacity to dial numbers without human intervention is a "predictive dialer" and is regulated by the Act. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC Doc. 02-278, 23 FCC Rcd. 559, 566 paragraphs 12-14 (January 4, 2008).

2. Defendants called plaintiff on his cell phone using a predictive dialer and prerecorded message numerous times. Some calls appear to have been made in order to collect a debt from someone other than plaintiff, after it had been informed that it was calling the wrong number and after plaintiff had demanded that the calls stop, and some calls appear to have been directed at plaintiff. There also appear to have been text messages sent to plaintiff's cell phone number. Discovery will show what defendants' intended purpose for these calls was.

3. The United States Supreme Court recently found that federal question subject matter jurisdiction exists for debt collection TCPA claims against creditors, such as this one. The unanimous Court explained the Congressional intent of the law this way:

> In enacting the TCPA, Congress made several findings relevant here. Unrestricted telemarketing, Congress determined, can be an intrusive invasion of privacy. TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings).
>
> In particular, Congress reported many consumers are outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes. Automated or prerecorded telephone calls made to private residences, Congress found, were rightly regarded by recipients as an invasion of privacy.

*Mim*, 132 S.Ct. 740, 745 (2012) (some internal quotation marks and citations omitted, paragraph break supplied).

4. The Seventh Circuit in *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012), explained why "robocalls" like those which are challenged in this case cause so much annoyance and frustration among consumers:

> The machine, called a predictive dialer, works autonomously until a human voice comes on the line. If that happens, an employee in Bill Collector's call center will join the call.

2

> But Customer no longer subscribes to Cell Number, which has been reassigned to Bystander. A human being who called Cell Number would realize that Customer was no longer the subscriber. But predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master.
>
> Meanwhile Bystander is out of pocket the cost of the airtime minutes and has had to listen to a lot of useless voicemail. (We use Bill Collector as the caller, but this simplified description could as easily use an advertiser that relies for consent on earlier transactions with Customer, or a box that Consumer checked on a vendor's web site.)

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

5. Numerous TCPA class actions have been certified. At least two such certification orders, *Balbarin v. North Star Capital Acquisition*, LLC, 2010 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011), and *Mitchem v. Illinois Collection Service*, 271 F.R.D. 617 (N.D. Ill. 2011) were §227(b) autodialer/prerecorded message cases against debt collection agencies, and are analogous to this telemarketing case.

6. So-called "junk fax" TCPA cases, which are regularly certified in this District, are also analogous to this one. The Seventh Circuit recently refused to reverse Judge Bucklo's certification of a TCPA "junk fax" case on any ground other than the adequacy of the questionably truthful class representative in *CE Design Ltd. v. King Architectural Metals, Inc*., 637 F.3d 721 (7th Cir. 2011). While the District Judge was instructed to reevaluate adequacy, the Seventh Circuit stated that the merits of the case, including the defendant's "consent" defense "- win or lose - might well be suitable for determination on a classwide basis." *Id.* at 728.

7. Other TCPA class certifications abound. *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Hinman v. M & M Rental Ctr*., 545 F. Supp. 2d 802 (N.D.Ill. 2008); *Kavu, Inc. v. Omnipak Corp*., 246 F.R.D. 642 (W.D.Wash. 2007); *Gortho, Ltd., v. Websolv*, 03 CH 15615 (Cir. Ct. Cook Co., March 6, 2008); *Travel 100 Group, Inc. v. Empire Cooler Service, Inc*., 03 CH 14510, 2004 WL 3105679 (Cook Co. Cir. Ct.,

Oct. 19, 2004); *Rawson v. C.P. Partners LLC*, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. Ct. App. 2006); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga.App. 363, 537 S.E.2d 468 (2000) (private class actions).

8. Plaintiff files this motion along with the complaint in order to avoid the plaintiff from being "picked off" through a Rule 68 or individual settlement offer under *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011), and respectfully requests that this Court stay briefing on the motion and provide plaintiff sufficient discovery to further support and supplement this motion.

9. All requirements of Rule 23 of the Federal Rules of Civil Procedure have been met.

10. <u>Numerosity</u>. There is no reason to purchase or use a predictive dialer, other than to make a large volume of calls.

11. Furthermore, given the nature of the alleged violations, i.e. making automatically dialed and prerecorded message telemarketing calls, it is reasonable to infer that the defendant made impermissible robocalls to more than the 40 or so individuals necessary to satisfy numerosity. Joinder is therefore impracticable, and numerosity is satisfied for certification purposes. Fed.R.Civ.P. 23(a)(1). Plaintiff requests time enough in briefing this motion in order to obtain discovery on this issue.

