IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JONATHAN I. GEHRICH, ROBERT LUND, COREY GOLDSTEIN, PAUL STEMPLE and CARRIE COUSER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CHASE BANK USA, N.A., and JPMORGAN CHASE BANK, N.A.,

Defendants.

NO. 1:12-CV-5510

Honorable Gary Feinerman

**JOINT MEMORANDUM REGARDING CLASS SETTLEMENT'S COMPLIANCE WITH RECENT SEVENTH CIRCUIT CLASS ACTION SETTLEMENT AUTHORITY**

## I. INTRODUCTION

Pursuant to the Court's request, the parties respectfully submit this joint memorandum demonstrating that the Settlement preliminarily approved by the Court comports with the trio of recent Seventh Circuit decisions on class action settlements.[1] (*See* Dkt. No. 120 (relating to *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), and *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)), and Dkt. No. 123 (relating to *Pearson v. NBTY*, Nos.14-1198, -1227, -1245, -1389, --- F.3d ---, 2014 WL 6466128 (7th Cir. Nov. 19, 2014))).

As detailed below, each of the three decisions involved settlements with unique issues, and was markedly different from the Settlement before this Court in the instant case. *Eubank*, unlike this case, involved a reversionary settlement consisting of claims-made coupons as well as very specific facts regarding the conduct of lead class counsel and the original named plaintiff – ethical issues giving rise to a strong inference that the class was "sold out" in exchange for excessive attorneys' fees, $2 million of which was paid before final approval of the settlement.

[1] All capitalized terms herein are used as defined in the Motion for Preliminary Approval of Class Action Settlement filed on August 7, 2014 (Dkt. No. 107-1).

*Redman*, again unlike this case, was a reversionary settlement consisting of only claims-made and non-quantifiable "vouchers" having dubious value to the class in contrast with the guaranteed fees for class counsel. And *Pearson*, also unlike this case, was yet another reversionary settlement with a complicated settlement structure that vastly overstated its value, a complex claim form seemingly designed to discourage claims, an injunction of no value, and excessive attorneys' fees.

As detailed below, none of these concerns identified by the Seventh Circuit are present here. Indeed, as will be further demonstrated in connection with final approval proceedings, the Settlement here is sound and satisfies prevailing Seventh Circuit standards.

## II. THE *EUBANK*, *REDMAN* AND *PEARSON* DECISIONS

### A. *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014).

In *Eubank*, which had been decided and was addressed at the preliminary approval hearing in this action, the Seventh Circuit reversed approval of a class settlement in an action alleging that defendants sold defectively designed casement windows. *Eubank*, 753 F.3d at 721. The facts there were unique and drove the outcome on appeal. The Seventh Circuit took particular issue with the fact that, at the time of the settlement, class counsel was embroiled in an ethical scandal and financial difficulties, suggesting that counsel was more inclined to receive a quick settlement, rather than a valuable settlement for the class. *Id*. at 722, 724. Indeed, the settlement included the unusual provision that class counsel would receive a $2 million advance on their fees even before notice went out, which the court described as "[a]nother suspicious feature of the settlement…." *Id.* at 724. Moreover, the original named plaintiff in the litigation was the father-in-law of lead class counsel, a clear conflict of interest, the "impropriety" of which the Seventh Circuit described as "palpable." *Id*. at 722.

Multiple other problems also permeated the settlement. Among them, the settlement "did not specify an amount of money to be received by the class members as distinct from class counsel." *Eubank*, at 723. Instead, the settlement merely provided a procedure by which class

members could claim "damages." *See id.* ("So there was an asymmetry: class counsel was to receive its entire award of attorneys' fees up front; class members were to obtain merely contingent claims"). Some class members would get coupons while others would only be entitled to a warranty extension, which the Seventh Circuit concluded added nothing of value because that program had already been adopted by defendant before the settlement. *Id*. at 725. Other class members could receive cash, but to get more than $750, the settlement required separate arbitration of such claims, and the arbitrations were subject to a $6,000 cap where defendant retained all defenses. *Id*. at 724-25. Further, the Seventh Circuit found that the settlement "strews obstacles in the path" of class members through the use of a complicated claim process and claim forms which were long and complicated (12-13 pages) and required class members to supply "a slew of arcane data…." *Id*. at 725.

