IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN I. GEHRICH, ROBERT LUND, COREY GOLDSTEIN, PAUL STEMPLE and CARRIE COUSER, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>CHASE BANK USA, N.A., and JPMORGAN CHASE BANK, N.A.,<br><br>     Defendants. | NO. 1:12-CV-5510<br><br><br>Honorable Gary Feinerman |

**CLASS COUNSEL'S MOTION FOR AN AWARD OF FEES AND APPROVAL OF
INCENTIVE AWARDS IN CONNECTION WITH THE SETTLEMENT**

## TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................ 1

      A.     The Settlement ................................................................................. 1

      B.     Class Counsel Faced Substantial Risk of Nonpayment ....................... 2

      C.     Class Counsel Performed High-Quality Work ..................................... 3

              1.     The *Gehrich* Action ............................................................ 3

              2.     The *Lund* Action ................................................................ 3

              3.     The *Goldstein* Action ......................................................... 3

              4.     The Consolidated Action ..................................................... 4

              5.     The Parties' Mediations ....................................................... 4

              6.     Confirmatory Discovery ...................................................... 4

      D.     Class Counsel's Fee Request ............................................................. 5

      E.     The Class Notice and Claims Administration Program ........................ 5

III.   SEVENTH CIRCUIT STANDARD FOR SETTLEMENT APPROVAL ...................... 6

IV.   ARGUMENT ................................................................................................ 9

      A.     Class Counsel's Requested Fee Award Is Reasonable ........................ 9

              1.     The Requested Fee Is Presumptively Reasonable ................... 9

              2.     The Requested Fee Is in Line with Fee Awards in Similar Cases ........... 9

              3.     The Requested Fee Comports with the Contracts Between Plaintiffs and Counsel .......................................................... 11

              4.     Other Factors Support the Requested Fee ............................. 11

                      a.     Risk of Nonpayment ................................................. 12

    b.  Quality of Performance .................................................................. 13

    c.  Amount of Work Invested ........................................................... 13

    d.  Stakes of the Case ...................................................................... 14

  B.  The Incentive Awards to the Class Representatives Should Be Approved ........ 14

V.  CONCLUSION ........................................................................................................... 15

## TABLE OF AUTHORITIES

**Page No.**

### FEDERAL CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
  No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ............................................. 8

*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*,
  743 F.3d 243 (7th Cir. 2014) ............................................................................................ 7

*Balschmiter v. TD Auto Fin., LLC*, --- F.3d. ---,
  Case No. 13-cv-1186 JPS, 2014 WL 6611008 (E.D. Wis. Nov. 20, 2014).................. 12

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
  480 F. Supp. 1195 (S.D.N.Y. 1979)................................................................................ 10

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  302 F.R.D. 240 (N.D. Ill. 2014)...................................................................................... 12

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)........................................................................................................... 7

*CE Design Ltd. v. CV's Crab House North, Inc.*,
  No. 07-cv-05456 (N.D. Ill. Oct. 27, 2011) ............................................................... 9, 10

*City of Greenville v. Syngenta Corp Prot., Inc.*,
  904 F. Supp. 2d 902 (S.D. Ill. 2012).............................................................................. 10

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) .................................................................................. 14, 15

*Cummings v. Sallie Mae*,
  12 C-9984 (N.D. Ill. May 30, 2014) ................................................................................. 9

*Desai v. ADT Sec. Servs., Inc.*,
  No. 1:11-cv-01925 (N.D. Ill. June 21, 2013).................................................................... 9

*Eubank v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) ............................................................................................ 2

*Florin v. Nationsbank of Ga., N.A.*,
  34 F.3d 560 (7th Cir. 1994) .............................................................................................. 7

*G.M. Sign, Inc. v. Finish Thompson, Inc.,*
No. 07-cv-05953 (N.D. Ill. Nov. 1, 2010) ....................................................... 9

*Gaskill v. Gordon,*
942 F. Supp. 382 (N.D. Ill. 1996) .................................................................... 8

*Gaskill v. Gordon,*
160 F.3d 361 (7th Cir. 1998) ..................................................................... 8, 11

*Green v. DirecTV, Inc.,*
10 C 117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010).................................. 13

*Greene v. Emersons Ltd.,*
No. 76 Civ. 2178 (CSH), 1987 WL 11558 (S.D.N.Y. May 20, 1987) .......................... 10

