UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN I. GEHRICH, ROBERT LUND, COREY GOLDSTEIN, PAUL STEMPLE, and CARRIE COUSER, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 1:12-cv-5510 ) |
| -vs- | ) Judge Gary Feinerman ) |
| CHASE USA, N.A., and JP MORGAN CHASE BANK, N.A., | ) ) ) |
| Defendants. | ) |

**OBJECTION TO CLASS ACTION SETTLEMENT, MOTION FOR
ATTORNEYS' FEES AND NOTICE OF INTENT TO APPEAR
OF CLASS MEMBER STEVE PURGAHN**

Comes now Steve Purgahn, by and through counsel, who states that he is a class member in the above-referenced matter. Mr. Purgahn's mailing address is 760 rue Saint Francois, Florissant, Missouri 63031. The Class Action Notice received by Mr. Purgahn is attached hereto as Exhibit A. Mr. Purgahn received automatic alerts relating his Chase credit card accounts. Mr. Purgahn, through undersigned counsel, intends to appear and be heard at the fairness hearing in this matter. Mr. Purgahn hereby objects to the class action settlement and Class Counsels' request for attorneys' fees for the following reasons:

# INTRODUCTION

The proposed settlement disproportionately favors some groups over others, while eviscerating the basic legal rights of many of the class members in favor of pet charities that will receive the lion's share of the settlement benefits by way of cy pres distributions, culled from funds put up by the Defendant in this case. Meanwhile, Class Counsel touts that they are entitled to 11 Million Dollars in attorney's fees from the Defendant for the alleged "benefit" provided to the class.

A district court may approve a settlement only if it is "fair, reasonable and adequate" <u>Synfuel Technologies v. Dhl Express (USA)</u>, 463 E3d 646, 652 (7th Cir. 2006); Fed R. Civ. P. 23(e)(1)(C); <u>Williams v. Rohm</u>, 658 E3d 629, 634 (7th Cir., 2011). Although the standard applied by the appellate court is whether the trial court abused its discretion in approving a proposed settlement, "we insist that district courts exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." <u>Synfuel Technologies</u>, 463 E3d at 652 citing <u>Reynolds v. Beneficial Nat'l Bank</u> 288 E3d 277, 279 (7th Cir. 2002). Historically, the court of appeals has "gone so far as to the characterize the [trial] court's role as akin to the high duty of care that the law requires of fiduciaries." *Id ;* <u>Williams</u>, 658 E3d at 634.

A district court "cannot make an informed judgment about the fairness of a proposed class settlement without assessing the likelihood and value to the class of the case's possible outcomes. <u>Williams,</u> 658 E3d at 634, citing <u>Synfuel Technologies,</u> 463 E3d at 653.

The present settlement before this Court withers under the weight of these requirements, and must be rejected by the Court as described below. The settlement, as proposed by the parties is not fair, reasonable or adequate and must be denied at this time, subject to approval at a later time if Class Counsel and the Defendants adopt the changes proposed as set forth below.

**I.     The Settlement is neither fair nor reasonable, in that the parties cannot divert class member recovery to cy pres beneficiaries while existing class members receive nothing, and/or diminished recovery.**

The Settlement provides that $1 Million of the Settlement is to be funneled into the coffers of the "Consumer Federation of America" an alleged non-profit organization that derives a substantial amount of its revenue from "cy pres donations" (Wikipedia, Wikipedia.org/wiki/Consumer_Federation_of_America, "Funding").  This Court should not approve such disbursements under any circumstances, as this diversion of class funds is not supported in the 7th Circuit. Cy pres recovery "should be reserved for unusual circumstances", and should only be utilized or considered "in which it is difficult or impossible to identify the persons to whom damages should be assigned or distributed." *Mace v. Van Ru Credit Corp., 109 F.3d 338, 345 (C.A.7 (Ill.), 1997).*  Cy pres is "a procedural device that distributes money damages either through a market system (e.g., by reducing charges that were previously excessive), or through project funding (the project being designed to benefit the members of the class)." *Mace, 109 F.3d at 345; Simer v. Rios, 661 F.2d 655, 675 (7th Cir. 1981).*   Here, the funding of the "project"- the "Consumer Federation of America" benefits all persons, not merely class members.

