IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN I. GEHRICH, ROBERT LUND, COREY GOLDSTEIN, PAUL STEMPLE and CARRIE COUSER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHASE BANK USA, N.A., and PMORGAN CHASE BANK, N.A.,<br><br>Defendants. | 1:12-cv-5510 |

**OBJECTIONS OF DAWN WEAVER AND SUSAN HOUSE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**

**TABLE OF CONTENTS**

I. INTRODUCTION ………………………………………………………….. 1

    A. Legal Standard …………………………………………………….. 2

II. ARGUMENT …………………………………………………………….. 3

    A. The Settlement is Unfair to Many Class Members ………………………. 3

    B. The Notice was Inadequate ………………………………………………. 4

    C. The Attorneys' Fees Requested are Too High and the Attorneys' Fee Motion does not provide Information Necessary to Review Class Counsel's Request ……………………………………………. 6

III. JOINDER IN OTHER OBJECTIONS ………………………………………. 10

IV. CONCLUSIONS ……………………………………………………………. 10

# **TABLE OF AUTHORITIES**

**Cases:**

*City of Greenville v. Syngenta Crop Prot., Inc.*
904 F. Supp. 2d 902, 909 (S.D. Ill. 2012) ………………………………………………. 9

*Florin v. Nationsbank of Ga., N.A.*
34 F.3d 560, 566 (7th Cir.1994) …………………………………………………………. 8

*Grannan v. Alliant Law Grp., P.C.*
C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ………………………… 4

*Grant v. Bethlehem Steel Corp.*
823 F.2d 20, 23 (2d Cir. 1987) …………………………………………………………. 2

*In re Synthroid Marketing Litig.*
264 F.3d 712, 718–19 (7th Cir. 2001) …………………………………………… 8, 9

*In re Warner Communications Sec. Litig.*
798 F.2d 35, 37 (2d Cir.1986) ……………………………………………………………. 2

*Kramer v. B2Mobile*
10-CV-2722-CW (N.D. Cal.) ……………………………………………………………. 4

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*
834 F.2d 677, 681 (7th Cir. 1987) ……………………………………………………. 2

*Mirfashi v. Fleet Mortgage Corp.*
356 F.3d 781, 785 (7th Cir. 2004) ………………………………………………… 2, 5

*Mullane v. Central Hanover Bank & Trust Co.*
339 U.S. 306, 317 (1950) ………………………………………………………………. 5

*Pearson v. NBTY, Inc.*
No. 12-1245, 2014 WL 6466128 (7th Cir. Nov. 19, 2014) ……………………………. 6, 7

*Redman v. Radioshack Corp.*
No. 14-1470, 2014 2014 WL 465447, -- F.3d -- at *13 (7th Cir. Sept. 19, 2014) ……. 7, 8

*Rose v. Bank of America*
No. 11-cv-02390 (N.D. Cal. Aug. 29, 2014) …………………………………… 2, 9, 10

*Silber v. Mahon*
957 F.2d 697, 701 (9th Cir. 1992) ……………………………………………………. 2

*Skelton v. Gen. Motors Corp.*
860 F.2d 250 (7th Cir. 1988) ……………………………………………………….   9

*Wal-Mart Stores, Inc. v. VISA US.A. Inc.*
396 F.3d 96, 114 (2d Cir. 2005) ……………………………………………………….   4

*Weinberger v. Kendrick*
698 F.2d 61, 70 (2d Cir. 1982) ……………………………………………………….   4

*Wilkins v. HSBC*
No. 1:14-cv-00190 (N.D. IL.pending) ……………………………………………….  10

**Codes, Rules and Other Materials**

47 U.S.C. § 227, et seq. ……………………………………………………….   1

47 U.S.C. §227(b)(3) ……………………………………………………….   3

Federal Rules of Civil Procedure Rule
    23    …………………………………………………………………….   4
    23(c)(2)(B)    …………………………………………………………….   4, 6
    23(e)(1)    ………………………………………………………………….   4
    23(e)(2)    ………………………………………………………………….   2


