IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN I. GEHRICH, ROBERT LUND, COREY GOLDSTEIN, PAUL STEMPLE and CARRIE COUSER, individually and on behalf of all others similarly situated, | NO. 1:12-CV-5510 |
| Plaintiffs, | |
| v. | Honorable Gary Feinerman |
| CHASE BANK USA, N.A., and JPMORGAN CHASE BANK, N.A., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF FEES AND APPROVAL OF SERVICE AWARDS IN CONNECTION WITH THE SETTLEMENT**

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND .................................................................................................... 2

    A.      The Settlement ................................................................................................ 2

    B.      Class Counsel Faced Substantial Risk of Nonpayment ................................. 2

    C.      Class Counsel Performed High-Quality Work ............................................... 3

        1.      The *Gehrich* Action ........................................................................... 3

        2.      The *Lund* Action ................................................................................ 3

        3.      The *Goldstein* Action ......................................................................... 3

        4.      The Consolidated Action ..................................................................... 4

        5.      The Parties' Mediations ...................................................................... 4

        6.      Confirmatory Discovery ...................................................................... 4

    D.      Class Counsel's Fee Request .......................................................................... 5

    E.      The Class Notice and Claims Administration Program ................................. 6

III.    SEVENTH CIRCUIT STANDARD FOR SETTLEMENT APPROVAL ...................... 8

IV.     ARGUMENT ......................................................................................................... 10

    A.      Class Counsel's Requested Fee Award of One-Third of the Fund
        Is Reasonable ................................................................................................. 10

        1.      The Requested Fee Is Presumptively Reasonable .................................. 10

        2.      The Requested Fee Is in Line with Fee Awards in Similar .................... 10

        3.      The Requested Fee Comports with the Contracts Between
                Plaintiffs and Counsel ........................................................................... 12

        4.      Other Factors Support the Requested Fee ............................................. 13

           a.      Risk of Nonpayment ................................................................... 13

           b.      Quality of Performance............................................................... 15

           c.      Amount of Work Invested .......................................................... 15

           d.      Stakes of the Case ...................................................................... 16

    B.      The Service Awards to the Class Representatives Should Be Approved ........... 16

V.      CONCLUSION............................................................................................................... 17

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Abbott v. Lockheed Martin Corp.*,
  Case No. 06-cv-701-MJR-DGW, 2015 WL 4398475 (N.D. Ill. July 17, 2015) ............. 11

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
  No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ........................................... 10

*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*,
  743 F.3d 243 (7th Cir. 2014) .......................................................................................... 8

*AT&T Mobility LLC v. Concepcion*,
  --- U.S. ---, 131 S.Ct. 1740 (2011) .......................................................................... 13, 14

*Balschmiter v. TD Auto Fin., LLC*, --- F.3d. ---,
  Case No. 13-cv-1186 JPS, 2014 WL 6611008 (E.D. Wis.  Nov. 20, 2014) .................. 14

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
  480 F. Supp. 1195 (S.D.N.Y. 1979) .............................................................................. 12

*Bickel v. Sheriff of Whitley Cnty*,
  No. 1:08-cv-102-TLS, 2015 WL 1402018 (N.D. Ind. March 26, 2015) ....................... 11

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  302 F.R.D. 240 (N.D. Ill. 2014) .................................................................................... 14

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................................................ 8

*CE Design, Ltd. v. Exterior Sys., Inc.*,
  Case No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) ........................................................ 11

*City of Greenville v. Syngenta Corp Prot., Inc.*,
  904 F. Supp. 2d 902 (S.D. Ill. 2012) ............................................................................ 11

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ...................................................................................... 16

*Cummings v. Sallie Mae*,
  Case No. 12 C-9984 (N.D. Ill. May 30, 2014) .............................................................. 10

*Desai v. ADT Sec. Servs., Inc.*,
    Case No. 1:11-cv-01925 (N.D. Ill. Feb. 14, 2013) ...................................................... 10

*Desai v. ADT Sec. Servs., Inc.*,
    Case No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) ..................................................... 10

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ....................................................................................... 2

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560 (7th Cir. 1994) .......................................................................................... 8

*Garret, et al. v. Sharps Compliance, Inc.*,
    Case No. 1:10-cv-04030 (N.D. Ill. Feb. 23, 2012) ..................................................... 10

*Gaskill v. Gordon*,
    942 F. Supp. 382 (N.D. Ill. 1996) ................................................................................ 9

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ...................................................................................... 12

*Green v. DirecTV, Inc.*,
    10 C 117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010)................................................. 14

*Greene v. Emersons Ltd.*,
    No. 76 Civ. 2178 (CSH), 1987 WL 11558 (S.D.N.Y. May 20, 1987) .......................... 12

*Gusman v. Comcast Corp.*,
    298 F.R.D. 592 (S.D. Cal. 2014) ................................................................................ 13

*Heekin v. Anthem, Inc.*,
    No. 1:05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012).................................... 17

*Holtzman v. CCH*,
    Case No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) ..................................................... 11

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    792 F. Supp. 2d 1028 (N.D. Ill. 2011) ....................................................................... 14

*In re Ampicillin Antitrust Litig.*,
    526 F. Supp. 494 (D.D.C. 1981) ................................................................................ 12

*In re Bankcorp. Litig.*,
    291 F.3d 1035 (8th Cir. 2002) .................................................................................... 12

*In re Combustion, Inc.*,
    968 F. Supp. 1116 (W.D. La. 1997)................................................................ 12

*In re Dairy Farmers of Am., Inc.*,
    No. 09-cv-3690, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) .............. 11

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
    280 F.R.D. 364 (N.D. Ill. 2011)............................................................ 8, 11