12. <u>Common Questions Predominate</u>. There exist common questions of law and fact, which predominate over any individual questions. The class definition ensures that all of class members have identical claims; both factually and legally. Fed.R.Civ.P. 23(a)(2) & 23(b)(3).

4

13. <u>Typicality</u>.  Similarly, the plaintiff's claims are typical of the other class members.  All of the claims are based upon a substantially identical set of facts and circumstances.  Fed.R.Civ.P. 23(a)(3).  The same dialers and similar messages were used for the entire class.

14. <u>Adequacy</u>.  Plaintiff and counsel will fairly and adequately represent the class.  Plaintiff's interests in this litigation are aligned with those of the class, and he has hired a lawyer experienced in class action and consumer litigation.  <u>Exhibit A</u>.  Fed.R.Civ.P. 23(a)(4).

15. <u>Defendant's Actions Applicable Generally</u>.  The defendant has acted or failed to act on grounds generally applicable to each class member, and it is these generalized actions around which this case revolves.  Defendant called each class member on his or her cellular telephone using an autodialer and prerecorded message. Class-wide Injunctive relief under the TCPA 47 U.S.C. §227(b)(3)(A), along with corresponding declaratory relief is therefore appropriate.  Fed.R.Civ.P. 23(b)(2).  All class members, who are the incorrect party, would benefit from the cessation of these annoying calls and defendant's opt-out policy.

16. <u>Superiority</u>.  It is desirable to have this case litigated as a class action because the class mechanism is superior to individual actions. *Hinman*, 545 F. Supp. 2d at 807 (Certifying class in TCPA case, and observing that superiority was met because "resolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources.")  A class action is necessary to determine that defendants' conduct is a violation of law and to redress the class members' statutory damages.   Fed.R.Civ.P. 23(b)(3). The issue of whether defendant's equipment and messages complied with the TCPA predominates over any individual issues that may arise.

17. Because the prerequisites of Fed.R.Civ.P. 23(b)(2) and 23(b)(3) are satisfied, this Court should certify the class. Plaintiff requests that the Court set a briefing schedule for this motion sufficient to permit time for service of the complaint, discovery and the filing of a supplemental memorandum in support of this motion.

18. There is an affirmative defense available to a TCPA creditor defendant like Chase, which may be proven by showing through clear and convincing evidence that it received the phone number it called from the called party, with respect to the alleged debt about which it was calling. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC Doc. 02-278, 23 FCC Rcd. 559, 565 ¶¶ 9-12 (January 4, 2008) ("We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed.") The class in this case is defined so that the defense is not available to any class member, because Chase did not receive any class members' telephone number from the recipients of the calls, with respect to the alleged debt about which it was calling.

WHEREFORE, plaintiff respectfully requests that this Court certify this case as a class action as to the class defined herein, and appoint plaintiff Jonathan I. Gehrich as class representative, and Burke Law Offices, LLC as class counsel.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@tmdwlaw.com
Kimberlee L. Gunning, *Admitted Pro Hac Vice*
Email:  kgunning@tmdwlaw.com
Michael D. Daudt, *Admitted Pro Hac Vice*
Email: mdaudt@tmdwlaw.com
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