Finally, the Seventh Circuit found the settlement's value was vastly overstated. Whereas the district court believed the value was $90 million, "[t]he claims sought in the aggregate less than $1.5 million and were likely to be worth even less because Pella would be almost certain to prevail in some, maybe most, of the arbitration proceedings." *Id*. at 726. Based on this overstated valuation, the district court approved class counsel's fee petition for $11 million. *Id*. at 726. Compounding the issue of valuation as compared to fees, the settlement contained a provision reverting to defendant, rather than providing for the class' benefit, any court-ordered reduction in attorneys' fees. *Id*. at 723.

**B. *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014).**

Like *Eubank*, the decision in *Redman* is driven by the specific facts of that case. *Redman* was a coupon settlement where the coupons could be used for merchandise purchases at defendant's stores or could be sold. Like the settlement structure in *Eubank*, there was no "fund" and the value to the class was contingent upon class members submitting a claim to receive a $10 coupon, while class counsel was guaranteed $1 million in fees, irrespective of the number of claims submitted. *Id*. at 629. Nevertheless, the district court determined the settlement had a

value of approximately $4.1 million, which it calculated as $830,000 in coupons (assuming that all class members submitted claims), the $1 million fee award, and approximately $2.2 million in administrative costs. *Id*. On this basis, the district court approved the settlement and the fees award as a seemingly reasonable 25% of the total settlement fund. *Id*.

The Seventh Circuit reversed. *Id*. at 640. The Seventh Circuit first addressed extensively the questionable coupon value in the context of that case. *Id.* at 628-29. Second, it found the district court erred by including administrative costs in the settlement value, because administrative costs are not "part of the value received from the settlement by the members of the class." *Id*. at 630. When administrative costs were removed from the calculation, the attorneys' fee award constituted 55% of the total settlement. *Id*. Third, the settlement included a "clear-sailing clause" which, according to the Seventh Circuit, is not unlawful *per se* but is subject to special scrutiny in coupon/non-cash settlements. *Id.* at 637. Fourth, class counsel improperly filed the motion for fees *after* the deadline for objections to the settlement had passed, thereby depriving class members of a meaningful opportunity to object to the fee request. *Id*. at 637-38. Finally, the Seventh Circuit expressed concern about the adequacy of the named plaintiff because he was employed by a law firm for which the class counsel previously worked, possibly in violation of the requirement that there be "a genuine arm's-length relationship between class counsel and the named plaintiffs." *Id*. at 638.

**C. *Pearson v. NBTY, Inc.*, 2014 WL 6466128 (7th Cir. Nov. 19, 2014).**

*Pearson*, the most recent of the cases, also involves very particular facts. In *Pearson*, defendants were required to pay $3 to each class member who submitted a claim form; there was no dedicated "fund" from which those amounts would be paid. 2014 WL 6466128, at *2. The district court valued the settlement at $20.2 million, comprised of more than $14 million in potential value for class members (assuming that each of the approximately 5 million class members receiving direct notice would submit a claim), $1.5 million in administrative costs, and

$4.5 million in attorneys' fees.[2] *Id*. The district court ultimately reduced the attorneys' fee award to $1.93 million, but continued to value the settlement at $20.2 million, despite the fee reduction, and although only approximately 30,000 class members submitted claims. *Id*.

The Seventh Circuit reversed, finding the district court's "$20.2 million figure has barely any connection to the settlement's value to the class" because it included both notice and fees in the calculation, which are properly considered "costs, not benefits" to the class. *Id*. Moreover, the reduced fee award of $1.93 million was an "outlandish 69 percent" of the aggregate value of the benefit to the class (approximately $900,000) plus the fees award. *Id*. at *3. Regarding attorneys' fees awards in consumer class actions, the Seventh Circuit announced a general "presumption" that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Id.* at *4.

The Seventh Circuit further attributed the low claims rate to the complex claim form provided by the settlement, stating it was "bound to discourage filings." *Id*. at *4-5. Moreover, the Seventh Circuit disapproved of the use of a "kicker clause" in the settlement, essentially a reversion, which provided that if the amount of fees to class counsel is reduced, the savings will revert to the defendant rather than the class, calling the clause a "gimmick for defeating objectors." *Id.* at *8. The Seventh Circuit also disapproved of the *cy pres* distribution in the settlement, because those awards are "supposed to be limited to money that can't feasibly be awarded to the intended beneficiaries, here consisting of the class members." *Id*. at *6. Finally, the Seventh Circuit was especially critical of the injunctive relief in the settlement, which it found to be "superfluous--or even adverse to consumers." *Id*. at *7.