*Gusman v. Comcast Corp.,*
298 F.R.D. 592 (S.D. Cal. 2014) .................................................................. 12

*Hanley v. Fifth Third Bank,*
No. 1:12-CV-1612 (N.D. Ill. Dec. 23, 2013)................................................... 8

*Heekin v. Anthem, Inc.,*
No. 1:05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)..................... 15

*Hinman v. M&M Rentals, Inc.,*
No. 06-1156 (N.D. Ill. Oct. 6, 2009)............................................................. 10

*Holtzman v. CCH,*
No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) ............................................... 10

*In re Ampicillin Antitrust Litig.,*
526 F. Supp. 494 (D.D.C. 1981) ................................................................... 10

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,*
792 F. Supp. 2d 1028 (N.D. Ill. 2011) .......................................................... 13

*In re Bankcorp. Litig.,*
291 F.3d 1035 (8th Cir. 2002) ..................................................................... 10

*In re Combustion, Inc.,*
968 F. Supp. 1116 (W.D. La. 1997).............................................................. 10

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.,*
280 F.R.D. 364 (N.D. Ill. 2011)................................................................ 7, 10

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................. 10

*In re Southwest Airlines Voucher Litig.*,
  No. 11 C 8176, 2013 WL 4510197 (N.D. Ill., Aug. 26, 2013) ...................... 15

*In re Synthroid Mkt. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ........................................................ 7, 11, 14

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................. 8

*Jamison v. First Credit Servs.*,
  290 F.R.D. 92 (N.D. Ill. 2013) ........................................................... 12, 13

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ................................................................. 11

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) .............................................................. 11

*Martin v. Dun & Bradstreet, Inc. et al.*,
  1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) ..................................................... 9

*Matter of Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ................................................................... 8

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
  No. 08-cv-05959 (N.D. Ill. Dec. 21, 2011) ................................................. 9

*Pearson v. NBTY*,
  --- F.3d ---, 2014 WL 6466128 (7th Cir. Nov. 19, 2014) ..................... 1, 2, 5, 6, 9

*Redman v. Radioshack Corp.*,
  768 F.3d 622 (7th Cir. 2014) ........................................................ 1, 2, 5, 6

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
  Case No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)................ 11

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*,
  No. 09 C 0776 (N.D. Ill. Jan. 14, 2011)..................................................... 9

*Saf-T-Gard Int'l v. Vanguard Energy Servs.*,
  Case No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012).................. 12

*Steinfeld v. Discover Fin. Servs.*,
    No. C 12-01118 (N.D. Cal. Mar. 10, 2014) ...................................................... 8

*Stumpf v. PYOD*,
    12 C 4688, 2013 WL 6123156 (N.D. Ill. Nov. 20, 2013) ................................................ 11

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) .............................................................. 7, 11, 13

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ............................................................. 9, 10, 11

*Van Gemert v. Boeing Co.*,
    516 F. Supp. 412 (S.D.N.Y. 1981) ........................................................... 10

*Will v. Gen. Dynamics Corp.*,
    Civil No. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) .................... 10, 15

## I.  INTRODUCTION

In the face of a staunch defense and real litigation risk, Plaintiffs and their counsel have achieved a settlement that requires Defendants Chase Bank USA, N.A. and JPMorgan Chase Bank, N.A. (together, "Chase") to pay $34 million into a non-reversionary settlement common fund.  To compensate them for their efforts, Class Counsel seek an award of $11 million, which amounts to one-third of the common fund after a $1,000,000 *cy pres* distribution is subtracted, and also subsumes all litigation costs.  If $2,993,225 million in estimated administration expenses are also subtracted, Class Counsel's fee request still amounts to less than 37% of the common fund, which is towards the lower end of the range suggested by the Seventh Circuit in *Pearson v. NBTY*, --- F.3d ---, 2014 WL 6466128, at *4 (7th Cir. Nov. 19, 2014) as presumptively reasonable.  The requested fee also is within the market price for contingent legal fees in complex litigation, and is reasonable and appropriate given the attorneys' fees awarded in similar cases, the risks presented by this case, the quality and amount of work performed by Class Counsel, the high stakes presented, and the result achieved.