According to the mission statement of the CFA, it "is an association of non-profit consumer organizations that was established in 1968 to advance the consumer interest through research, advocacy and education." ([www.consumerfed.org](www.consumerfed.org), "About the CFA"-Overview). While this lofty and noble goal, although vague and amorphous, may be  beneficial to all persons, it is not specific in its application or benefit for the class members in this case.  This is a requirement, and not merely a formality that can be waived by the Court. *Mirfasihi v. Fleet*

*Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir., 2004), citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir., 1990). A cy pres award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," and must not benefit a group "too remote from the plaintiff class," *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir., 1990). The CFA in its website under the "Overview," claims that it is composed of approximately "300 groups" that participate in its "federation." This is too remote from the Class Members in this TCPA case and clearly fails the second prong recognized by the court in *Mirfasihi*. The underlying statutes that form the basis for this litigation certainly do not justify payment of any amounts to the CFA.

The Class Members in this are not difficult to identify, a requirement in this Circuit in order to justify use of a cy pres fund. *Mace.*, 109 F.3d at 345. In the 7th Circuit, cy pres is limited in application, and "is used where the individuals injured are not likely to come forward and prove their claims or cannot be given notice of the case." *Mace*, 109 F.3d at 345; *Simer v. Rios*, 661 F.2d 655, 675 (7th Cir. 1981). (emphasis added). The parties in this case have not made such assertion and, to the contrary, tout that notice was provided to these class members. After all, the Defendants knew exactly how to reach each and every class member with their collection calls, text messages, and automated calls. The parties are hard pressed to argue that they cannot be given notice of this case, or that they are unlikely to come forward and prove their claims.

Anticipating that class members will not file enough claims to exhaust the meager fund established by the parties, they have agreed that any "residual" funds remaining that are unclaimed by class members-regardless of the reason-will be funneled into yet another cy pres recipient, this time involving a massive payday to the "Electronic Frontier Foundation". This

organization fails all the tests described above utilized in this circuit to analyze the appropriate use of a cy pres fund.  The EFF "is the leading nonprofit organization defending civil liberties in the digital world." ([www.eff.org/about](www.eff.org/about)).  Nothing in the allegations raised in this case remotely involve "defending civil liberties in the digital world."

The cy pres funds set forth in the Settlement Agreement are clearly improper.  For that reason alone, this Court should not approve this Settlement.

## II. The Release contemplated by the parties lacks consideration passing to the class members, and such Release is also overly broad making the proposed settlement unfair and unreasonable to the class members.

Many class members, who apparently are not receiving any compensation for the purpose of being identified as class members, consist of those persons who held chase bank accounts or credit cards and received "Automatic Alerts" intended for them.  Such class members get to feel the burn while reading the Notice on page one that unequivocally leaves them nothing for their participation as class members:

**You are part of the Settlement but are not eligible to submit a Claim for a cash payment if, on or after July 1, 2008 through December 31, 2013, you received Automatic Alerts regarding your own Chase credit card or bank account.**

(Notice, p. 1).  Instead, class members are informed that some outside entity that is certainly not a class member, named the "Consumer Federation of America" is getting One Million Dollars ($1,000,000.00) "on behalf of consumers who received Automatic Alerts regarding their own Chase credit card or bank accounts." *Id.*   Here, these class members get absolutely nothing, and wind up with their rights relinquished and eviscerated as class members without any compensation or consideration.  A release of claims without consideration results in a settlement that is not fair, reasonable or adequate, and is a settlement that a trial court cannot approve. *Reynolds v. Beneficial Natl. Bank et al, 288E3d277, 282-284 (7th Cir, 2002)*.