*An Empirical Study of Class Action Settlements and Their Fee Awards*
Brian T. Fitzpatrick, 7 J. EMPIRICAL L. STUD. 811 (2010) ……………………………….   8

*Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*
William D. Henderson, 77 TUL. L. REV. 813, 816 (2003) ……………………………….   8

## I. INTRODUCTION

Chase Bank USA, N.A. (which issues and services credit cards) and JPMorgan Chase Bank, (which provides consumer banking services) (together, "Chase") have offered to pay $34 million to settle claims for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., between July 1, 2008 through December 31, 2013. Although TCPA violations carry significant statutory damages, many class members will receive no compensation in this settlement, while others will be compensated according to a confusing "award unit" system providing higher compensation to certain class members. In addition, Chase will pay $1 million "*cy pres*" for the "benefit" of the class members receiving no compensation. The attorneys are asking the court to award them attorneys' fees of $11,000,000. Notice and settlement administration expenses are estimated at $2,993,325. Each of five class representatives seek $1,500 in compensation, for $7,500. Combined, attorneys' fees, notice and settlement administration costs, class representative payments, and cy pres distribution amount to $15,000,825.00 (approximately 44% of the settlement fund) leaving $18,999,175.00 available for payments to class members, approximately 56% of the settlement fund.

This settlement is the latest installment of virtually identical cases filed against large financial institutions regarding violations of the TCPA. The concessions made by each defendant have differed slightly in terms of size of settlement fund and degree of injunctive relief or practice changes, but the work performed by the attorneys has been strikingly similar. Each case has involved a large cadre of attorneys, including a virtually identical inner circle. The same mediator, Edward Infante Jr., has presided over settlement negotiations in many of these cases. The lawsuits have involved similar pleadings, similar discovery, similar settlement agreements, and similar motions for preliminary approval, final approval and attorneys' fees. Each motion for attorneys' fees describes the settlement as a hard fought achievement in the face of substantial litigation risk achieved with and includes similar claims regarding the complexity of the legal work performed. These motions do not however acknowledge the degree to which duplicative legal work has lightened the attorneys' workload. The motions for attorneys' fees filed in recently cases in this circuit have sought

millions of dollars in attorneys' fees providing no lodestar information at all.[1]

### A. Legal Standard

In reviewing a proposed settlement, the district court has a duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2) Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions". . . . and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and Class Members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp.* 356 F.3d 781, 785 (7th Cir. 2004).

The court must be protective of unnamed class members. "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the Class Members' interests were represented adequately.'" *Grant, citing In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir.1986). *See also Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent Class Members.") When a class action settles prior to formal class certification, the court must exercise heightened scrutiny because there is greater potential to breach the fiduciary duties owed to the class during settlement. See *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) ("When class certification is deferred, a more careful scrutiny of the fairness of the settlement is required.").

---

[1] The court should also be aware that review of class counsel's lodestar in a similar class action lawsuit involving TCPA violations led the court to reduce the requested attorneys' fees based on inflated and duplicative lodestar information in *Rose v. Bank of America*, No. 11-cv-02390 (N.D. Cal. Aug. 29, 2014) (Doc. 108, Final Approval Order, attached hereto as Exhibit A). Largely based on duplicative billing practices, the court reduced the fee award from $8,020,976.00 (including expenses) to $2,402,243.91.

## II. ARGUMENT

### A. The Settlement is Unfair to Many Class Members

The TCPA permits claimants to recover statutory damages of $500 for negligent violations and treble damages or up to $1,500 for knowing or willful violations. 47 U.S.C. §227(b)(3). Individual claimants may have received multiple non-consensual calls, so potential damages are significant. Class counsel have estimated that average recovery may be around $156.63 per valid claim form, based on the 121,303 claims submitted as of filing the attorneys' fee motion. Although this compensation is other TCPA awards only true if the portion of the class receiving no compensation at all are excluded.