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................ 12

*In re Southwest Airlines Voucher Litig.*,
    No. 11 C 8176, 2013 WL 4510197 (N.D. Ill., Aug. 26, 2013)........................ 17

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ................................................................ 16

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989).......................................................... 9

*Jamison v. First Credit Servs.*,
    290 F.R.D. 92 (N.D. Ill. 2013)............................................................. 14

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ............................................................... 12

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ........................................................... 12

*Martin v. Dun & Bradstreet, Inc. et al.*,
    Case No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) ........................................ 10

*Matter of Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ............................................................... 9

*McCue v. MB Fin., Inc.*,
    Case No. 15 cv 988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ................... 11

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) .......................................................... 1, 2, 6, 10

*Prena v. BMO Fin. Corp.*,
    No. 15 C 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ....................... 11

*Redman v. RadioShack Corp.,*
    768 F.3d 622 (7th Cir. 2014) ................................................................................ 1, 2, 6

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP,*
    Case No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)................................ 13

*Saf-T-Gard Int'l v. Vanguard Energy Servs.,*
    Case No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012)................................. 14

*Steinfeld v. Discover Fin. Servs.,*
    No. C 12-01118 (N.D. Cal. Mar. 10, 2014) ................................................................... 10

*Stumpf v. PYOD,*
    12 C 4688, 2013 WL 6123156 (N.D. Ill. Nov. 20, 2013)............................................... 12

*Sutton v. Bernard,*
    504 F.3d 688 (7th Cir. 2007) ............................................................................ 8, 13, 15

*Taubenfeld v. AON Corp.,*
    415 F.3d 597 (7th Cir. 2005) ........................................................................... 10, 11, 12

*Van Gemert v. Boeing Co.,*
    516 F. Supp. 412 (S.D.N.Y. 1981).................................................................................. 12

*Will v. Gen. Dynamics Corp.,*
    Civil No. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010).................... 12, 17

*Zolkos v. Scriptfleet, Inc.,*
    No. 12 Civ. 8230 (GF), 2015 WL 4275540 (N.D. Ill. July 13, 2015) ........................... 11

# I. INTRODUCTION

Class Counsel file this memorandum in support of their motion for an award of attorneys' fees and out-of-pocket costs. The Settlement Agreement provides that Class Counsel may seek a fees and costs award in the amount of $11 million, or 33.33% of the gross $34 million Settlement Fund after deducting the $1,000,000 Dedicated *Cy Pres* Distribution. After Class Counsel negotiated the Settlement Agreement, the Seventh Circuit issued two decisions indicating that attorneys' fees should be calculated after excluding notice and claims administration costs from the settlement fund. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014), *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014). In light of *Redman* and *Pearson*, Class Counsel respectfully reduce their fee request to $9,507,603, which amounts to 33.33% of the net settlement fund after deducting the Dedicated *Cy Pres* Distribution and notice expenses totaling approximately $4,477,191. Class Counsel's request subsumes all litigation costs.

Class Counsel's requested fee is within the market price for contingent legal fees in complex litigation, and is reasonable and appropriate given the attorneys' fees awarded in similar cases, the risks presented by this case, the quality and amount of work performed by Class Counsel, the high stakes presented, and the result achieved. The requested fee also is at the low end of the range that the Seventh Circuit has suggested is presumptively reasonable. *See Pearson*, 772 F.3d at 782 (suggesting in a consumer class action case "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel").

Class Counsel also respectfully request that the Court award modest, routine service awards to each of the five named Plaintiffs in the amount of $1,500 each, for their work on behalf of the Class. For these reasons and those that follow, Plaintiffs respectfully request that their motion be granted.[1]

---

[1] Consistent with *Redman v. Radioshack Corp*., 768 F.3d 622, 637–38 (7th Cir. 2014), Plaintiffs will post this brief on the settlement website, www.GehrichTCPAsettlement.com, within 24 hours of filing.

## II. BACKGROUND

**A.**     **The Settlement**

The proposed settlement establishes a $34,000,000 "Settlement Fund," which will be used to pay: (1) cash settlement awards to eligible Settlement Class Members; (2) $1,000,000 to the Consumer Federation of America ("CFA") on behalf of Alert Call Subclass members ("Dedicated *Cy Pres* Distribution"); (3) notice and administration costs; (4) court-approved attorneys' fees and costs up to $11,000,000 (one-third of the Settlement Fund after subtracting the Dedicated *Cy Pres* Distribution); and (5) court-approved service payments to Plaintiffs (up to $1,500 each). (Dkt. No. 107-2 § III.D.–H.) The settlement details are summarized in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. (Dkt. No. 107.)

On August 12, 2014, this Court entered a preliminary approval order finding that "[s]ubject to the Final Approval Hearing, the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class…." (Dkt. No. 117.) Following entry of the preliminary approval order, the Court sought further briefing from the parties regarding whether the settlement comports with recent decisions of the Seventh Circuit, including *Redman*, *Pearson*, and *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014). (*See* Dkt. Nos. 120, 123.) The parties submitted a brief that explained in detail why this settlement, which establishes an actual, non-reversionary cash fund of $34,000,000, differs from the claims-made, reversionary settlements addressed by the Seventh Circuit in the recent trio of cases. (*See* Dkt. No. 124.)