# Exhibit A

```
 1  TRANSCRIBED FROM DIGITAL RECORDING

 2                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 3                         EASTERN DIVISION

 4  NICHOLAS MARTIN, on behalf of himself)
    and others similarly situated,       )
 5                                        )
              Plaintiff,                  )
 6                                        )
              vs.                         ) No. 12 C 215
 7                                        )
    DUN & BRADSTREET, INC.; and CONVERGYS)
 8  CUSTOMER MANAGEMENT GROUP, INC.,      ) Chicago, Illinois
                                          ) September 12, 2012
 9            Defendants.                 ) 9:24 A.M.

10             TRANSCRIPT OF PROCEEDINGS - Motion
       BEFORE THE HONORABLE MORTON DENLOW, Magistrate Judge
11
    APPEARANCES:
12
    For the Plaintiff:        ALEXANDER HOLMES BURKE
13                            155 North Michigan Avenue
                              Suite 9020
14                            Chicago, Illinois  60601

15  For Defendant Dun:        ICE MILLER
                              2300 Cabot Drive
16                            Suite 455
                              Lisle, Illinois  60532
17                            BY:  MR. ISAAC J. COLUNGA

18  For Defendant Convergys:  DLA PIPER US LLP IL
                              203 North LaSalle Street
19                            20th Floor
                              Chicago, Illinois  60601
20                            BY:  MR. ALBERT EDWARD HARTMANN

21              PAMELA S. WARREN, CSR, RPR
                   Official Court Reporter
22               219 South Dearborn Street
                         Room 1928
23               Chicago, Illinois  60604
                      (312) 294-8907
24
    NOTE:  Please notify of correct speaker identification.
25  FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS
    UNINTELLIGIBLE.
```

```
 1          (Proceedings held in open court:)
 2          THE CLERK:  12 C 215, Martin versus Dun & Bradstreet.
 3          MR. BURKE:  Good morning, Judge.
 4          THE COURT:  Good morning.
 5          MR. BURKE:  Alexander Burke, B-u-r-k-e, for the
 6  plaintiff.
 7          MR. HARTMANN:  Good morning, your Honor.  Albert
 8  Hartmann, H-a-r-t-m-a-n-n, for defendant Convergys.
 9          MR. COLUNGA:  Good morning, your Honor.  Isaac
10  Colunga, C-o-l-u-n-g-a, on behalf of defendant Dun &
11  Bradstreet.
12          MR. BURKE:  Judge, we're up this morning on the
13  plaintiff's motion to clarify the class certification order.
14  You may recall last time we were in on a status, your Honor
15  certified the class in this case.  The defendants have each
16  filed 23(f) appeals arguing that the certification was not a
17  reasoned order on the elements of class certification but
18  instead was a sanction.
19          THE COURT:  Okay.
20          MR. BURKE:  I thought differently but I thought
21  perhaps we should raise this with your Honor other than
22  speculate in the Court of Appeals.
23          THE COURT:  I appreciate the opportunity.  As you
24  know, I'm going to be retiring at the end of this month, and I
25  just wanted to be sure that this case was in a posture that my
```

successor didn't have to deal with the same issues that I have been dealing with the last eight months.

So to the extent I was not as articulate as I perhaps could have or should have been, I'll be happy to clarify that if counsel would like me to.

MR. HARTMANN: Your Honor, if I may, Mr. Burke's motion for clarification is in essence a supplemental motion for class certification. He puts before your Honor discovery responses and arguments that were never advanced until he filed that motion. So essentially it is kind of a second bite at the apple after your previous order, which he correctly says we view as a discovery sanction against our co-defendant that sweeps (unintelligible). But, more importantly, the one issue that we have addressed several times here is can the class as defined by Mr. Burke be identified.

THE COURT: Okay.

MR. HARTMANN: Convergys, which made the calls, as explained, that it doesn't have access to records that would allow it to do that. Dun & Bradstreet, which has access to certain records, which may allow it to get to the source of the number that was called, has been trying to see if the class as defined is essentially identifiable. And a motion for clarification, frankly, doesn't address that fundamental problem.

So if we're going to go back and have a supplemental

1  motion for class certification, we should be allowed to fully
2  respond to that after the completion of discovery, including,
3  potentially, depositions of the plaintiff or if Mr. Burke needs
4  to depose our people.
5         THE COURT:  Okay.
6         MR. HARTMANN:  Which is what we originally envisioned
7  under the scheduling order.
8         THE COURT:  Okay.  You know, anything you would like
9  to add?
10        MR. COLUNGA:  I would just like to add, your Honor,
11 that the Seventh Circuit has ordered the plaintiff to file a
12 response to our petitions.  I believe that's due on the 26th of
13 this month.  So it seems a little bit redundant that we would
14 be litigating the issues here twice with respect to
15 certain -- I'm sorry -- in both forums.
16        THE COURT:  Okay.  Well, you know, I want the Seventh
17 Circuit to have the full benefit of my reasoning and my
18 rationale, to the extent, as I indicated, I was not perhaps as
19 articulate the first time as I could have been.  To me class
20 certification in this case is a no brainer.  It is a no
21 brainer.  In order to have a class action, it is covered by
22 Federal Rule of Civil Procedure 23, and it requires a two-step
23 analysis to determine if class certification is appropriate.
24        First, the plaintiff must satisfy all four
25 requirements of Rule 23(a).  Numerosity, which clearly exists

here; commonality, which clearly exists here; typicality, which clearly exists here; and the adequacy of the representation. Mr. Burke has extensive experience, and, you know, I have had him in other class actions. He's certainly an adequate representative.