[2] The settlement also included a guaranteed *cy pres* payment of $1.3 million, but the district court declined to include this amount as part of the settlement value. *Id*. at *2.

## III. THE GEHRICH SETTLEMENT MEETS THE SEVENTH CIRCUIT'S STANDARDS.

### A. The Gehrich Settlement Provides Real Cash Value to the Class.

Unlike the reversionary settlements in the three Seventh Circuit cases, the Settlement here requires defendants Chase Bank USA, N.A. and JPMorgan Chase Bank, N.A. (together "Chase" or "Defendants"), to establish an actual, non-reversionary cash fund of $34 million—all of which (net of costs of notice claims administration, attorneys' fees, and a *cy pres* distribution)—will be paid to the Settlement Class regardless of the number of claims submitted. Furthermore, the Settlement provides for cash payments—not coupons—to Settlement Class Members who submit claims via a short, straight-forward claim form. As a result, approximately $19 million in actual cash will be distributed to Settlement Class Members who submit a valid claim form. That is real—not illusory—value to the Settlement Class in the form of actual cash payments, which is a significant difference between this Settlement and those addressed by the Seventh Circuit. Additionally, the class representatives have no relationship with Class Counsel, a fact very much different from *Eubank* or *Redman*. Moreover, the notice plan and claim forms here are straightforward and satisfy the Federal Judicial Counsel Guidelines. Finally, the fees sought by Class Counsel are within the presumptively reasonable range suggested by the Seventh Circuit in *Pearson*.

A key distinction between the proposed Settlement in the instant action compared to the settlements in *Eubank*, *Redman* and *Pearson*, is that the Settlement here provides for a dedicated, non-reversionary "true" cash Settlement Fund of $34 million, none of which will revert to Chase. The Settlement Fund will be used to pay: (1) cash settlement awards to eligible Settlement Class Members; (2) $1 million to the Consumer Federation of America ("CFA") on behalf of Alert Call Subclass Members ("Dedicated *Cy Pres* Distribution");[3] (3) notice and administration costs (estimated at $2.9 million); (4) court-approved attorneys' fees and costs up to $11 million; and

[3] Pursuant to the Settlement, members of the "Alert Call Subclass" are not entitled to a cash payment.

(5) court-approved service payments to Plaintiffs (up to $1,500 each). (Dkt. No. 107-2 (Settlement Agreement) § III.D.–H.) Accordingly, approximately $19 million in actual cash value will be distributed to the Settlement Class, regardless of the number of claims made. Class Counsel estimate that the cash award to claiming Settlement Class Members will be approximately $20–40. After deducting notice and administration costs, and the Dedicated *Cy Pres* Distribution, the aggregate value of Settlement Class Member payouts plus the requested attorneys' fees award is $30,006,775, far higher than the actual class benefits provided in *Eubank*, *Redman* and *Pearson*.

From this standpoint, the Settlement in the instant case is more like that in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980), which the Seventh Circuit described in *Pearson*:

> [I]n that case [*Boeing*] the "harvest" created by class counsel was an actual, existing judgment fund, and each member of the class had "an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* at 479. "Nothing in the Court's order made Boeing's liability for this amount contingent upon the presentation of individual claims." *Id.* at 480, n. 5. The class members were known, the benefits of the settlement had been "traced with some accuracy," and costs could be "shifted with some exactitude to those benefiting." *Id.* at 480–81.

2014 WL 6466128 at *3. Here, as in *Boeing*, the Settlement allows Settlement Class Members to reap the benefits of a substantial Settlement Fund well in excess of $30,000,000.

Moreover, the Settlement does not contain a "kicker clause," which would revert any unapproved attorneys' fees to Defendants. Here, if the Court does not approve any portion of Class Counsel's requested fee, the Plaintiffs' requested incentive awards, or the settlement administration expenses, the funds will be distributed to claiming Settlement Class Members, not to Defendants. (Dkt. No. 107-2 (Settlement Agreement) § III.D, H.3.)

**B. The Class Representatives Are Actual Fiduciaries to the Class.**

There also is no concern here that the class representatives are conflicted as was the case in both *Eubank* and *Redman*, where the class representatives had either personal or professional

relationships with class counsel. In response, the Seventh Circuit took the opportunity to "remind the class action bar of the importance of insisting that named plaintiffs be genuine fiduciaries, uninfluenced by family ties (as in *Eubank*) or friendships." *Redman*, 768 F.3d at 638.