Class Counsel also respectfully request that the Court award modest, routine incentive awards to each of the five named Plaintiffs in the amount of $1,500 each, for their work on behalf of the Class.  For these reasons and those that follow, Plaintiffs respectfully request that their motion be granted.[1]

## II.  BACKGROUND

### A.  The Settlement

The proposed settlement establishes a $34,000,000 "Settlement Fund," which will be used to pay: (1) cash settlement awards to eligible Settlement Class Members; (2) $1,000,000 to the Consumer Federation of America ("CFA") on behalf of Alert Call Subclass members ("Dedicated *Cy Pres* Distribution"); (3) notice and administration costs (estimated at

---

[1] Consistent with *Redman v. Radioshack Corp.*, 768 F.3d 622, 637–38 (7th Cir. 2014), Plaintiffs will post this brief on the settlement website, www.GehrichTCPAsettlement.com, within 24 hours of filing.

$2,993,225); (4) court-approved attorneys' fees and costs up to $11,000,000 (one-third of the Settlement Fund after subtracting the Dedicated *Cy Pres* Distribution); and (5) court-approved service payments to Plaintiffs (up to $1,500 each). (Dkt. No. 107-2 § III.D.–H.) The details of the settlement are summarized in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. (Dkt. No. 107.)

On August 12, 2014, this Court entered a preliminary approval order finding that "[s]ubject to the Final Approval Hearing, the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class…." (Dkt. No. 117.) Following entry of the preliminary approval order, the Court sought further briefing from the parties regarding whether the settlement comports with recent decisions of the Seventh Circuit, including *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), and *Pearson v. NBTY*, --- F.3d ---, 2014 WL 6466128 (7th Cir. Nov. 19, 2014). (*See* Dkt. Nos. 120, 123.) The parties provided that briefing, explaining in detail why this settlement, which establishes an actual, non-reversionary cash fund of $34,000,000, differs from the claims-made, reversionary settlements addressed by the Seventh Circuit. (*See* Dkt. No. 124.)

**B.** **Class Counsel Faced Substantial Risk of Nonpayment**

Class Counsel took this matter on a pure contingency basis. Class Counsel have devoted substantial resources to the prosecution of this case with no guarantee that they would be compensated for their time or reimbursed for their expenses. (*See* Ex. A (Terrell Decl.) ¶¶ 17-18; Ex. B (Burke Decl.) ¶ 13; Ex. C (Saeed Decl.) ¶ 9; Ex. D (Friedman Decl.) ¶ 10; Ex. E (Swigart Decl.) ¶ 12; Ex. F (Kazerounian Decl.) ¶ 12; Ex. G (Ankcorn Decl.) ¶ 13; Ex. H (Blatt Decl.) ¶ 12.) The risks presented by taking this case are not academic: Class Counsel have lost cases alleging the same or similar claims as those alleged here, recovering nothing for their efforts. (*See, e.g.*, Terrell Decl. ¶ 20.)

**C.**      **Class Counsel Performed High-Quality Work**

The settlement is the result of over two years of litigation involving three separate class actions that ultimately were consolidated in this Court.

    1.      The *Gehrich* Action

Plaintiff Jonathan Gehrich filed a class action complaint against Defendant Chase Bank USA, N.A. in the Northern District of Illinois on July 12, 2012. *Gehrich v. Chase Bank USA, N.A.*, Case No. 1:12-cv-5510 ("*Gehrich* Action"). Plaintiff Gehrich filed an amended complaint against JPMorgan Chase Bank, N.A. after learning that this entity placed some of the calls at issue in the case. Plaintiff Gehrich vigorously pursued documentary and electronic discovery seeking information regarding the calls that had been placed and Chase's alleged "consent" defense, moving to compel documents, data, and the designation of Fed. R. Civ. P. 30(b)(6) witnesses regarding Chase's databases and telemarketing policies. (*See* Dkt. No. 56.)

    2.      The *Lund* Action

On October 19, 2012, Plaintiff Robert Lund filed a class action complaint against Chase Bank USA, N.A. in the Southern District of California. *Lund v. Chase Bank USA, N.A.*, Case No. 12-cv-2554 H (DHB) ("*Lund* Action"). On March 1, 2013, the parties met with United States Magistrate Judge Honorable David H. Bartick, and in the course of those discussions agreed to explore a settlement track together with counsel in the *Goldstein* and *Gehrich* Actions.