When members of a class are forced to release claims against the defendant that were never pursued by class counsel, it suggests a windfall of the part of class counsel. <u>Drennen v. PNC Bank Nat'l Ass'n (In re Cmty. Bank of Northern Virginia)</u>, 622 F.3d 275 at 285 (3rd Cir., 2010) referring to <u>In re Community Bank of N. Va.,</u> 418 F.3d 277 at 307-08 (3d Cir., 2005). "Failure to pursue such claims may suggest that class counsel abdicated their duty to the class in favor of the enormous class-action fee offered by defendants." <u>Id.</u> This Court should not approve this settlement, "In light of the broad release provision, which released the claims of the class members and left them with little or no relief, we determine that the certification of a mandatory class was violative of the class member's due process rights and that the consent decree was inadequate and fundamentally unfair. <u>Molski v. Gleich,</u> 318 F.3d 937 at 942 (9th Cir., 2003).

Here, the release contemplated in the Settlement Agreement protects the Defendants from "any claim . . . under or for violation of federal or state unfair and deceptive practices statutes, violations of any federal or state debt collection practices act . . ." (Stlmt Agrmt, Doc # 107-2, p. 20). Further, it insulates Defendants from any claim or suit by class members for "any form of relief, including, without limitation, damages, restitution, disgorgement, penalties and injunctive or declaratory relief." <u>Id.</u> Basically, if any claim could be brought by a class member, it is now released. Many of the class members discussed above will receive nothing for this release. Not surprisingly, the Defendants still have the right to pursue the class members for any obligations that Defendants believe remain owed to them ("Plaintiffs and all Settlement Class Members will remain fully obligated on any and all such debts.") (Stlmt Agrmt, Doc #107-2, p. 16 "Obligations of Settlement Class Members Unaffected by Settlement").

Under these facts, the payment of attorney's fees to Class Counsel is a windfall, since the class members are receiving little, if anything in exchange for giving up their legal rights to bring

suit against Defendants for any claim. This broad release suggests that the class members were "sold out" to Defendants in order for a tremendous payout of attorney's fees. *Drennen, supra.* Under the holding of *Reynolds*, consideration is non-existent for one large group of class members (that are not identified in pleadings by Class Counsel due to their large size) discussed above requiring this Court to deny the proposed settlement.

Those class members that are to receive funds are finding the consideration lacking as well due to the misleading and contradictory statements concerning the actual amount of recovery for those class members. The website set up for class members to access information about their case makes the modest claim that " . . . Plaintiffs estimate that each eligible Settlement Class Member will receive a cash award of $20-40 per claim." (www.gehrichtcpasettlement.com, "What Are the Terms of the Settlement?"). However, Class Counsels' application for attorney's fees filed with this Court on January 16, 2015 makes the bold statement that "[b]ased on the current claims rate, every eligible Settlement Class Member who fills out a simple claim form will receive a cash payment estimated to be between $140 and $155." (Doc # 140, p. 20). Compare this to an earlier representation to this Court by Class Counsel, gushing over the benefits brought to the class, that "If the settlement were approved today, each of the 121,303 claimants would receive over $156.63." (Doc # 140, p. 15).

The website fails to inform Class Members that they are only allowed to make one (1) claim for collection calls concerning their credit card account, and one (1) claim for calls made concerning their bank account. (Stlmt Agrmt, Doc # 107-2, p. 14, "Awards to Collection Call Subclass Members"). Those persons who were not Chase card holders who received a "Wrong Party Alert Call", are considered subclass members who may only make one (1) claim. *Id.* Consideration is only provided for one violation per class member, and perhaps two violations

for those class members who held both a credit card and bank account with Defendants. These remaining claims are disposed of by the flick of a pen and the signature of the parties, yet the Defendants have the specific right to pursue the class members for alleged debts owed, while the class members are rendered defenseless from such claims without any recourse.

This Court cannot rely upon the representations of Class Counsel, and should refrain from approving any settlement that has such a broad release when the class members receive pennies on the dollar for their claims. Further, any award of attorney's fees should be held back until such time that the data is turned over to the Court showing the actual claims rate, and then a determination of the value of Class Counsels' services can be determined by the Court.