This simple calculation of payment per claim form also hides the confusing information provided to class members regarding the settlement consideration. The class notice states:

> • You are part of the Settlement and are eligible to submit a Claim for a cash payment if, on or after July 1, 2008 through December 31, 2013, you received:
>
>> (1) Collection Calls. A "Collection Call" is an automated call to a cell phone in connection with attempts to collect debts relating to a Chase credit card or bank account.
>>
>> (2) Wrong-Party Automatic Alerts. A "Wrong-Party Automatic Alert" is an automated call or text to a cell phone in connection with providing account information (not sent to confirm or identify suspected fraudulent activity) relating to a Chase credit card or bank account, where the person who received the communication was not the intended recipient. Wrong-Party Automatic Alerts do not include Collection Calls.
>
> • You are part of the Settlement but are not eligible to submit a Claim for a cash payment if, on or after July 1, 2008 through December 31, 2013, you received Automatic Alerts regarding your own Chase credit card or bank account.

This summary indicates that -- unable to prevail in negotiations with the definition of prior express consent – the plaintiffs agreed that many Chase customers receiving communications from Chase will have their claims waived but receive no compensation from the settlement. The resulting structure is unfair, and confusing. The compensation structure so confuses that the settlement agreement includes hypothetical examples to explain the outcome for various types of claimants. (Settlement Agreement, Section III.G. Doc. 107-2, page 14.)

This settlement also provides little in the way of injunctive relief. Rather than requiring real affirmative changes in Chase's policies, this settlement provides that class members feeling harassed by Chase can opt out of receiving the unwanted alerts or collection calls. But this cannot be a real settlement benefit, as Chase is required by law to allow customers and other parties mistakenly receiving such calls to request they not be contacted again. In many other TCPA cases, injunctive relief ostensibly involved real practice group changes and an agreement to stop the harassing calls. In *Grannan v. Alliant Law Grp., P.C.*, C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012), the defendant agreed to a one-year injunction whereby defendant would "scrub" their automated dialing lists of cell phone numbers, and agreed not to call those numbers using an automated dialing system. In *Kramer v. B2Mobile*, 10-CV-2722-CW (N.D. Cal.), defendants agreed to a four-year injunction whereby they agreed to keep documented proof of prior express consent received from cell phone owners. As part of the injunction, defendants agreed that, prospectively, prior express consent would require an affirmative action by the customer such as clicking a box saying "I Accept." These settlements provided far more in the way of tangible benefits to class members, further underscoring the limited relief provided by this settlement.

### B. The Notice was Inadequate

Courts may refuse to approve a settlement if insufficient notice is provided to protect class members' due process rights. The notice requirements found in Rule 23 satisfies constitutional due process, but ultimately the real test of whether notice is adequate is constitutional. Fed. R. Civ. P. 23(c)(2)(B) requires "the best notice that is practicable under the circumstances." Fed. R. Civ. Proc. 23(e)(1) specifies that "direct notice" of a proposed settlement must be provided "in a reasonable manner to all Class Members who would be bound by the proposal." In addition, it must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. VISA US.A. Inc*., 396 F.3d 96, 114 (2d Cir. 2005) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982). Here, the notice problems begin with the confusing structure of the settlement. Compounding this confusion, the notice program itself was inadequate and did not involve direct notice to Chase customers.

District courts often fail to embrace how the internet has changed the requirements regarding best practicable notice. The Seventh Circuit has indicated that electronic notice should be part of class action administration in *Mirfashi v. Fleet Mortgage Corp*. 356 F.3d 781 (7th Cir. 2004):

> "But in this age of electronic communications, newspaper notice alone is not always an adequate alternative to individual notice. The World Wide Web is an increasingly important method of communication, and, of particular pertinence here, an increasingly important substitute for newspapers."

*Mirfashi* at 786, citing Brian Walters, "'Best Notice Practicable' in the Twenty–First Century," 2003 UCLA J.L. & Tech. 4. The Supreme Court's decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950) further supports the position that perfunctory notice is insufficient. "But when notice is a person's due, ***process which is a mere gesture is not due process***. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. *Mullane*, at 315-6 (emphasis added).