**B.**     **Class Counsel Faced Substantial Risk of Nonpayment**

Class Counsel took this matter on a pure contingency basis. Class Counsel have devoted substantial resources to the prosecution of this case with no guarantee that they would be compensated for their time or reimbursed for their expenses. (*See* Dkt. No. 140-1 ¶¶ 25–26; Dkt. No. 140-2 ¶ 13; Dkt. No. 140-3 ¶ 9; Dkt. No. 140-4 ¶ 10; Dkt. No. 140-5 ¶ 12; Dkt. No. 140-6 ¶ 12; Dkt. No. 140-7 ¶ 13; Dkt. No. 140-8 ¶ 12.) The risks presented by taking this case are not academic: Class Counsel have lost cases alleging the same or similar claims as those alleged here, recovering nothing for their efforts. (*See, e.g.*, Dkt. No. 140-1 ¶ 28.) This case is

especially risky given Chase has asserted that an arbitration provision bars the claims of a substantial portion of the Class.  (*See* Dkt. No. 107-5 ¶ 15.)

**C.**    **Class Counsel Performed High-Quality Work**

The settlement is the result of over three years of litigation involving three separate class actions that ultimately were consolidated in this Court.

1.    The *Gehrich* Action

Plaintiff Jonathan Gehrich filed a class action complaint against Defendant Chase Bank USA, N.A. in the Northern District of Illinois on July 12, 2012.  *Gehrich v. Chase Bank USA, N.A.*, Case No. 1:12-cv-5510 ("*Gehrich* Action").  Plaintiff Gehrich filed an amended complaint against JPMorgan Chase Bank, N.A. after learning that this entity placed some of the calls at issue in the case.  Plaintiff Gehrich vigorously pursued documentary and electronic discovery seeking information regarding the calls that had been placed and Chase's alleged "consent" defense, moving to compel documents, data, and the designation of Fed. R. Civ. P. 30(b)(6) witnesses regarding Chase's databases and telemarketing policies.  (*See* Dkt. No. 56.)

2.    The *Lund* Action

On October 19, 2012, Plaintiff Robert Lund filed a class action complaint against Chase Bank USA, N.A. in the Southern District of California.  *Lund v. Chase Bank USA, N.A.*, Case No. 12-cv-2554 H (DHB) ("*Lund* Action").  On March 1, 2013, the parties met with United States Magistrate Judge Honorable David H. Bartick, and in the course of those discussions agreed to explore a settlement track together with counsel in the *Goldstein* and *Gehrich* Actions.

3.    The *Goldstein* Action

On November 30, 2012, Plaintiffs Corey Goldstein, Paul Stemple, and Carrie Couser filed a class action against JPMorgan Chase Bank, N.A. in the Central District of California.  *Goldstein v. JPMorgan Chase Bank, N.A.*, No. 2:12-cv-10252 DMG (SH) ("*Goldstein* Action").  Before filing the *Goldstein* Action, counsel extensively investigated the factual basis for the claims, including the proper entities to sue and whether Chase had any prior TCPA violations.  (*See, e.g.*, Dkt. No. 140-6 ¶ 19.)  Counsel also conducted legal research regarding the plaintiffs'

standing to sue the various Chase entities. (*Id.*) After the case was filed, the plaintiffs participated in an early settlement conference and served written discovery. (*Id.* ¶ 20.) Counsel actively participated in mediation and subsequent settlement discussions. (*Id.* ¶ 21.)

4.   The Consolidated Action

Plaintiffs' counsel in the above actions agreed to work collaboratively to prosecute the actions in the most efficient and effective manner possible. They coordinated their efforts with respect to mediation and confirmatory discovery. As part of the Settlement Agreement, they agreed to dismiss the *Lund* and *Goldstein* Actions and to pursue global relief for the class in a single forum. On June 25, 2014 this Court granted Plaintiff Gehrich's motion to file a Second Amended Complaint ("SAC"), consolidating the three actions in this Court. (Dkt. No. 95.) Plaintiffs filed the SAC the next day. (Dkt. No. 96.)

5.   The Parties' Mediations

The parties participated in three formal mediation sessions before the Honorable Edward A. Infante (Ret.), on April 25, 2013, June 4, 2013, and November 14, 2013. (Dkt. No. 107-5 ¶ 14.) The parties also participated in several subsequent telephonic settlement conferences and calls with Judge Infante. (*Id.*) In connection with these mediation sessions, the parties submitted detailed mediation briefs to Judge Infante, setting forth their respective views on the strengths of their cases. (*Id.*) During the mediation sessions, the parties discussed their relative views of the law and the facts and potential relief for the proposed class. (*Id.*)

After the parties reached a basic understanding, it took over a year of contentious negotiations to iron out the Settlement Agreement. The parties exchanged proposals and counterproposals on several aspects of the settlement including class member eligibility, *cy pres*, injunctive relief, and notice to the class. At all times, the negotiations were adversarial, non-collusive, and at arm's length.

6.   Confirmatory Discovery

Throughout the settlement negotiations, Class Counsel insisted that Chase provide them with discovery confirming the total number of Settlement Class Members. (Dkt. No. 140-1

- 4 -

¶ 19.)  Class Counsel propounded written discovery requests and deposed the person most knowledgeable at Chase about its calling databases, policies, and practices.  (*Id.*)  Class Counsel agreed to execute the Settlement Agreement only after they received comprehensive information from Chase that permitted them to assess whether the settlement was fair and reasonable.  After learning that complete contact information for the Settlement Class had not been transmitted to the claims administrator for notice purposes, Class Counsel conducted further discovery, deposing a Chase representative about the steps Chase took to identify the missing names and addresses and ensure that its information was complete.  (*See* Ex. A (Declaration of Beth E. Terrell ("Terrell Decl.")) ¶¶ 2–4.)