Second, the action must satisfy one of the conditions of Rule 23(b). As I understood what is going on here, plaintiffs seek certification of 23(b)(3).

Is that correct, Mr. Burke?

MR. BURKE: It seeks certification under (b)(2) and (b)(3).

THE COURT: (b)(2). Okay.

Well, clearly under (b)(3) the questions of law or fact are common with the class members, and they predominate over any questions affecting only individual members. And in this type of case, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

What was your point under (b)(2)?

MR. BURKE: Judge, the statute itself permits a plaintiff to ask for injunctive relief. So we have got a (b)(2) class asking for injunctive relief. The defendant treated the plaintiff the same way as all the class members and --

THE COURT: Okay.

1    MR. BURKE: -- so --

2    THE COURT: Okay. And you want them to stop
3    (unintelligible) stop this, is that correct?

4    MR. BURKE: Yes, Judge. The defendant's actions are
5    generally applicable to the class as a whole.

6    THE COURT: Okay. And I would also find that under
7    those circumstances as satisfactory the (unintelligible). So
8    to me -- I mean, I couldn't see an easier class to certify than
9    this one. And I did not want the defendants to continue to
10   benefit by their delay in providing the necessary discovery,
11   which is why I gave you the option that if by a miracle you can
12   come back and establish that this class should not be
13   certified, I'm giving you till -- I forget what date it was --
14   December 19th to come back and seek decertification.

15   So that was my rationale. This is a no brainer class
16   action.

17   MR. BURKE: The plaintiff and the class members were
18   also called using the same equipment that Convergys has
19   actually admitted constitutes an automatic telephone dialing
20   system under the TCPA.

21   THE COURT: And I have given you plenty of time to try
22   to determine whether or not there was any consent here because
23   that can be an issue. You come back with nothing to establish
24   consent. The plaintiff has denied consent. I'm not going to
25   let this case hang around for years while you continue to

dawdle in discovery.

   So it is a class.  I intended it to be a class.  It is a no brainer plaintiff.  It meets all the requirements of 23(a) and 23(b)(2) and (b)(3).  So hopefully you'll share that with the Seventh Circuit because I'm going to be gone as of September 30th, and I wouldn't want them to be confused by my ruling.  And certainly they are free to do what they think is appropriate under the circumstances.

   MR. BURKE:  Thank you, Judge.

   MR. HARTMANN:  Your Honor, understood.  For the record, I just note that, again, the roles of the defendants and the discovery posture is very different, and there is no suggestion Convergys has not provided discovery.  There was no motion to compel.  And part of the -- some elements that you announced today, which were first presented in Mr. Burke's motion, again we haven't had a chance to test the discovery or through responsive briefing which the Court just said is a severe disadvantage.  And, again, none of this gets us any closer to the issue of, can you identify the class.

   Mr. Burke -- as Mr. Burke defined it, we can't just assume that that class is identifiable because we can't tell who it is.  We can't move on them with notice.  We (unintelligible) class certification.

   THE COURT:  Well, hopefully you will proceed with the discovery apace.  It won't be problem.

1      MR. BURKE:  Yeah.  Just one comment on that issue.
2 Dun & Bradstreet's counsel mentioned all along that it was
3 difficult to do an automatic search of records for people who
4 didn't consent.  But they have never said that it was
5 impossible.  They have never -- they have never said it was
6 impossible to do -- to find the people who didn't consent or
7 the people who are in the class.  They have just said it was
8 difficult, but never put forth any evidence as to the burden.
9      THE COURT:  Look, I'm not going to permit defendants
10 to benefit by any action -- by any action.  So that's --
11      MR. COLUNGA:  Your Honor, if I could --
12      THE COURT:  -- that's my ruling.
13      MR. COLUNGA:  -- on behalf of Dun & Bradstreet, if I
14 could just clarify, just to add something of record.  We have
15 continued working.  What we -- we haven't been dawdling.  We
16 have been responding to plaintiff's requests as they come in.
17 They have gotten harsher as time goes on, and we have
18 responded.  We are working.  And we do intend to make a
19 production of documents.  We -- that's always been our
20 intention.  We have never been evading a discovery or
21 intentionally delaying discovery in this case.
22      A couple of --
23      THE COURT:  All right.  The court has a different
24 view.  The court has a different view.
25      MR. COLUNGA:  Okay.