Here, Class Counsel are genuine fiduciaries to the Settlement Class. Although Plaintiff Gehrich formerly worked as an intern for the Saeed & Little law firm, he is no longer employed there and was not employed at the time that the parties reached the Settlement. (*See* Ex. 1 (Saeed Decl.)). None of the other class representatives are related in any manner to Class Counsel. (*See* Ex. 2 (Terrell Decl.) ¶ 2; Ex. 3 (Burke Decl.) ¶ 3; Ex. 4 (Friedman Decl.) ¶ 2; Ex. 5 (Swigart Decl.) ¶ 2; Ex. 6 (Kazerounian Decl.) ¶ 2; Ex. 7 (Ankcorn Decl.) ¶ 2; Ex. 8 (Blatt Decl.) ¶ 2.) Accordingly, the proposed Settlement does not implicate this "red flag."

**C. The Forms of Notice and Claim Form Are Clear and Simple.**

The concerns over deficient class notice and needlessly complex claim forms plainly are not present in this case. In comparison to the notice and claim forms that caused the Seventh Circuit concern in *Eubank*, *Redman* and *Pearson*, the Settlement here provides for clear, easily-understandable notice and claim forms. The notice program includes direct notice to members of the Settlement Class for whom Defendants have names, addresses and/or e-mail addresses in their records, and publication notice calculated to reach persons in the Settlement Class who, for whatever reason, may not receive direct notice. (Dkt. No. 107-2 (Settlement Agreement) § III.E–F.) Thus far, the notice program appears to have reached via direct notice (emails and postcards) between 94 and 98% of the known Settlement Class Members. (Ex. 2 (Terrell Decl.) ¶ 3.) This direct notice was supplemented by notice published in three nationally-circulated magazines, *People*, *Better Homes and Gardens*, and *Sports Illustrated*.

Furthermore, the email and postcard notices that Settlement Class Members received are clearly-written, informative, and to the point. Settlement Class Members who want further information regarding the Settlement may visit the website dedicated to the Settlement where

they may read a detailed notice. Moreover, the email and postcard notices are designed to encourage claims, allowing a Settlement Class Member to submit the form by mail or online, and, importantly, only requiring the Settlement Class Member to check a box and sign his/her name to receive a cash payment. Finally, a telephone line has been set up to assist Settlement Class Members with submitting claims.

The result of these efforts suggests that the parties' notice program has been successful in encouraging participation in the Settlement. As of December 3, 2014, 103,562 Settlement Class Members have submitted claims with the deadline to file claims on February 9, 2015. (Ex. 2 (Terrell Decl.) ¶ 4.) For this reason, the "red flag" issues of a defective notice or improper claim form do not exist here.

### D. The "Clear Sailing" Clause in the Gehrich Settlement Is Not an Issue Because This Is a Cash Settlement.

The concern over a "clear sailing" clause, which is a clause in which defendant agrees not to contest class counsel's request for attorneys' fees, also is not present here. *Redman*, 768 F.3d at 637. The Seventh Circuit explained in *Redman* that clear sailing clauses "should be subjected to intense critical scrutiny" when they are included as a provision in a non-cash award settlement. *Id.* Importantly, the Seventh Circuit's concern is not implicated by the clear sailing clause in the Settlement here because Chase is providing a real cash fund for the Settlement Class—the total amount of which the parties negotiated *prior to* any discussions about Class Counsel's fee. Moreover, in the event that the attorneys' fees award is reduced by this Court, any reduction in the fees would benefit the Settlement Class, not revert to Chase. (*See, e.g.*, Dkt. No. 107-2 (Settlement Agreement) § III.D, H.3.)

### E. The Requested Fees Are Consistent with *Eubank*, *Redman* and *Pearson*.

The proposed Settlement's inclusion of up to $11 million in fees for Class Counsel is well within the range of what is presumptively reasonable under the recent Seventh Circuit precedent. In *Pearson*, the Seventh Circuit announced a "presumption" that in consumer class cases, the attorneys' fees awarded "should not exceed a third or at most a half of the total amount

of money going to class members and their counsel." *Pearson*, 2014 WL 6466128 at *4. Here, Class Counsel have requested $11 million—a figure well within the range that is presumptively reasonable pursuant to *Pearson*.