    3.      The *Goldstein* Action

On November 30, 2012, Plaintiffs Corey Goldstein, Paul Stemple, and Carrie Couser filed a class action against JPMorgan Chase Bank, N.A. in the Central District of California. *Goldstein v. JPMorgan Chase Bank, N.A.*, No. 2:12-cv-10252 DMG (SH) ("*Goldstein* Action"). Before filing the *Goldstein* Action, counsel extensively investigated the factual basis for the claims, including the proper entities to sue and whether Chase had any prior TCPA violations. (*See, e.g.*, Ex. F (Kazerounian Decl.) ¶ 19.) Counsel also conducted legal research regarding the plaintiffs' standing to sue the various Chase entities. (*Id.*) After the case was filed, the plaintiffs

participated in an early settlement conference and served written discovery. (*Id.* ¶ 20.) Counsel actively participated in mediation and subsequent settlement discussions. (*Id.* ¶ 21.)

4.    <u>The Consolidated Action</u>

Plaintiffs' counsel in the above actions agreed to work collaboratively to prosecute the actions in the most efficient and effective manner possible. They coordinated their efforts with respect to mediation and confirmatory discovery. As part of the Settlement Agreement, they agreed to dismiss the *Lund* and *Goldstein* Actions and to pursue global relief for the class in a single forum. On June 25, 2014 this Court granted Plaintiff Gehrich's motion to file a Second Amended Complaint ("SAC"), consolidating the three actions in a single forum. (Dkt. No. 95.) Plaintiffs filed the SAC the next day. (Dkt. No. 96.)

5.    <u>The Parties' Mediations</u>

The parties participated in three formal mediation sessions before the Honorable Edward A. Infante (Ret.), on April 25, 2013, June 4, 2013, and November 14, 2013. (Dkt. No. 107-5 at 7 (¶ 14).) The parties also participated in several subsequent telephonic settlement conferences and calls with Judge Infante. (*Id.*) In connection with these mediation sessions, the parties submitted detailed mediation briefs to Judge Infante, setting forth their respective views on the strengths of their cases. (*Id.*) During the mediation sessions, the parties discussed their relative views of the law and the facts and potential relief for the proposed class. (*Id.*)

After the parties reached a basic understanding, it took over a year to iron out the Settlement Agreement. The parties exchanged proposals and counterproposals on several aspects of the settlement including class member eligibility, *cy pres*, injunctive relief, and notice to the class. At all times, the negotiations were adversarial, non-collusive, and at arm's length.

6.    <u>Confirmatory Discovery</u>

Throughout the settlement negotiations, Class Counsel insisted that Chase provide them with discovery confirming the total number of Settlement Class Members. (Terrell Decl. ¶ 11.) Class Counsel propounded written discovery requests and deposed the person most knowledgeable at Chase about their calling databases and policies, and practices. (*Id.*) Class

Counsel agreed to execute the Settlement Agreement only after they received comprehensive information from Chase that permitted them to assess whether the settlement was fair and reasonable.

**D.      Class Counsel's Fee Request**

Pursuant to the Settlement Agreement, Class Counsel seek a total award of attorneys' fees of $11,000,000, or one-third of the Settlement Fund after subtracting the $1,000,000 Dedicated *Cy Pres* Distribution.  Class Counsel do not seek additional payment for any of their expenses on top of this requested award.

Class Counsel negotiated with Chase to reach an agreed-upon fee amount that they regarded as reasonable based on the benefits achieved for the Class and applicable legal principles.  Like the settlement itself, the parties agreed to the fee amount under the auspices and with the assistance of an experienced, well-respected former judge and mediator, Judge Edward A. Infante.  The fee amount is consistent with Plaintiffs' fee agreements with Class Counsel. (*See* Ex. C (Saeed Decl.) ¶ 9 (contingency agreement required Mr. Gehrich to pay counsel 40%, after costs, of any judgment or settlement obtained on his behalf); Ex. G (Ankcorn Decl.) ¶ 13 (contingency agreement requires Plaintiff Lund to pay 50% including costs of any judgment or settlement obtained on his behalf); Ex. D (Friedman Decl.) ¶ 11 (contingency agreement requires Stemple and Couser to pay 33.33%, of any settlement proceeds or judgment they obtain); Ex. F (Kazerounian Decl.) ¶ 13 (contingency agreement requires Stemple and Couser to pay 33.33%, of any settlement proceeds or judgment they obtain).)  The Court's approval of the Settlement Agreement, however, is not conditioned on an award of fees and costs in the amount Class Counsel request.  In other words, the Court can approve the settlement and award Class Counsel a lesser amount in fees without undoing the settlement itself.