**III.** **The proposed settlement is unfair and unreasonable as Class Counsel seeks to calculate their attorney's fees based upon the administrative costs of providing notice to the class and administering the claims process, a practice prohibited in the 7th Circuit.**

Class Counsel admits that of the $34 Million allegedly earmarked for the class member recovery, $2,993,225 million is "estimated administration expenses." (Doc # 140, p. 8). Class Counsel acknowledges the holding in *Redman v. Radioshack Corp., 768 F.3d 622, 630 (7th Cir. 2014*) in which the court held that such costs should not be included in the value of the settlement when calculating attorney fees. Plaintiffs fail to apply the holding of the court in *Redman* to this case. They cannot do so because it would then prove that the requested fee exceeds the amount they informed class members they would request in the notice. Here, Class Counsel picks at differences that do not distinguish the logic and reasoning of such holding, instead focusing on "complicated class forms" and "fee shifting statutes" along with coupon settlements. (Doc # 140, p. 13). Instead, Class Counsel makes the vapid argument that such holdings and their application to this case should be avoided, because the "notice program in this case provides substantial value to the Settlement Class." *Id.* Hedging their bets, Class Counsel

then makes an alternative argument that even if the Court followed the law in the 7th Circuit as it applies to such calculations under <u>Redman</u> and <u>Pearson</u>, their fees agreed upon with Defendant "would amount to a reasonable 36.7% of the fund." (Doc # 140, p. 13).

Class Counsel lacks any reasonable expectation of such an award, and this Court should not support such fractured thought process by awarding Class Counsel fees based on work and payments made to a third party prohibited in the 7th Circuit.

**IV.     The settlement is unfair to Class Members as the parties have agreed to a "clear sailing provision" concerning the amount of attorney's fees that are to be awarded to Class Counsel.**

Despite such obvious deficit in justification of the fees sought by Class Counsel by such Motion, the Defendants have agreed that they "shall not object to such a motion so long as the amount requested is not more than one-third of the Settlement Fund after deducting the Dedicated Cy Pres Distribution" (Stlmt Agrmt, Doc # 107-2, P. 21, K. "Attorneys fees and costs").  This is nothing more than a clear sailing provision. *<u>In re Bluetooth</u>, 654 F.3d 935, 946-947 (9th Cir., 2011)* ("A clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds . . . carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class") *accord, <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 960 (9th Cir., 2003); <u>Murray v. GMAC Mortg. Corp.</u>, 434 F.3d 948, 952 (7th Cir. 2006); <u>Crawford v. Equifax Payment Servs., Inc.</u>, 201 F.3d 877, 882 (7th Cir. 2000).*

Given the paucity of work attributed to Plaintiffs' counsel in this case, combined with Defendants' agreement not to object to a particular amount of money in fees, this Court should conclude that a drastic free reduction is necessary that naturally coincides with the amount of work actually performed and the result achieved for the class.

**V.     The proposed settlement is unfair and unreasonable, as Class Counsel seeks attorney's fees for time primarily spent in settlement discussions, as opposed to actual litigation of the class members' case.**

A district court may award attorneys' fees by either allowing class counsel to recover a percentage of the fund as their fee ("percentage-of-the-fund" method) or by multiplying the number of hours worked by a reasonable hourly rate ("lodestar" method). The district court has considerable discretion to determine the reasonableness of the fees. *Ustrak v. Fairman, 851 F.2d 983, 987 (7th Cir. 1988).* An appropriate attorneys' fee award is one that "re-creates" the market for the provided legal services. *Montgomery v. Aetna Plywood, Inc., 231 F. 3d 399, 408 (7th Cir. 2000).* In the Seventh Circuit, the method of calculating a fee award…rests squarely within the discretion of the district court. *Kirchoff v. Flynn, 786 F.2d 320, 329 (7th Cir. 1986).*