Particularly when direct notice is insufficient, the internet becomes the most important source of information about the settlement. Unfortunately, the URL for the settlement website (www.gehrichtcpasettlement.com) makes it hard for class members to even locate the settlement website. As the settlement releases claims against *Chase* entities, the URL should, at the least, include the name *Chase* to enable class members to easily find it when doing an internet search. The name *Gehrich* is meaningless to class members. Class members are unlikely to remember the name of the class representative, so *Gehrich* should not be the only identifier in the URL for the settlement.

On its face, the notice is inadequate. The deadlines for responding to the class notice are not sufficiently clear. Although the deadlines for filing objections and opting out of the settlement are in the notice, they are not stated in a prominent place (in the box summarizing the options provided on page 2 of the class notice -- the most obvious place to look for this information). This omission makes it harder for class members to understand when they need to act to preserve their rights, as those dates are buried within the text rather than being displayed prominently.

If a class member succeeds in finding the settlement website, they will still not have ready access to all the information they need to evaluate the fairness of the settlement. The court documents section of the website includes the Settlement Agreement, the Preliminary Approval Order and the Motion for Attorneys' Fees. But thorough evaluation of the settlement requires a consideration of the operative complaint and final approval motion. The opportunity to review the complaint is crucial – the class has a right to know the case built against the defendant.

Today, "best notice practicable" under Rule 23(c)(2)(B) demands that settling parties provide all court documents to review the course of litigation, the settlement, and the attorney fee awards on the settlement website. This reflects the reality that the internet is the primary research tool and information source for most Americans. Given the ease of reviewing documents through the internet, the only reason class counsel might not provide these documents is that they wish to hide key information from class members. As discussed infra, Section II.C., class counsel should also post their lodestar information to enable class members – the clients – the opportunity to review the fee request. Providing more information may open class counsel up to additional criticisms, however, as would be the case here had counsel provided their lodestar.

**C. The Attorneys' Fees Requested are Too High and the Attorneys' Fee Motion does not provide Information Necessary to Review Class Counsel's Request**

Class counsel's fee motion includes two types of arguments. The first concerns the methodology for awarding fees, the second concerns the level for the fees. Regarding the level for the fee award, counsel claim their requested fees are presumptively reasonable, in line with fee awards in similar cases and comport with the contracts between plaintiffs and counsel. These assertions are based on erroneous legal arguments and should be rejected entirely.

Class counsel first suggest that the fees are presumptively reasonable based on the Seventh Circuit's recent decision in *Pearson v. NBTY, Inc.,* No. 12-1245, 2014 WL 6466128 (7th Cir. Nov. 19, 2014). *Pearson* concerned a settlement that was unfair to class members and attorneys who sought presumptively unreasonable fees. In *Pearson* the district court recognized that the requested fees were too high, but the Seventh Circuit determined that the district court <u>did not go far enough</u> in reducing the fee award. The *Pearson* case provides an

excellent case in point regarding the importance of objectors, for without the objectors the settlement would probably have been approved.

Despite how negative *Pearson* was for the plaintiffs, since being issued in November of 2014, class counsel have seized upon language describing presumptively "unreasonable" fees as having created a presumption of what is reasonable. They attempt to turn the court's ruling into an endorsement of fees falling just this side of presumptively unreasonable. In *Pearson*, the court said the "presumption" should be that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson*, 2014 WL6466128 at *4.

Here, only slightly more than half of the total settlement will go to the class, so class counsel claim their "requested fee is thus presumptively reasonable under *Pearson*." Doc. 140, page 16. They have gotten it backward; under Pearson, their fee request is *almost* presumptively *un*reasonable, *not* presumptively reasonable. Their $11 million fee request is 32% of the $34 million common fund. When expenses, class representative payments and settlement administration expenses are added to the fees, and when the $1 million cy pres award is excluded, the portion not going to the class is $15,000,825. This is 44% of the settlement fund, meaning at most the class will receive 56% -- assuming that the entire balance of $18,999,175 is paid to the class (and much of this might still go to *cy pres*). Under *Pearson* this is close to the outside limit of fees presumptively unreasonable. These fees are high enough to merit close scrutiny.