### D.  Class Counsel's Fee Request

Class Counsel previously filed a fee petition, Dkt. No. 140, which sought the full $11,000,000 that was negotiated by the parties, but now revise their request to seek a total award of attorneys' fees of $9,507,603, or 33.33% of the Settlement Fund after subtracting (1) the $1,000,000 Dedicated *Cy Pres* Distribution and (2) notice expenses of approximately $4,477,191.  Class Counsel's request is well under the fee that Class Counsel negotiated with Chase as part of the settlement and which they regarded as reasonable based on the benefits achieved for the Class and applicable legal principles.  Like the settlement itself, the parties agreed to the fee amount under the auspices and with the assistance of Judge Infante.

The fee amount is consistent with Plaintiffs' fee agreements with Class Counsel.  (*See* Dkt. No. 140-3 ¶ 9 (contingency agreement required Mr. Gehrich to pay counsel 40%, after costs, of any judgment or settlement obtained on his behalf); Dkt. No. 140-7 ¶ 13 (contingency agreement requires Plaintiff Lund to pay 50% including costs of any judgment or settlement obtained on his behalf); Dkt. No. 140-4 ¶ 11 (contingency agreement requires Stemple and Couser to pay 33.33%, of any settlement proceeds or judgment they obtain).)  The Court's approval of the Settlement Agreement, however, is not conditioned on an award of fees and costs in the amount Class Counsel request.  In other words, the Court can approve the settlement and

award Class Counsel a lesser amount in fees, such as that requested here, without undoing the settlement itself.

**E.**     **The Class Notice and Claims Administration Program**

The Seventh Circuit recently found in *Redman* and *Pearson* that notice and claims administration costs do not provide value to a settlement class. *See Redman*, 768 F.3d at 630; *Pearson*, 772 F.3d at 781. Both of these cases were brought under fee-shifting statutes and both involved settlements where the primary class relief (coupons in *Redman* and small cash awards in *Pearson*) was contingent on class members filing lengthy, complicated claim forms and the notice program appeared designed to deter rather than encourage claims. The Seventh Circuit reasoned that these notice programs constitute a cost to the class rather than a benefit.

Plaintiffs respectfully submit that the notice program in this case provides substantial value to the Settlement Class. Chase estimates that the Collection Call Subclass consists of 18,370,250[2] individuals and the Alert Call Subclass consists of 13,927,106 individuals. (Dkt. No. 107-5 ¶ 13.) However, throughout the litigation and negotiations, Chase adamantly maintained that contact information did not exist for a large portion of the proposed Settlement Class; a proposition confirmed by discovery. Class Counsel consulted with various notice providers to determine the best and most cost-efficient way to reach these Settlement Class Members. (*Id.*) Class Counsel also devoted substantial time to drafting, reviewing, and revising the various forms of notice and claim form. (*Id.*) As a result of their efforts, the email and postcard notices that Settlement Class Members received are clearly-written, informative, and to the point. (*Id.*) The email and postcard notices are designed to encourage claims, allowing a Settlement Class Member to submit the form by mail or online, and only requiring the Settlement Class Member to check a box and sign his/her name to receive a cash payment. (*Id.*)

---

[2] During the latest round of confirmatory discovery, Chase informed Plaintiffs that it made a de-duplication error when it originally calculated the size of the Collection Call Subclass. Thus, Chase revised its estimate of the size of the Collection Call Subclass from 19,859,245 to 18,370,250. (Terrell Decl. ¶ 5.)

Chase originally provided 15,942,691 records containing names, U.S. mailing addresses, and email addresses where available to claims administrator, Garden City Group ("GCG"). (Declaration of Lael Dowd Concerning Implementation of Notice Plans ("Dowd Decl.") ¶ 8.) GCG sent email notices to 11,404,065 Settlement Class members for whom Chase had provided email addresses. (*Id.* ¶ 9.) GCG also mailed notice to Settlement Class members for whom GCG had a mailing address but no email or whose email was returned undeliverable and could not be resent. (*Id.* ¶¶ 11–14.) Approximately 15,198,595 Settlement Class members were sent direct notice that has not been returned to GCG. (*Id.* ¶ 15.) To reach Settlement Class members who could not be notified directly, GCG supplemented the direct email and mail program with publication notice, publishing a summary of the settlement in two issues of *People*, one issue of *Better Homes and Gardens* and two issues of *Sports Illustrated.* (*Id.* ¶ 16.)

Before the final approval hearing, the parties realized that GCG had not been provided names and contact information for what they understood were approximately 7.1 million persons in the Settlement Class. Chase investigated the issue and subsequently provided GCG with a list of names and contact information for 7,103,530 Settlement Class members. (Dowd Decl. ¶ 18.) GCG eliminated duplicate names and addresses and determined that 4,990,596 Settlement Class members inadvertently were not provided direct notice by U.S. Mail or E-mail as set forth in the Settlement Agreement and the Court's Preliminary Approval Order (Dkt. 117). The parties agreed that the final approval hearing should be continued so that GCG could send notice to these Settlement Class members and provide them with an opportunity to object to, or exclude themselves from, the settlement. (Dkt. No. 176.)

In addition, at Class Counsel's insistence, the parties agreed that a supplemental "reminder" notice should be sent to Settlement Class Members who originally received notice but, for whatever reason, did not submit a claim. (*Id.*) The Court entered an order approving the parties' proposal. (Dkt. No. 178.) The supplemental reminder notice added approximately $1.5 million to the total cost of the notice program, but has proved well worth the expense. Although one month remains in the claims period, 314,829 claims have been submitted. (Dowd Decl.

¶ 38.)  These claimants include 177,098 claims submitted after supplemental notice was sent to the class members who did not originally receive direct notice and reminder notices were sent to Settlement Class Members who did not submit claims by the original deadline.  (*Id.* ¶ 45.)[3]  In contrast, only 15 Settlement Class Members have objected to the settlement to date and only 216 requested to opt out.  (*Id.* ¶¶ 33–37.)[4]  The notice program's total cost is approximately $4,477,191.  (*Id.* ¶ 47.)