1          THE COURT:  Anything else?

2          MR. COLUNGA:  With respect to just some procedural

3  points, that if this transcript is going to go to the Seventh

4  Circuit, I think it is important to clarify that when the --

5  the only motion for certification that was pending, your Honor,

6  had been mentioned by the plaintiffs, stating that the only

7  purpose that he was filing it with his complaint,

8  contemporaneously with his complaint, was that -- to avoid a

9  pick-off move by the defendant since it would moot his case.

10         The defendants, again, have never had time to brief

11 the issue of class certification.  The -- it was never the

12 parties's intention that the Court would rule on the motion for

13 class certification as it was originally submitted.

14         THE COURT:  No, the motions in front of me, I decided

15 it, and there it is, so --

16         MR. BURKE:  Thank you very much.

17         THE COURT:  Okay.

18         MR. HARTMANN.  Thank you, your Honor.

19    (Which concluded the proceedings in the above-entitled

20 matter.)

21                           CERTIFICATE

22      I HEREBY CERTIFY that the foregoing is a true, correct
   and complete transcript of the proceedings had at the hearing
23 of the aforementioned cause on the day and date hereof.
   */s/Pamela S. Warren*                        September 17, 2012
24 Official Court Reporter                             Date
   United States District Court
25 Northern District of Illinois
   Eastern Division

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN I. GEHRICH, on behalf of Himself and other similarly situated Plaintiffs | ) ) ) | |
| Plaintiffs, | ) | 1:12-cv-5510 |
| | ) | Judge Feinerman |
| vs. | ) | |
| | ) | |
| | ) | |
| CHASE BANK USA, N.A., and | ) | |
| JP MORGAN CHASE BANK, N.A. | ) | JURY TRIAL DEMAND |
| Defendants. | ) | |

## **DECLARATION OF ALEXANDER H. BURKE**

I am Alexander H. Burke, manager of Burke Law Offices, LLC.

In September 2008, I opened Burke Law Offices, LLC. This firm concentrates on consumer class action and consumer work on the plaintiff side. Since the firm began, it has prosecuted cases for consumers under the Fair Debt Collection Practices Act, Fair Credit Reporting Act, Equal Credit Opportunity Act, Electronic Funds Transfer Act, Illinois Consumer Fraud Act, Truth in Lending Act and the Fair Labor Standards Act, among others. The firm also occasionally accepts mortgage foreclosure defense or credit card defense case. Except for debt collection defense cases, the firm works almost exclusively on a contingency basis.

I make substantial efforts to remain current on the law, including class action issues. I attended the National Consumer Law Center Consumer Rights Litigation Conference in 2006 through 2012, and was an active participant in the Consumer Class Action Intensive Symposium at each of those conferences. In October 2009, I spoke on a panel of consumer class action attorneys welcoming newcomers to the conference. In addition to regularly attending Chicago Bar Association meetings and events. I am one of a handful of lawyers, nationally, that speaks on TCPA issues. I conducted a one-hour online CLE on prosecuting autodialer and Do Not Call claims pursuant to the Telephone Consumer Protection Act for the National Association of Consumer Advocates in summer 2012, and spoke on similar subjects at the annual National Consumer Law Center conference in October 2012. On March 8, 2013, I was on a panel that spoke for three hours to both beginner and advanced consumer attorneys, regarding TCPA issues and litigation strategies.

Some notable TCPA class actions other cases that I have worked on include:

*Gold v. YouMail, Inc.*, 2013 WL 652549 (S.D.Ind. Feb. 21, 2013) (granting substantively contested motion for leave to amend to add board of directors as TCPA