Specifically, after removing costs associated with administration, notice, and the Dedicated *Cy Pres* Award, the net value of the Settlement is more than $30 million. If approved, the requested $11 million fee would amount to approximately 37% (36.67%) of the Settlement Fund.[4] Moreover, unlike *Redman*, this Settlement calls for Class Counsel to file their fee petition well in advance of the objection deadline, and thus provides Settlement Class Members a fulsome opportunity to object to Class Counsel's requested fee if they choose to do so. Finally, this Court retains the discretion to review Class Counsel's fee petition once it is filed, and determine whether the fee amount requested is reasonable in light of the value to Settlement Class Members of this Settlement. This issue is no impediment under the recent Seventh Circuit cases.

## IV. CONCLUSION

For the foregoing reasons, the parties respectfully submit that the Settlement is not infected by the issues of concern to the Seventh Circuit as reflected in its recent rulings. Indeed, applying the reasoning of the Seventh Circuit in those cases, the Settlement easily meets the standards for approval.

---

[4] For purposes of calculating this percentage, the $1,000,000 Dedicated *Cy Pres* Distribution is not calculated as value to the Settlement Class. In addition, no value is placed on the component of the Settlement which provides for the Class Notice to include instructions as to how Settlement Class Members may opt-out or withdraw consent to Automatic Alerts.

RESPECTFULLY SUBMITTED AND DATED this 3rd day of December, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*

Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@tmdwlaw.com
Michael D. Daudt, *Admitted Pro Hac Vice*
Email: mdaudt@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

Alexander H. Burke
Email: aburke@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

Syed Ali Saeed, *Admitted Pro Hac Vice*
Email: ali@sllawfirm.com
SAEED & LITTLE, LLP
1433 North Meridian Street, Suite 202
Indianapolis, Indiana 46202
Telephone: (317) 614-5741
Facsimile: (888) 422-3151

Gayle M Blatt
Email: gmb@cglaw.com
CASEY, GERRY, SCHENK, FRANCAVILLA, BLATT & PENFIELD LLP
110 Laurel Street
San Diego, California 92101-1406
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

STROOCK & STROOCK & LAVAN LLP

By: /s/ Julia B. Strickland

Julia B. Strickland
Email: jstrickland@stroock.com
Lisa M. Simonetti
Email: lsimonetti@stroock.com
Arjun P. Rao
Email: arao@stroock.com
Julieta Stepanyan
Email: jstepanyan@stroock.com
2029 Century Park East Suite 1600
Los Angeles, California 90067-3086
Telephone: (310) 556-5800
Facsimile: (310) 556-5959

Kenneth Michael Kliebard
Email: kkliebard@morganlewis.com
Tedd Macrae Warden
Email: twarden@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: (312) 324-1774
Facsimile: (312) 324-1001

*Attorneys for Defendants*

Mark D. Ankcorn
Email: mark@ankcorn.com
ANKCORN LAW FIRM, PC
11622 El Camino Real, Suite 100
San Diego, California 92130
Telephone: (619) 870-0600
Facsimile: (619) 684-3541

Joshua B Swigart, *Admitted Pro Hac Vice*
Email: josh@westcoastlitigation.com
HYDE AND SWIGART
411 Camino Del Rio South, Suite 301
San Diego, California 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Matthew M. Loker
Email: ml@kazlg.com
KAZEROUNI LAW GROUP APC
2700 North Main Street Suite 1000
Santa Ana, California 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Seyed Abbas Kazerounian, *Admitted Pro Hac Vice*
Email: ak@kazlg.com
KAZEROUNI LAW GROUP APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Todd M Friedman
Email:
tfriedman@attorneysforconsumers.com
LAW OFFICES OF TODD M. FRIEDMAN PC
369 South Doheny Drive, Suite 415
Beverly Hills, California 90211
Telephone: (877) 206-4741
Facsimile: (866) 623-0228

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on December 3, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kenneth Michael Kliebard
Email: kkliebard@morganlewis.com
Tedd Macrae Warden
Email: twarden@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: (312) 324-1774
Facsimile: (312) 324-1001

Julia B. Strickland
Email: jstrickland@stroock.com
Lisa M. Simonetti
Email: lsimonetti@stroock.com
Arjun P. Rao
Email: arao@stroock.com
Julieta Stepanyan
Email: jstepanyan@stroock.com
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East Suite 1600
Los Angeles, California 90067-3086
Telephone: (310) 556-5800
Facsimile: (310) 556-5959

*Attorneys for Defendants*

DATED this 3rd Day of December, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869

*Attorneys for Plaintiffs*