**E.      The Class Notice and Claims Administration Program**

The Seventh Circuit recently held that attorneys' fees should be calculated after excluding notice and claims administration costs from the settlement fund.  *See Redman v. Radioshack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014); *Pearson v. NBYT, Inc.*, --- F.3d ---, 2014

WL 6466128, at *2 (7th Cir. Nov. 19, 2014).  Both of these cases were brought under fee-shifting statutes and both involved settlements where the primary class relief (coupons in *Redman* and small cash awards in *Pearson*) was contingent on class members filing lengthy, complicated claim forms and the notice program appeared designed to deter rather than encourage claims.  The Seventh Circuit reasoned that these notice programs constitute a cost to the class rather than a benefit.

Plaintiffs respectfully submit that unlike *Redman* and *Pearson* the notice program in this case provides substantial value to the Settlement Class.  This case involves millions of potential Settlement Class Members, for many of whom there was no contact information.  (Terrell Decl. ¶ 12.)  Class Counsel consulted with various notice providers to determine the best and most cost-efficient way to reach these Settlement Class Members.  (*Id.*)  Class Counsel also devoted substantial time to drafting, reviewing, and revising the various forms of notice and claim form. (*Id.*)  As a result of their efforts, the email and postcard notices that Settlement Class Members received are clearly-written, informative, and to the point.  (*Id.*)  The email and postcard notices are designed to encourage claims, allowing a Settlement Class Member to submit the form by mail or online, and, importantly, only requiring the Settlement Class Member to check a box and sign his/her name to receive a cash payment.  (*Id.*)  The notice program has been successful. Although one month remains in the claims period, 121,303 people have submitted claims.  (*Id.*)

Even if administration and notice costs are removed from the equation here, the net value to the class is $30,006,775 and the requested fee of $11,000,000 would amount to a reasonable 36.67% of the fund.  *Cf. Pearson*, 2014 WL 6466128 at *3 (after administration costs were deducted attorneys' fees amounted to "an outlandish 69 percent"); *Redman*, 768 F.3d at 630–32 (after administration costs deducted attorneys' fee amounted to between 55% and 67% depending on how the coupons were valued).

### III.  SEVENTH CIRCUIT STANDARD FOR SETTLEMENT APPROVAL

The Seventh Circuit requires courts to determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment

and the normal rate of compensation in the market at the time." *In re Synthroid Mkt. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). In this context, "at the time" is at the start of the case: the Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.*

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit").

In common fund cases, unlike fee-shifting cases, courts have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage of the fund; or (2) lodestar plus a risk multiplier. *See, e.g., Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011). "[T]here are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994).

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

The percentage-of-the-fund method should be used here. Class Counsel and Plaintiffs have created a $34 million non-reversionary settlement fund that provides substantial, actual value to Settlement Class Members. After deducting a $1,000,000 *cy pres* award, $2,993,225 in administration expenses, the requested $11,000,000 fee, and requested incentive awards for the Class Representatives totaling $7,500, the remaining $18,999,275 will be used to pay cash awards directly to Settlement Class Members who file claims. If the settlement were approved today, each of the 121,303 claimants would receive over $156.63. Although this amount likely will lower slightly as claims come in during the final month of the claims period, it still is in line with, and indeed exceeds, amounts paid in other TCPA settlements. *See, e.g., Hanley v. Fifth Third Bank*, No. 1:12-CV-1612, Dkt. Nos. 79 at 10, 85 at 1 (N.D. Ill. Dec. 23, 2013) (claimants received $157.43 each); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each).