Here, Class Counsel has admitted that the suits in question that were consolidated were filed in July, October and November of 2012 (Doc # 140, p. 10). Settlement discussions were initiated on March 1, 2013, with the parties agreeing in all cases "to explore a settlement track". *Id.* The parties participated in mediations in April, June and November of 2013 (Doc # 140, p. 11). According to Class Counsel, after such mediations occurred, the parties reached a "basic understanding" where it took over a year to "iron out the Settlement Agreement." The parties participated in mediations in April, June and November of 2013 (Doc # 140, p. 11). According to Class Counsel, after such mediations occurred, the parties reached a "basic understanding" where it took over a year to "iron out the Settlement Agreement." *Id.* Indeed, the only work performed appears primarily directed at discovery, and that was only had and obtained through the settlement process ("Throughout the settlement negotiations, Class Counsel insisted that Chase provide them with discovery confirming the total number of Settlement Class Members.") (Doc # 140, p. 11).

The docket in this case is lacks any filings or memoranda that indicate any controversy or contentious issues were presented to this Court. Given the lack of any adversarial proceedings in this case, the Court should reduce the fees sought by Class Counsel to reflect this lack of activity, and calculate a reasonable fee on the work actually undertaken, which would reduce the fees sought by 50%- since half the time spent on this case was settlement discussions.

**VI.     The Dismissal of the Claims of Class Representative Barry Willis With Prejudice Prior to the Preliminary Approval of this Settlement raises an Appearance of Impropriety**

As this Court is aware, this matter involves the consolidation of three separate actions. The Lund case out of the United States District Court for the Southern District of California, Case No. 3:12-cv-02554, had one named plaintiff, Robert Lund. The Willis case out of the United States District Court for the Central District of California, Case No. 2:12-cv-10252, had four named plaintiffs: Barry Willis, Corey Goldstein, Paul Stemple, and Carrie Couser. As part of the Settlement Agreement, the parties agreed that the Lund action and Willis action would be dismissed without prejudice and that a Second Amended Complaint would be filed in this case adding those claims. [Doc. # 107-2, Section III(A), p. 8]. The Settlement Agreement was signed in April of 2014 by all named class representatives with the exception of Barry Willis. In fact, there was not a signature line for Mr. Willis. On June 26, 2014 a Second Amended Complaint was filed in this matter adding the named plaintiffs from the Lund and Willis cases as named plaintiffs in this case with the exception of Mr. Willis. [Doc. # 96]

On July 7, 2014, the parties filed a Joint Stipulation to Dismiss Without Prejudice in the Lund case [ USDC SD CA, Case No. 3:12-cv-02554, Doc. #36] which was granted by the Court two days later. [ USDC SD CA, Case No. 3:12-cv-02554, Doc. #37]. On June 24, 2014, just two days prior to the Second Amended Complaint being filed in the case, the parties in the Willis

case filed a Joint Request to Dismiss the Individual Claims of Barry Willis with Prejudice and the Individual Claims of Corey Goldstein, Paul Stemple and Carrie Couser and the putative class claims without prejudice. [USDC CD CA, Case No. 2:12-cv-10252, Doc. #33]. Pursuant to that stipulation, the district court dismissed the claim of Barry Willis with prejudice and all other claims without prejudice on June 25, 2014, the day before the Second Amended Complaint was filed in this case. [USDC CD CA, Case No. 2:12-cv-10252, Doc. #34].

The fact that Barry Willis did not sign the Settlement Agreement and that his claim was later dismissed with prejudice raises an appearance of impropriety. Class Counsel has not addressed the reason that Mr. Willis' claim was dismissed with prejudice and all other claims were dismissed without prejudice. A dismissal with prejudice could have been filed for any number of reasons. Perhaps Mr. Willis passed away or decided he no longer wished to proceed. Another possibility is that Mr. Willis did not agree with the settlement and, hence, refused to sign the Settlement Agreement. There is also a possibility that Mr. Willis has agreed to some sort of compensation outside of this settlement which has not been disclosed to this Court or the class members. Until Class Counsel provides information concerning the decision to dismiss Mr. Willis' claim with prejudice, the Court cannot be certain that Class Counsel has not abdicated its duties owed to members of the settlement class and this Court should not approve the Settlement.