The need for heightened scrutiny is even greater because of a clear sailing agreement. The defendant agreed not to contest class counsel's fee request for fees of up to one third of the settlement fund. Settlement Agreement Section III.K, Doc. 107-2, page 21. The Seventh Circuit has held that the existence of a clear sailing provision indicates the attorneys' fees should be "subjected to intense critical scrutiny by the district court." *Redman v. Radioshack Corp.*, No. 14-1470, 2014 2014 WL 465447, -- F.3d -- at *13 (7th Cir. Sept. 19, 2014). The court reasoned:

> …the defendant won't agree to a clear-sailing clause without compensation— namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider. The existence

7

of such clauses thus illustrates the danger of collusion in class actions between class counsel and the defendant, to the detriment of the class members.

*Id.* Rather than being presumptively reasonable, the fees are high and worthy of increased scrutiny because the clear sailing agreement deprives the court of an adversarial process. *See also* William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 816 (2003) (urging courts to "adopt a per se rule that rejects all settlements that include clear sailing provisions").

Class counsel also argue that the agreements with representative plaintiffs can somehow represent the market rate for attorneys' fees. Doc. 140, page 18. True, the Seventh Circuit has expressed the hope that courts will attempt to set reasonable fees at the outset. *In re Synthroid Marketing Litig.,* 264 F.3d 712, 718–19 (7th Cir. 2001) ("Timing is more important than the choice ... between percentage and hourly rates, for [both] of these systems have their shortcomings."). Fee agreements with representative plaintiffs cannot, however, serve as a proxy for market-based negotiations with a paying client. In class action litigation, the fees are awarded by the district court. Class representatives are not given authority to negotiate fees on behalf of the class before the litigation. The court may set fees at the outset of litigation; an agreement by a representative plaintiff that counsel may get 40% of a common fund lends little credibility to a fee request as this money will not be paid by the representative plaintiff. This is not how market-rate negotiations occur.

The fee request of $11 million is not a modest request. The court should be aware for settlements over $30 million, the mean percentage award nationwide is only 22.3%, much less than the fee percentage sought by Class Counsel in this case. *See Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811 (2010).

Besides the excessive nature of the request, equally problematic is that the fees class counsel seek are not substantiated by any lodestar information. Class counsel correctly point out that in the Seventh Circuit, courts in common fund cases may choose either the lodestar or percentage method of calculating fees. *Florin v. Nationsbank of Ga., N.A.,* 34 F.3d 560, 566 (7th Cir.1994). But regardless of whether the court ultimately awards fees as a percentage of a settlement fund, analysis of the time spent on the litigation is an essential

factor in determining a reasonable percentage award, particularly when indicia of self-dealing exist and when the attorneys achieved an easy, early settlement (which is often the case in settlements entered into, like this one, prior to class certification). In *Synthroid* the court noted, "The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, **in part on the amount of work necessary to resolve the litigation**, and in part on the stakes of the case." *Synthroid*, at 721.

*Synthroid* and later cases continue to underscore the importance of the lodestar cross check. In *Synthroid*, the court explicitly stated it was not overruling earlier cases in focusing on adopting a market-based approach, but was merely clarifying its earlier holdings. The Seventh Circuit's earlier holdings outlined the value of lodestar analysis. *See, e.g., Skelton v. Gen. Motors Corp.*, 860 F.2d 250 (7th Cir. 1988).