### III.  SEVENTH CIRCUIT STANDARD FOR SETTLEMENT APPROVAL

The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit").

In common fund cases, unlike fee-shifting cases, courts have discretion to use one of two methods to determine whether the request is reasonable:  (1) percentage of the fund; or (2) lodestar plus a risk multiplier.  *See, e.g., Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).  However, "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class."  *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011).  "[T]here are advantages to utilizing the percentage method in common fund

---

[3] This total includes potentially invalid claims.  Before final approval, GCG will analyze the claims submitted and identify those that appear to have been fraudulently submitted.  For example, some Settlement Class Members may have submitted multiple claims.

[4] This total includes untimely or otherwise potentially invalid opt outs.

cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994).

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Capital One TCPA Litig.*, --- F.Supp.3d ---, MDL No. 2416, 2015 WL 605203, at *10 (N.D. Ill. Feb. 12, 2015) (percentage of the fund method "more likely to yield an accurate approximation of the market rate")*; Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

The percentage-of-the-fund method should be used here. Class Counsel and Plaintiffs have created a $34 million non-reversionary settlement fund that provides substantial, actual value to Settlement Class Members. After deducting the $1,000,000 Dedicated *Cy Pres* Distribution, approximately $4,477,191 in administration expenses, the requested $9,507,603 fee, and requested service awards for the Class Representatives totaling $7,500, the remaining $19,010,207 will be used to pay cash awards directly to Settlement Class Members who file claims. Based on the number of claims to date (and without conducting a complete analysis of potentially fraudulent claims), Settlement Class Members who file a timely claim will receive $22.39, $67.17 or $89.56 depending on whether they received calls regarding a Chase bank account, credit card, both, or were not Chase customers and received "wrong-party" calls.[5]

---

[5]The Settlement Agreement provides that cash awards will be calculated using a weighted "Award Unit" system. Assuming all claims submitted to date are valid, Settlement Class Members who received collection calls regarding a bank account will receive $22.39 (one Award

Although these amounts likely will lower slightly as claims come in during the final month of the claims period, they are still in line with amounts paid in other TCPA settlements. *See, e.g., Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.,* Case No. 1:11-cv-01925 (Dkt. No. 229) (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51).

---

Unit).  Settlement Class Members who received collection calls regarding a credit card will receive $67.17 (three Award Units).  Settlement Class Members who received collection calls regarding both a bank account and a credit card will receive $89.56 (four Award Units).  Settlement Class Members who received "wrong-party" calls or texts will receive $67.17 (three Award Units).  To date, 72,040 claims received specify collection calls regarding a bank account; 118,197 claims specify collection calls regarding a credit card; 77,056 claims specify collection calls regarding both a bank account and a credit card; and 37,984 claims indicate the call recipient did not have either a bank or credit card account with Chase. (Terrell Decl. ¶¶ 6–7.)

# IV.  ARGUMENT

**A.**  **Class Counsel's Requested Fee Award of One-Third of the Fund Is Reasonable**

1.  The Requested Fee Is Presumptively Reasonable

The Seventh Circuit recently suggested that in consumer cases which often have low claims rates the "presumption" should be that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson*, 772 F.3d at 782.  After subtracting the Dedicated *Cy Pres* Distribution, and administration expenses, Class Counsel seek one-third of the $28,522,809 remaining in the Settlement Fund.  Therefore, the requested fee is presumptively reasonable under *Pearson*.

2.  The Requested Fee Is in Line with Fee Awards in Similar Cases

To determine the market price, it is appropriate to consider information from other cases. *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).  The requested fee is at the market price, and therefore reasonable, as reflected in the fees approved by judges in this district in TCPA cases.  *See Martin v. Dun & Bradstreet, Inc. et al.*, Case No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third of defendants' total payout for fees); *Cummings v. Sallie Mae*, Case No. 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Desai v. ADT Sec. Servs., Inc.*, Case No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (fees equal to one-third of the settlement fund); Dkt. No. 140-9 (fees equal to one-third of the settlement fund plus expenses); Dkt. No. 140-10 (fees equal to one-third of settlement plus expenses); Dkt. No. 140-11 (fees and expenses equal to 33% of the settlement fund); Dkt. No. 140-12 (fees equal to one-third of settlement plus expenses); Dkt. No. 140-13 (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, Case No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, Case No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same).

Class Counsel's requested fee also reflects fees approved by other courts in non-TCPA cases in this Circuit and elsewhere.  *See McCue v. MB Fin., Inc.*, Case No. 15 cv 988, 2015 WL