defendants); *Swope v. Credit Management, LP*, 2013 WL 607830 (E.D.Mo. Feb. 19, 2013) (denying motion to dismiss TCPA on statutory standing grounds); *Martin v. Leading Edge Recovery Solutions, LLC and Capital One Bank*, 2012 WL 3292838 (N.D.Ill. Aug. 10, 2012) (denying motion to dismiss TCPA case on constitutional grounds); *Soppet v. Enhanced Recovery Co.*, 2011 WL 3704681(N.D.Ill. Aug 21, 2011)(TCPA defendant's summary judgment motion denied); *D.G. ex rel. Tang v. William W. Siegel & Associates, Attorneys at Law, LLC*, 2011 WL 2356390 (N.D.Ill. Jun 14, 2011); *Powell v. West Asset Management, Inc*., 773 F.Supp.2d 898 (N.D.Ill. 2011)(debt collector TCPA defendant's "failure to mitigate" defense stricken for failure to state a defense upon which relief may be granted); *Fike v. The Bureaus, Inc.,* 09-cv-2558 (N.D.Ill. Dec. 3, 2010) (final approval granted for $800,000 TCPA settlement in autodialer case against debt collection agency); *Greene v. DirecTV, Inc*., 2010 WL 1506730 (N.D.Ill. April 14, 2010) (motion to dismiss denied as to class TCPA and FCRA claims); *Donnelly v. NCO Financial Systems, Inc*., 263 F.R.D. 500 (N.D.Ill. Dec. 16, 2009) Fed.R.Civ.P. 72 objections overruled *in toto*, 2010 WL 308975 (N.D.Ill. Jan 13, 2010) (novel class action and TCPA discovery issues decided favorably to class); *Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831 (N.D.Ill. 2008) (FCRA class certification granted); 542 F.Supp.2d 842 (N.D.Ill. 2008) (plaintiffs' motion for judgment on pleadings granted); *Harris v. Best Buy Co.*, 07 C 2559, 2008 U.S. Dist. LEXIS 22166 (N.D.Ill. March 20, 2008) (Class certification granted); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D.Ill. 2008) (FCRA class certification granted); *Redmon v. Uncle Julio's, Inc.*, 249 F.R.D. 290 (N.D.Ill. 2008) (FCRA class certification granted); *Harris v. Circuit City Stores, Inc.*, 2008 U.S. Dist. LEXIS 12596, 2008 WL 400862 (N.D. Ill. Feb. 7,2008) (FCRA class certification granted); aff'd upon objection (Mar. 28, 2008); *Harris v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 76012 (N.D. Ill. Oct. 10, 2007) (motion to dismiss in putative class action denied); *Barnes v. FleetBoston Fin. Corp.*, C.A. No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D.Mass. Aug. 22, 2006) (appeal bond required for potentially frivolous objection to large class action settlement, and resulting in a $12.5 million settlement for Massachusetts consumers); *Longo v. Law Offices of Gerald E. Moore & Assocs.*, P.C., 04 C 5759, 2006 U.S. Dist. LEXIS 19624 (N.D.Ill. March 30, 2006) (class certification granted); *Nichols v. Northland Groups, Inc.*, case nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 U.S. Dist. LEXIS 15037 (N.D.Ill. March 31, 2006) (class certification granted for concurrent classes against same defendant for ongoing violations); *Lucas v. GC Services, L.P.*, case No. 2:03 cv 498, 226 F.R.D. 328 (N.D.Ind. 2004) (compelling discovery), 226 F.R.D. 337 (N.D.Ind. 2005) (granting class certification); *Murry v. America's Mortg. Banc, Inc.*, case nos. 03 C 5811, 03 C 6186, 2005 WL 1323364 (N.D. Ill. May 5, 2006) (Report and Recommendation granting class certification), aff'd, 2006 WL 1647531 (June 5, 2006); *Rawson v. Credigy Receivables, Inc.*, case no. 05 C 6032, 2006 U.S. Dist. LEXIS 6450 (N.D. Ill. Feb. 16, 2006) (denying motion to dismiss in class case against debt collector for suing on time-barred debts).

I graduated from Colgate University in 1997 (B.A. International Relations), and from Loyola University Chicago School of Law in 2003 (J.D.). During law school I served as an extern to the Honorable Robert W. Gettleman of the District Court for the Northern District of Illinois and as a law clerk for the Honorable Nancy Jo Arnold, Chancery Division, Circuit Court of Cook County. I also served as an extern for the

United States Attorney for the Northern District of Illinois and was a research assistant to adjunct professor Honorable Michael J. Howlett, Jr.

I was the Feature Articles Editor of the Loyola Consumer Law Review and Executive Editor of the International Law Forum. My published work includes International Harvesting on the Internet: A Consumer's Perspective on 2001 Proposed Legislation Restricting the Use of Cookies and Information Sharing, 14 Loy. Consumer L. Rev. 125 (2002).

I became licensed to practice law in the State of Illinois in 2003 and the State of Wisconsin in March 2011, and am a member of the bar of the United States Court of Appeals for the Seventh and First Circuits, as well as the Northern District of Illinois, Central District of Illinois, Southern District of Illinois, Eastern District of Wisconsin, Northern District of Indiana and Southern District of Indiana. In 2009-10, I was the vice chair of the Consumer Protection section of the Chicago Bar Association, and was the chair of that group for the 2010-2011 year. I am also a member of the Illinois State Bar Association, the Seventh Circuit Bar Association and the American Bar Association, as well as the National Association of Consumer Advocates.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Chicago, Illinois

March 20, 2013                                                          /s/Alexander H. Burke