# IV. ARGUMENT

## A. Class Counsel's Requested Fee Award Is Reasonable

### 1. The Requested Fee Is Presumptively Reasonable

The Seventh Circuit recently suggested that in consumer cases which often have low claims rates the "presumption" should be that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson*, 2014 WL6466128 at *4. After subtracting the Dedicated *Cy Pres* Distribution, Class Counsel seek one-third of the $33,000,000 remaining in the Settlement Fund. If settlement administration expenses also are subtracted, Class Counsel seek less than 37% percent of the Fund. The requested fee is thus presumptively reasonable under *Pearson*.

### 2. The Requested Fee Is in Line with Fee Awards in Similar Cases

To determine the market price, it is appropriate to consider information from other cases. *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). The requested fee is at the market price, and therefore reasonable, as reflected in the fees approved by judges in this district in TCPA cases. *See Martin v. Dun & Bradstreet, Inc. et al.*, 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third of defendants' total payout for fees); *Cummings v. Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (fees equal to one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-cv-05959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116), attached hereto as Exhibit I (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-cv-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424), attached hereto as Exhibit J (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100), attached hereto as Exhibit K (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146), attached hereto as

Exhibit L (fees equal to one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225), attached hereto as Exhibit M (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33 (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39 (same).

     Class Counsel's requested fee also reflects fees approved by other courts in non-TCPA cases in this Circuit and elsewhere. *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (noting counsel had submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30–39% of the settlement fund); *In re Ky. Grilled Chicken*, 280 F.R.D. at 380–81 (citing cases, and describing a fee of 32.7% of the common fund as "well within the market rate and facially reasonable"); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908–09 (S.D. Ill. 2012) (approving a one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price" and citing cases); *Will v. Gen. Dynamics Corp.*, Civil No. 06-698-GPM, 2010 WL 4818174, *3 (S.D. Ill. Nov. 22, 2010) (finding "the market rate for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate"); *In re Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of the settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of attorneys' fees equal to 33.33% of the total recovery); *Greene v. Emersons Ltd.*, No. 76 Civ. 2178 (CSH), 1987 WL 11558, *8 (S.D.N.Y. May 20, 1987) (awarding attorneys' fees and expenses in excess of 46% of the settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131–32 (W.D. La. 1997) (awarding attorneys' fees equal to 36% of the common fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 503 (D.D.C. 1981) (awarding attorneys' fees in excess of 40% of the settlement fund); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195, 1198–99 (S.D.N.Y. 1979) (awarding fees in excess of 50% of the settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding fees of 36% of fund).

3.      The Requested Fee Comports with the Contracts Between Plaintiffs and Counsel

In addition to analyzing the market price for legal services from analogous cases, courts also may examine "actual fee contracts that were negotiated for private litigation." *See Taubenfeld*, 415 F.3d at 59; *see also Stumpf v. PYOD*, 12 C 4688, 2013 WL 6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms). The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *See Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingency fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

Here, Plaintiffs entered into retainer agreements with Class Counsel that reflect or exceed this fee range. (*See* Saeed Decl. ¶ 9; Ankcorn Decl. ¶ 13 Friedman Decl. ¶ 11; Kazerounian Decl. ¶ 13.) Such evidence supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee *ex ante*.

4.      Other Factors Support the Requested Fee

The Seventh Circuit has held that the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quoting *Synthroid*, 264 F.3d at 721). Each factor supports the requested fee.

a. *Risk of Nonpayment*

Prosecution of this action has involved significant financial risk for Class Counsel. Class Counsel undertook this matter solely on a contingent basis, with no guarantee of recovery. (*See* (Terrell Decl. ¶¶ 17–18; Burke Decl. ¶ 13; Saeed Decl. ¶ 9; Friedman Decl. ¶ 10; Swigart Decl. ¶ 12; Kazerounian Decl. ¶ 12; Ankcorn Decl. ¶ 13; Blatt Decl. ¶ 12.) One of the primary battles in every TCPA action involves class plaintiffs' attempts to determine the size and scope of the class. Those facts are not known by plaintiffs' counsel *ex ante*, and typically require contentious discovery and litigation before ever becoming known. This case is no different. Class Counsel engaged in contested motion practice during discovery in an effort to determine the scope of the class. Gehrich moved to compel and the parties fully briefed the issue. (*See* Dkt. Nos. 56–65.) Although this litigation was stayed before the Court ruled, it is unclear how the Court would have decided. TCPA plaintiffs sometimes lose such motions and are unable to proceed on a class basis as a result. *See, e.g., Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596–97 (S.D. Cal. 2014) (denying motion to compel production of the defendant's call data).