**VII. Section H(3) of the Settlement Agreement (Remaining Funds) should be carefully scrutinized as it provides no benefit to the class members and also raises an appearance of impropriety**

Even more troublesome than the circumstances surrounding Mr. Willis' sudden disappearance is Section H(3) of the Settlement Agreement. [Doc. # 107-2, p. 17]. Pursuant to that section, monies not distributed by 120 days after the last day settlement checks may be cashed, including monies not distributed because there are insufficient funds to justify a Second

Distribution, shall be made available to pay, at Defendants' request, and subject to Class Counsel's approval, "any claim or demand asserted by or on behalf of any person who was eligible to participate as a Settlement Class Member in the Actions, provided that such claims or demands are made on or before December 31, 2014" and arise out of the same misconduct alleged in the Second Amended Complaint. In effect, Defendants, with Class Counsel's assistance, will reallocate funds which should be used to pay legitimate class members who make timely claims to pay non-class members. This clause is nothing but a reversionary clause with Class Counsel having an illusory ability to dictate how Defendants utilize those funds. Even though the funds will not be paid directly to Defendants, Defendants will, nevertheless, be direct beneficiaries of those funds in that they will be used to pay non-class claims against Defendants. It is no different than writing a check directly to the Defendants with the requirement that the funds can only be paid to settle non-class claims. Class Counsel will also directly benefit because, in effect, they will be paid a percentage of monies paid to non-class members with absolutely no oversight by this Court.

      This section provides no benefit to class members who make timely claims. It would benefit those who choose to opt out of the settlement. Those individuals will have made a "claim" at the time the settlement class was certified, well before December 31, 2014. The opt-outs would have been eligible to participate as Settlement Class members. The exclusion deadline is February 9, 2015, the same deadline for class members to file claims. Pursuant to Section M(3) of the Settlement Agreement, if there are more than 400 valid opt-out requests are filed, Defendants may terminate the settlement in its sole discretion. Class Counsel and Defendants will be able to determine the number of opt-outs and the number of claims being filed within the next few days. Based on the number of claims filed and the number of opt-outs,

Class Counsel and Defendants should be able to estimate the amount of remaining funds which may be available for payment under Section H(3). Defendants can then use that information to approach any opt-outs and use class member funds to resolve those claims. The opt-outs could potentially obtain much more favorable settlements than the class members with the assistance of Class Counsel. Not only does that raise a possible conflict of interest, it could also be an indication that this Settlement is not fair, reasonable and adequate to compensate the class members.

Class Counsel should not receive a percentage of funds being paid to non-class members. This Court should defer its decision as to the adequacy of this Settlement and Class Counsels' Motion for Fees until such time as the parties can disclose to the Court the amounts being paid under Section H(3) and the circumstances of such payments.

## CONCLUSION

For the foregoing reasons, this Court should not approve the proposed class action settlement and should not approve Class Counsels' Motion for Attorneys' Fees.

Respectfully submitted,

LAW OFFICE OF JONATHAN E. FORTMAN, LLC

    /s/ Jonathan E. Fortman
Jonathan E. Fortman (MO Bar No. 40319)
250 St. Catherine Street
Florissant, Missouri 63031
(314) 522-2312
(314) 524-1519 Fax
jef@fortmanlaw.com

Steve A. Miller
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
(303) 892-9933
(303) 892-8925  Fax
sampc01@gmail.com


John C. Kress
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO  63111
(314) 631-3883
(314) 332-1534 Fax
jckress@thekresslawfirm.com

Attorneys for Objector Steve Purgahn


**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that the foregoing has been served upon all parties this 9th day of February, 2015 via the court's electronic filing system.

                                /s/ Jonathan E. Fortman