More recent case law supports the ongoing importance of conducting a lodestar cross check. *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 909 (S.D. Ill. 2012), determined that lodestar analysis confirmed the reasonableness of a one-third percentage award. The lodestar supported the fee award because "Class Counsel dedicated thousands of attorney hours and millions of dollars over eight years to pursue this action with no guarantee of ever recovering their investment." *Id.*

Although all too frequently courts rubber stamp lodestar information provided by class counsel, *Rose v. Bank of America*, No. 11-cv-02390 (N.D. Cal. Aug. 29, 2014) (Exhibit A), shows that careful analysis of lodestar information may well reveal inefficiencies and duplicative work that a paying client would not stand for. The lodestar information provided by class counsel in *Rose* was crucial to the court's decision to reduce the fees from the requested $8,020,976.00 (including expenses) to $2,402,243.91 – representing approximately 7 % of the settlement fund. The settlement fund was increased by approximately five and a half million dollars. The court's decision was based in part on a finding that the lodestar information was inflated and duplicative, particularly in two phases, mediation and settlement, and case investigation. The court found class counsel's strategy of filing multiple duplicative and presumably coordinated lawsuits resulted in far too many attorneys participating in the settlement negotiations. The court should pay particular attention to that decision, which reflected a careful analysis of information submitted by Class Counsel,

including detailed reports substantiating counsel's lodestar

This case is more than just a relevant comparison, however. The same attorneys litigating *Rose* are represented here – on both sides. These attorneys have an established practice of filing class actions settled within a relatively short time, accompanied by large fee requests.

More recently, in *Wilkins v. HSBC*, pending in the Northern District of Illinois, U.S. District Court Judge Hon. James F. Holderman rejected class counsel's request for attorneys' fees with no lodestar information, and ordered that each attorney seeking payment from the settlement fund submit their lodestar information as a cross check on the reasonableness of the fee request. See Doc. 89, Case: 1:14-cv-00190, attached hereto as Exhibit B. That case also involved many of the attorneys participating in this case.

Analysis of class counsel's billing records are likely to reveal that the fees requested here represent a double digit lodestar multiplier. Counsel's lodestar information may well reveal that class counsel are seeking two thousand dollars or more for legal support staff, and much higher rates for senior attorneys -- often billing an unreasonable number of hours. To approve fees like this that no willing client would support – based on largely duplicative work – would be an abuse of discretion by this court. District courts are afforded wide discretion in analyzing attorney fee petitions. However, class counsel seek to mislead the court into approving this settlement without properly analyzing the basis for the fee request. Analysis of the percentage fee award requires analysis of the time spent on the litigation. Class Counsel did not provide the court sufficient information to do this analysis.

### III. JOINDER IN OTHER OBJECTIONS

This objector joins in and adopts all other well-founded and meritorious objections.

### IV. CONCLUSIONS

The confusing structure of this settlement excludes class members, provides more limited compensation to other class members, and is overall very unfair for the class. For this mediocre result class counsel seek millions in attorneys' fees, without even providing summary information regarding the hours expended on behalf of the class. And all others to be presented at oral argument, this objector requests that the court grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

Dated: February 9, 2015                    By:/s/ Joseph Darrell Palmer

                                                                        Joseph Darrell Palmer
Law Offices of Darrell Palmer PC
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Phone: (858) 215-4064
Fax: (866) 583-8115
Email: darrell.palmer@palmerlegalteam.com

Counsel for Objectors Dawn Weaver and Susan House

## CERTIFICATE OF SERVICE

I certify that on February 9, 2015, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of Illinois by using the USDC CM/ECF system.

I certify that all participants in the case registered CM/ECF users that service will be accomplished by the USDC CM/ECF system.

I further certify that on this day copies of this document were mailed via US Postal Service, postage prepaid, to the following recipients:

| Class Counsel: | For Defendants: |
|---|---|
| Beth Terrell | Julia B. Strickland |
| Terrell Marshall Daudt & Willie PLLC | Stroock & Stroock & Lavan, LLP |
| 936 N. 34th Street, Ste. 300 | 2029 Century Park East, 16th Floor |
| Seattle, WA 98103 | Los Angeles, CA 90067 |

                                              /s/ Joseph Darrell Palmer
                                              Joseph Darrell Palmer