4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus litigation costs); *Abbott v. Lockheed Martin Corp.*, Case No. 06-cv-701-MJR-DGW, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding 33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230 (GF), 2015 WL 4275540 (N.D. Ill. July 13, 2015) (awarding 33.33% of the fund plus expenses); *Prena v. BMO Fin. Corp.*, No. 15 C 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (awarding 33.5% of the fund after deducting notice expenses); *Bickel v. Sheriff of Whitley Cnty*, No. 1:08-cv-102-TLS, 2015 WL 1402018 (N.D. Ind. March 26, 2015) (awarding 43.7% of the fund); *In re Dairy Farmers of Am., Inc.*, No. 09-cv-3690, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) (awarding 33.33% of the fund); *Taubenfeld*, 415 F.3d at 600 (noting counsel had submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30–39% of the settlement fund); *In re Ky. Grilled Chicken*, 280 F.R.D. at 380–81 (citing cases, and describing a fee of 32.7% of the common fund as "well within the market rate and facially reasonable"); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908–09 (S.D. Ill. 2012) (approving a one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price" and citing cases); *Will v. Gen. Dynamics Corp.*, Civil No. 06-698-GPM, 2010 WL 4818174, *3 (S.D. Ill. Nov. 22, 2010) (finding "the market rate for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate");  *In re Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of the settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of attorneys' fees equal to 33.33% of the total recovery); *Greene v. Emersons Ltd.*, No. 76 Civ. 2178 (CSH), 1987 WL 11558, *8 (S.D.N.Y. May 20, 1987) (awarding attorneys' fees and expenses in excess of 46% of the settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131–32 (W.D. La. 1997) (awarding attorneys' fees equal to 36% of the common fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 503 (D.D.C. 1981) (awarding attorneys' fees in excess of 40% of the settlement fund); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195, 1198–99 (S.D.N.Y. 1979)

- 12 -

(awarding fees in excess of 50% of the settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding fees of 36% of fund).

  3. <u>The Requested Fee Comports with the Contracts Between Plaintiffs and Counsel</u>

  In addition to analyzing the market price for legal services from analogous cases, courts also may examine "actual fee contracts that were negotiated for private litigation." *See Taubenfeld*, 415 F.3d at 59; *see also Stumpf v. PYOD*, 12 C 4688, 2013 WL 6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms). The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *See Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

  Here, Plaintiffs entered into retainer agreements with Class Counsel that reflect or exceed this fee range. (*See* Dkt. No. 140-3 ¶ 9; Dkt. No. 140-7 ¶ 13; Dkt. No. 140-4 ¶ 11; Dkt. No. 140-6 ¶ 13.) Such evidence supports a finding that the requested fee reflects the market rate.

  4. <u>Other Factors Support the Requested Fee</u>

  The Seventh Circuit has held that the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Each factor supports the requested fee.

- 13 -

a.     *Risk of Nonpayment*

Prosecution of this action has involved significant financial risk for Class Counsel.  Class Counsel undertook this matter solely on a contingent basis, with no guarantee of recovery.  (*See* (Dkt. No. 140-1 ¶¶ 25–26; Dkt. No. 104-2 ¶ 13; Dkt. No. 104-3 ¶ 9; Dkt. No. 140-4 ¶ 10; Dkt. No. 140-5 ¶ 12; Dkt. No. 140-6 ¶ 12; Dkt. No. 140-7 ¶ 13; Dkt. No. 140-8 ¶ 12.)  One of the primary battles in every TCPA action involves class plaintiffs' attempts to determine the size and scope of the class.  Those facts are not known by plaintiffs' counsel before they file a lawsuit, and typically require contentious discovery and litigation before ever becoming known.  This case is no different.  Class Counsel engaged in contested motion practice during discovery in an effort to determine the scope of the class.  In *Gehrich*, Plaintiffs moved to compel and the parties fully briefed the issue.  (*See* Dkt. Nos. 56–65.)  Although this litigation was stayed before the Court ruled, it is unclear how the Court would have decided.  TCPA plaintiffs sometimes lose such motions and are unable to proceed on a class basis as a result.  *See, e.g., Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596–97 (S.D. Cal. 2014) (denying motion to compel production of call data).

In addition, Chase maintains that JPMC Bank account holders signed arbitration agreements that purported to waive the account holders' right to bring a class action lawsuit. The United States Supreme Court has held that such agreements are enforceable.  *AT&T Mobility LLC v. Concepcion*, --- U.S. ---, 131 S.Ct. 1740, 1748–49 (2011).  Chase very likely would have moved to dismiss this portion of the class and compel arbitration had the case not settled.

Plaintiffs also faced challenges at class certification.  Courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case.  *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin., LLC*, --- F.3d. ---, Case No. 13-cv-1186 JPS, 2014 WL 6611008, at *19–20 (E.D. Wis. Nov. 20, 2014) (same); *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, Case No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no

evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Plaintiffs believe that they could have prevailed on these issues, but success was by no means assured. Litigating these issues would have risked recovering nothing for the class, and would have required significant additional expenditure of time, money, and resources — including potentially substantial expert expenses — for which Class Counsel would not be compensated should they lose on summary judgment or fail to certify a class. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035–35 (N.D. Ill. 2011) (finding class counsel incurred significant risk of nonpayment where, among other reasons, class counsel would have to overcome case dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102–09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Green v. DirecTV, Inc.*, 10 C 117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against TCPA plaintiff).

That risk was real and meaningful. Of course, the facts and circumstances of every case are different and must be individually considered and separately analyzed, but it bears noting that Class Counsel have lost a number of TCPA class actions without any recovery for the class or receiving any compensation for their fees or costs. (*See, e.g.*, Dkt. No. 140-1 ¶ 28; Dkt. No. 140-2 ¶ 12; Dkt. No. 140-3 ¶ 9; Dkt. No. 140-4 ¶ 12; Dkt. No. 140-5 ¶ 14; Dkt. No. 140-6 ¶ 14.)

   b.   *Quality of Performance*

Second, the requested fee award reasonably reflects the "market price" given the quality of Class Counsel's performance. *See Sutton*, 504 F.3d at 693. Despite the challenges listed above, by applying their skill and experience, Class Counsel were able to obtain an excellent result for Settlement Class Members. The settlement requires Chase to pay $34 million into a non-reversionary common fund out of which over $19 million will be used to pay claims. The fact that Chase was willing to pay such a substantial amount reflects the dedication, skill, and experience of Class Counsel. Class Counsel negotiated that reminder notices be sent to all Settlement Class Members who had not filed claims. As a result of the reminder notices, the

number of claims more than doubled. Based on the current claims rate, every eligible Settlement Class Member who fills out a simple claim form will receive a cash payment estimated to be $22.39, $67.17 or $89.56.