Plaintiffs also faced challenges at class certification. Courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin., LLC*, --- F.3d. ---, Case No. 13-cv-1186 JPS, 2014 WL 6611008, at *19–20 (E.D. Wis. Nov. 20, 2014) (same); *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, Case No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Plaintiffs believe that they could have prevailed on these issues, but success was by no means assured. Litigating these issues would have risked recovering nothing for the class, and would have required significant additional expenditure of time, money, and resources — including potentially substantial expert expenses — for which Class Counsel would not be

compensated should they lose on summary judgment or fail to certify a class. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035–35 (N.D. Ill. 2011) (finding class counsel incurred significant risk of nonpayment where, among other reasons, class counsel would have to overcome case dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102–09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Green v. DirecTV, Inc.*, 10 C 117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against TCPA plaintiff).

That risk was real and meaningful. As detailed in the accompanying declarations of counsel, Class Counsel have lost a number of TCPA class actions without any recovery for the proposed class or any fees for their work. (*See, e.g.*, Terrell Decl. ¶ 20; Burke Decl. ¶ 12; Saeed Decl. ¶ 9; Friedman Decl. ¶ 12; Swigart Decl. ¶ 14; Kazerounian Decl. ¶ 14.)

### b. *Quality of Performance*

Second, the fee award reasonably reflects the "market price" given the quality of Class Counsel's performance. *See Sutton*, 504 F.3d at 693. Despite the challenges listed above, by applying their skill and experience, Class Counsel were able to obtain an outstanding result for Settlement Class Members. The settlement requires Chase to pay $34 million into a non-reversionary common fund out of which nearly $19 million will be used to pay claims. Based on the current claims rate, every Settlement Class Member who fills out a simple claim form will receive a cash payment estimated to be between $140 and $155. The fact that Chase was willing to pay such an amount reflects the dedication, skill, and experience of Class Counsel.

### c. *Amount of Work Invested*

Class Counsel have devoted numerous hours to investigating, litigating, and settling this case. (*See* Terrell Decl. ¶¶ 8–14; Burke Decl. ¶ 14; Saeed Decl. ¶ 8; Friedman Decl. ¶¶ 16–20; Swigart Decl. ¶¶ 18–21; Kazerounian Decl. ¶¶ 18–21; Ankcorn Decl. ¶¶ 7–11; Blatt Decl. ¶ 10.) In *Gehrich*, counsel quickly and aggressively pursued electronic data necessary to identify the Class, filing a motion to compel when it was clear the parties were at an impasse. (Dkt. No. 57; Terrell Decl. ¶¶ 8–9.) This motion was fully briefed and pending when the case was stayed.

(Dkt. Nos. 57, 60, 62, 69.)  Counsel also moved to amend the complaint to reflect relevant information that Chase provided during this initial discovery.  (*Id.*)

Class Counsel devoted numerous hours to negotiating the settlement, which included preparing their clients' mediation submissions, attending three separate mediation sessions, and following up with the mediator and opposing counsel over the phone.  (*See, e.g.*, Terrell Decl. ¶¶ 10–13.)  Class Counsel insisted that Chase substantiate their assertions regarding the number of allegedly unlawful calls that it made and refused to settle until they had received an affidavit providing this information.  (*Id.* ¶ 11.)  Finally, Class Counsel spent substantial time preparing the settlement papers and notice documents, working with the independent notice provider, and drafting the approval motions.  (*Id.*)  The amount of work supports the requested fee.

          d.    *Stakes of the Case*

This case involves millions of Settlement Class Members who allegedly received harassing, unlawful calls from Chase.  (*See* Dkt. No. 107-6 at 4.)  The amount each Settlement Class Member is individually eligible to recover is low (between $500 and $1,500 per call) and thus individuals are unlikely to file individual lawsuits.  A class action is realistically the only way that many individuals would receive any relief.  In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable.