        c.    *Amount of Work Invested*

Class Counsel have devoted numerous hours to investigating, litigating, and settling this case. (*See* Dkt. No. 140-1 ¶¶ 16–22; Dkt. No. 140-2 ¶ 14; Dkt. No. 140-3 ¶ 8; Dkt. No. 140-4 ¶¶ 16–20; Dkt. No. 140-5 ¶¶ 18–21; Dkt. No. 140-6 ¶¶ 18–21; Dkt. No. 140-7 ¶¶ 7–11; Dkt. No. 140-8 ¶ 10.) In *Gehrich*, counsel quickly and aggressively pursued electronic data necessary to identify the Class, filing a motion to compel when it was clear the parties were at an impasse. (Dkt. No. 57; Dkt. No. 140-1 ¶¶ 16–17.) This motion was fully briefed and pending when the case was stayed. (Dkt. Nos. 57, 60, 62, 69.) Counsel also moved to amend the complaint to reflect relevant information that Chase provided during this initial discovery. (*Id.*)

Class Counsel devoted numerous hours to negotiating the settlement, which included preparing their clients' mediation submissions, attending three separate mediation sessions, and following up with the mediator and opposing counsel over the phone. (*See, e.g.*, Dkt. No. 140-1 ¶¶ 18.) Class Counsel insisted that Chase substantiate their assertions regarding the number of class members and refused to settle until they had received this information. (*Id.* ¶ 19.) Finally, Class Counsel spent substantial time preparing the settlement papers and notice documents, working with the independent notice provider, and drafting the motion for preliminary approval. (*Id.* ¶¶ 19–22.) The amount of work supports the requested fee.

        d.    *Stakes of the Case*

This case involves millions of Settlement Class Members who allegedly received harassing, unlawful calls from Chase. (*See* Dkt. No. 107-6 at 4.) The amount each Settlement Class Member is individually eligible to recover is low (between $500 and $1,500 per call) and thus individuals are unlikely to file individual lawsuits. Indeed, individual litigants likely would have to provide proof of calls well beyond what is required here to submit a claim and call records may not be available going back to 2008 when the class period begins, making it even

- 16 -

less likely that people would file individual lawsuits. A class action is realistically the only way that many individuals would receive any relief. In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable.

**B.**     <u>**The Service Awards to the Class Representatives Should Be Approved**</u>

Service awards (sometimes called "incentive awards") compensating named plaintiffs for work done on behalf of the class are routinely granted. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

The requested service awards of $1,500 for each Class Representative are reasonable. The Class Representatives worked with Class Counsel to investigate the case, were kept abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. Moreover, the modest amount requested here, $1,500 for each Class Representative (totaling $7,500) is substantially lower than awards approved by federal courts in Illinois and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, *11 (N.D. Ill., Aug. 26, 2013) (awarding $15,000 each to two named plaintiffs); *Heekin v. Anthem, Inc.*, No. 1:05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, Civil No. 06-698-GPM, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs).

<b>V.     CONCLUSION</b>

For the foregoing reasons, Class Counsel respectfully request that the Court grant their motion and award Class Counsel $9,507,603, which amounts to one-third of the settlement fund

- 17 -

after deducting the Dedicated *Cy Pres* Distribution and notice and claims administration expenses. Class Counsel further requests that the Court approve service awards of $1,500 to the five named Plaintiffs.

RESPECTFULLY SUBMITTED AND DATED this 14th day of August, 2015.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:  /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@tmdwlaw.com
Michael D. Daudt, *Admitted Pro Hac Vice*
Email: mdaudt@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

Alexander H. Burke
Email: aburke@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

Syed Ali Saeed, *Admitted Pro Hac Vice*
Email: ali@sllawfirm.com
SAEED & LITTLE, LLP
1433 North Meridian Street, Suite 202
Indianapolis, Indiana 46202
Telephone: (317) 614-5741
Facsimile: (888) 422-3151

Gayle M Blatt, *Admitted Pro Hac Vice*
Email: gmb@cglaw.com
CASEY, GERRY, SCHENK, FRANCAVILLA,
  BLATT & PENFIELD LLP
110 Laurel Street
San Diego, California 92101-1406
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

Mark D. Ankcorn
Email: mark@ankcorn.com
ANKCORN LAW FIRM, PC
11622 El Camino Real, Suite 100
San Diego, California  92130
Telephone:  (619) 870-0600
Facsimile:  (619) 684-3541

Joshua B Swigart, *Admitted Pro Hac Vice*
Email: josh@westcoastlitigation.com
HYDE AND SWIGART
411 Camino Del Rio South, Suite 301
San Diego, California  92108-3551
Telephone:  (619) 233-7770
Facsimile:  (619) 297-1022

Matthew M. Loker
Email: ml@kazlg.com
KAZEROUNI LAW GROUP APC
2700 North Main Street Suite 1000
Santa Ana, California  92705
Telephone:  (800) 400-6808
Facsimile:  (800) 520-5523

Seyed Abbas Kazerounian, *Admitted Pro Hac Vice*
Email: ak@kazlg.com
KAZEROUNI LAW GROUP APC
245 Fischer Avenue, Suite D1
Costa Mesa, California  92626
Telephone:  (800) 400-6808
Facsimile:  (800) 520-5523