**B.**      **The Incentive Awards to the Class Representatives Should Be Approved**

Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded.  Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits.  *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

- 14 -

The requested service awards of $1,500 for each Class Representative are reasonable. The Class Representatives worked with Class Counsel to investigate the case, were kept abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. Moreover, the modest amount requested here, $1,500 for each Class Representative (totaling $7,500) is substantially lower than awards approved by federal courts in Illinois and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award to plaintiff); *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, *11 (N.D. Ill., Aug. 26, 2013) (awarding $15,000 each to two named plaintiffs); *Heekin v. Anthem, Inc.*, No. 1:05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, Civil No. 06-698-GPM, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs).

## V.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant their motion and award Class Counsel $11,000,000, which amounts to one-third of the settlement fund after deducting the Dedicated *Cy Pres* Distribution and 37% percent of the settlement fund if administration expenses also are subtracted. Class Counsel further requests that the Court approve incentive awards of $1,500 to the five named Plaintiffs.

RESPECTFULLY SUBMITTED AND DATED this 9th day of January, 2015.

TERRELL MARSHALL DAUDT & WILLIE PLLC


By:    /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@tmdwlaw.com
Michael D. Daudt, *Admitted Pro Hac Vice*
Email:  mdaudt@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

Alexander H. Burke
Email:  aburke@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois  60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

Syed Ali Saeed, *Admitted Pro Hac Vice*
Email:  ali@sllawfirm.com
SAEED & LITTLE, LLP
1433 North Meridian Street, Suite 202
Indianapolis, Indiana  46202
Telephone:  (317) 614-5741
Facsimile:  (888) 422-3151

Gayle M Blatt, *Admitted Pro Hac Vice*
Email: gmb@cglaw.com
CASEY, GERRY, SCHENK, FRANCAVILLA,
  BLATT & PENFIELD LLP
110 Laurel Street
San Diego, California  92101-1406
Telephone:  (619) 238-1811
Facsimile:  (619) 544-9232

Mark D. Ankcorn
Email: mark@ankcorn.com
ANKCORN LAW FIRM, PC
11622 El Camino Real, Suite 100
San Diego, California  92130
Telephone:  (619) 870-0600
Facsimile:  (619) 684-3541

Joshua B Swigart, *Admitted Pro Hac Vice*
Email: josh@westcoastlitigation.com
HYDE AND SWIGART
411 Camino Del Rio South, Suite 301
San Diego, California  92108-3551
Telephone:  (619) 233-7770
Facsimile:  (619) 297-1022

Matthew M. Loker
Email: ml@kazlg.com
KAZEROUNI LAW GROUP APC
2700 North Main Street Suite 1000
Santa Ana, California  92705
Telephone:  (800) 400-6808
Facsimile:  (800) 520-5523

Seyed Abbas Kazerounian, *Admitted Pro Hac Vice*
Email: ak@kazlg.com
KAZEROUNI LAW GROUP APC
245 Fischer Avenue, Suite D1
Costa Mesa, California  92626
Telephone:  (800) 400-6808
Facsimile:  (800) 520-5523

Todd M Friedman
Email: tfriedman@attorneysforconsumers.com
LAW OFFICES OF TODD M. FRIEDMAN PC
369 South Doheny Drive, Suite 415
Beverly Hills, California  90211
Telephone:  (877) 206-4741
Facsimile:  (866) 623-0228

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on January 9, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Kenneth Michael Kliebard
> Email: kkliebard@morganlewis.com
> Tedd Macrae Warden
> Email: twarden@morganlewis.com
> MORGAN LEWIS & BOCKIUS LLP
> 77 West Wacker Drive
> Chicago, Illinois  60601-5094
> Telephone:  (312) 324-1774
> Facsimile:  (312) 324-1001
>
> Julia B. Strickland
> Email: jstrickland@stroock.com
> Lisa M. Simonetti
> Email: lsimonetti@stroock.com
> Arjun P. Rao
> Email: arao@stroock.com
> Julieta Stepanyan
> Email:  jstepanyan@stroock.com
> STROOCK & STROOCK & LAVAN LLP
> 2029 Century Park East Suite 1600
> Los Angeles, California 90067-3086
> Telephone:  (310) 556-5800
> Facsimile:  (310) 556-5959
>
> *Attorneys for Defendants*

DATED this 9th day of January, 2015.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
> Beth E. Terrell, *Admitted Pro Hac Vice*
> Email:  bterrell@tmdwlaw.com
> 936 North 34th Street, Suite 300
> Seattle, Washington  98103-8869
>
> *Attorneys for Plaintiffs*