Todd M Friedman
Email: tfriedman@attorneysforconsumers.com
LAW OFFICES OF TODD M. FRIEDMAN PC
369 South Doheny Drive, Suite 415
Beverly Hills, California  90211
Telephone:  (877) 206-4741
Facsimile:  (866) 623-0228

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify:

1.      On August 14, 2015, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the following:

> Kenneth Michael Kliebard
> Email: kkliebard@morganlewis.com
> Tedd Macrae Warden
> Email: twarden@morganlewis.com
> MORGAN LEWIS & BOCKIUS LLP
> 77 West Wacker Drive
> Chicago, Illinois  60601-5094
> Telephone:  (312) 324-1774
> Facsimile:  (312) 324-1001
>
> Julia B. Strickland
> Email: jstrickland@stroock.com
> Lisa M. Simonetti
> Email: lsimonetti@stroock.com
> Arjun P. Rao
> Email: arao@stroock.com
> Julieta Stepanyan
> Email:  jstepanyan@stroock.com
> STROOCK & STROOCK & LAVAN LLP
> 2029 Century Park East Suite 1600
> Los Angeles, California 90067-3086
> Telephone:  (310) 556-5800
> Facsimile:  (310) 556-5959
>
> *Attorneys for Defendants*
>
> Christopher Perez-Gurri, *Admitted Pro Hac Vice*
> Email:  chris@gpglawfirm.com
> Alan G. Geffin, *Admitted Pro Hac Vice*
> Email:  alan@gpglawfirm.com
> GPG LAW
> 101 NE 3rd Avenue, Suite 1110
> Ft. Lauderdale, Florida  33301
> Telephone:  (954) 533-5530
> Facsimile:  (954) 374-6588
>
> *Attorneys for Objector Tamiqueca Doyley*

Norman T. Finkel, #6183246
Email:  norm.finkel@sfnr.com
Daniel E. Beederman, #3121545
Email:  daniel.beederman@sfnr.com
William R. Klein, #6185715
Email:  bill.klein@sfnr.com
SCHOENBERG, FINKEL, NEWMAN & ROSENBERG, LLC
222 S. Riverside Plaza, Suite 2100
Chicago, Illinois  60606
Telephone:  (312) 648-2300
Facsimile:  (312) 648-1212

*Attorneys for Objector Tamiqueca Doyley*

Daniel M. Samson, *Admitted Pro Hac Vice*
Email:  dan@samsonappellatelaw.com
SAMSON APPELLATE LAW
201 S. Biscayne Boulevard, Suite 2700
Miami, Florida  33131
Telephone: (305) 341-3055
Facsimile:  (305) 379-3428

*Attorneys for Objector Tamiqueca Doyley*

C. Jeffrey Thut, #6188219
Email:  jeff@roachjohnstonthut.com
ROACH, JOLMSTON & THUT
516 N. Milwaukee Avenue
Libertyville, Illinois  60048
Telephone:  (847) 549-0600
Facsimile:  (847) 549-0312

*Attorneys for Objector Kristina Lopez*

Jonathan E. Fortman
Email:  jef@fortmanlaw.com
LAW OFFICE OF JONATHAN E. FORTMAN, LLC
250 St. Catherine Street
Florissant, Missouri 63031
Telephone:  (314) 522-2312
Facsimile:  (314) 524-1519

*Attorneys for Objector Steve Purgahn*

Steve A. Miller
Email: sampc01@gmail.com
STEVE A. MILLER, PC
1625 Larimer Street, No. 2905
Denver, Colorado 80202
Telephone: (303) 892-9933
Facsimile: (303) 892-8925

*Attorneys for Objector Steve Purgahn*

John C. Kress
Email: jckress@thekresslawfirm.com
THE KRESS LAW FIRM, LLC
4247 S. Grand Blvd
St. Louis, Missouri 63111
Telephone: (314) 631-3883
Facsimile: (314) 332-1534

*Attorneys for Objector Steve Purgahn*

Joseph Darrell Palmer
Email: darrell.palmer@palmerlegalteam.com
LAW OFFICES OF DARRELL PALMER PC
2244 Faraday Avenue, Suite 121
Carlsbad, California 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

*Attorneys for Objectors Dawn Weaver and Susan House*

2.      I further certify that on August 14, 2015, I mailed by United States Postal Service

the foregoing to the following non CM/ECF participants:

David Schlagel
c/o John J. Pentz
19 Widow Rites Lane
Sudbury, Massachusetts 01776

*Attorneys for Objector David Schlagel*

Michael Narkin
██████████████
Eugene, Oregon 97405

*Objector, Appearing Pro Se*

- 22 -

Sam P. Cannata

███████████████

Cleveland, Ohio  44022

*Objector, Appearing Pro Se*

Cindy Bray

███████████████

Springfield, Missouri  68504-3336

*Objector, Appearing Pro Se*

Nicholas Owen Gunden
ORVANDI PROPERTY OR LLC

███████████████████

Walnut, California  91789

*Objector, Appearing Pro Se*

David H. Pierce
DAVID H. PIERCE & ASSOCIATES, PC

████████████████████████

Sherman Oaks, California  91403-3501

*Objector, Appearing Pro Se*

Ken Murphy

████████████████

Denver, Colorado 80210

*Objector, Appearing Pro Se*

Maritza Cabrera

██████████████

Miami, Florida  33114-5395

*Objector, Appearing Pro Se*

David D. Dishman

███████████████

Swampscott, Massachusetts  01907

*Objector, Appearing Pro Se*

DATED this 14th day of August, 2015.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
     Beth E. Terrell, *Admitted Pro Hac Vice*
     Email: bterrell@tmdwlaw.com
     936 North 34th Street, Suite 300
     Seattle, Washington  98103-8869

     *Attorneys for Plaintiffs*