UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN I. GEHRICH, ROBERT LUND, COREY GOLDSTEIN, PAUL STEMPLE, and CARRIE COUSER, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>CHASE BANK USA, N.A. and JPMORGAN CHASE BANK, N.A.<br><br>       Defendants. | Case No. 1:12-cv-5510<br><br>Assigned to the Hon. Gary Feinerman |

**RESPONSE OF DEFENDANTS, CHASE BANK USA, N.A. AND JPMORGAN
CHASE BANK, N.A., TO OBJECTIONS TO PROPOSED CLASS
ACTION SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND ...........................................................................................................3

    A.    The Settlement Class Overwhelmingly Supports The Settlement. .........................3

    B.    The Claim Value Is Substantial. ..............................................................................4

    C.    The *Cy Pres* Recipients Are Appropriate. ..............................................................5

    D.    The Class Notice Was Effective And Compliant. ....................................................6

III.  ARGUMENT ................................................................................................................7

    A.    The Settlement Is Fair, Adequate And Reasonable, And Should Be Approved......7

    B.    Settlement Class Members Are Adequately Compensated By The Settlement. .....8

        1.    The Claim Value Compares Favorably To The $500 Statutory Damages Available In A Litigated Case.......................................................8

        2.    A Per-Call Settlement Structure Is Impossible. .........................................12

        3.    The Low Opt-Out Rate And High Claim Volume Confirm The Settlement Amount And Structure Are Fair. ......................................13

    C.    The Release Is Proper And Not Overbroad. ...........................................................14

    D.    The Notice Program Was Excellent And Fully Compliant. ...................................17

        1.    The Law Only Requires The Best Practicable Notice Under The Circumstances. .............................................................................................17

        2.    The Settlement Website Address Was Appropriate And Was Provided On Multiple Forms of Notice. ...................................................18

        3.    The Online Claim Form Is Adequate..........................................................18

        4.    The Estimated Claim Value Was Accurately Disclosed In The Notice. ...19

        5.    All Deadlines Were Clearly Listed In The Class Notices..........................19

        6.    Posting The Complaint On The Settlement Website Is Not Required.......20

    E.    The Residual and Dedicated *Cy Pres* Distributions Are Proper And Consistent With Seventh Circuit Authority. ..........................................................21

        1.    The Dedicated *Cy Pres* Distribution On Behalf Of The Alerts Calls Subclass Is Appropriate In Light Of The Facts. ...............................21

        2.    The Residual *Cy Pres* Distribution Is Appropriate. .................................23

IV.   CONCLUSION............................................................................................................25

**Cases**

ACA Int'l v. FCC,
No. 15-1211 (D.C. Cir. filed Sept. 21, 2015)............................................................9

Adams v. AllianceOne Receivables Management, Inc.,
No. 08-cv-0248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ...................................14

In re Apple iPhone/iPod Warranty Litig.,
2014 U.S. Dist. LEXIS 64573 (N.D. Cal. May 8, 2014) (CFA)................................................5

In re AT & T Mobility Wireless Data Servs. Sales Litig.,
270 F.R.D. 330 (N.D. Ill. 2010)........................................................................9

AT & T Mobility Wireless Data Servs. Sales Tax Litig.,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ........................................................16

In re Brand Name Prescription Drugs Antitrust Litig.,
No. 94 C 897, 1996 WL 167347 (N.D. Ill. April 4, 1996) ..............................17

In re Capital One Tel. Consumer Prot. Act Litig.,
80 F. Supp. 3d 781, 791-92 (N.D. Ill.), appeals dismissed (2015) .........................5, 11, 12, 14

Centerline Equip. Corp. v. Banner Pers. Serv., Inc.,
545 F. Supp. 2d 768 (N.D. Ill. 2008) ..........................................................11

City P'ship Co. v. Atl. Acquisition Ltd. Partnership,
100 F.3d 1041 (1st Cir. 1996)..............................................................15

Connor v. JPMorgan Chase Bank, N.A.,
No. 3:10-cv-01284-GPC-BGS, Dkt. No. 160 (S.D. Cal. Feb. 5 2015)....................14

In re Corrugated Container Antitrust Litig.,
643 F.2d 195 (5th Cir. 1981) ................................................................15

Davis v. Chase Bank USA, N.A.,
Case No. 06-cv-04804, Dkt. No. 355 (C.D. Cal. Oct. 29, 2014)............................13

Diaz v. HSBC USA, N.A.,
No. 1:13-CV-21104, 2014 WL 5488161 (S.D. Fla. 2014) ..............................13

E.E.O.C. v. Hiram Walker & Sons, Inc.,
768 F.2d 884 (7th Cir. 1985) ...............................................................8, 9

*Fair v. Int'l Flavors & Fragrances, Inc.,*
    905 F.2d 1114 (7th Cir. 1990) ..............................................................16

*Fields v. Mobile Messengers Am., Inc.,*
    No. C 12-05160 WHA, 2013 WL 6073426 (N.D. Cal. Nov. 18, 2013) ...............................10

*Forman v. Data Transfer, Inc.,*
    164 F.R.D. 400 (E.D. Pa. 1995) ...............................................................10

*Gautreaux v. Pierce,*
    690 F.2d 616 (7th Cir. 1982) ................................................................7

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.,*
    357 F.3d 800 (8th Cir. 2004) ...............................................................15

*Glen Ellyn Pharmacy, Inc. v. La Roche–Posay, LLC,*
    No. 11–968, 2012 WL 619595 (N.D. Ill. Feb. 23, 2012) ...............................23, 24

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996) ................................................................7

*Jamison v. First Credit Servs., Inc.,*
    290 F.R.D. 92 (N.D. Ill. 2013) .............................................................9, 10

*Keele v. Wexler,*
    149 F.3d 589 (7th Cir. 1998) ...............................................................24

*Kevin Lemiuex v. Global Credit & Collection Corp.,*
    No. 3:08-cv-01012-IEG-POR, Dkt. No. 46 (S.D. Cal. Sept. 20, 2011) ...................14

*Loef v. First Am. Title Ins. Co.,*
    281 F.R.D. 58 (D. Me. 2012) ................................................................20

*Mace v. Van Ru Credit Corp.,*
    109 F.3d 338 (7th Cir. 1997) ...............................................................24

*Mangone v. First USA Bank,*
    206 F.R.D. 222 (S.D. Ill. 2001) ............................................................20

*Maria Agne, et al. v. Papa John's Int'l, Inc., et al.,*
    No. 2:10-cv-01139, Dkt. No. 389 (W.D. Wash. Oct. 22, 2013) .........................14

*Maryland v. Universal Elections, Inc.,*
    862 F. Supp. 2d 457 (D. Md. 2012) *aff'd*, 729 F.3d 370 (4th Cir. 2013) ...............11

*McKinnie v. JP Morgan Chase Bank, N.A.,*
    678 F. Supp. 2d 806 (E.D. Wis. 2009) ..............................................7, 8, 24

In re Mego Fin. Corp. Sec. Litig.,
    213 F.3d 454 (9th Cir. 2000) ............................................................22

In re Mex. Transfer Litig.,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...........................................8, 24

Mullane v. Cent. Hanover Bank & Trust Co.,
    339 U.S. 306 (1950)........................................................................17

Murray v. GMAC Mortg. Corp.,
    434 F.3d 948 (7th Cir. 2006) ......................................................10, 16

N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.,
    526 F. Supp. 887 (N.D. Cal. 1981), rev'd on other grounds, 693 F.2d 847
    (9th Cir. 1982), cert. denied, 459 U.S. 1171, 103 S. Ct. 817 (1983) ................10, 11

Officers for Justice v. Civil Serv. Comm'n,
    688 F.2d 615 (9th Cir. 1982) ..............................................................9

Oswald v. McGarr,
    620 F.2d 1190 (7th Cir. 1980) ...........................................................16

Pearson v. NBTY, Inc.,
    772 F.3d 778 (7th Cir. 2014) .........................................................24, 25

Robins v. Spokeo, Inc.,
    742 F.3d 409 (9th Cir. 2014), cert. granted, 135 S. Ct. 1892
    (U.S. Apr. 27, 2015)...........................................................................9

Rose v. Bank of Am. Corp.,
    No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .......................11, 14

Sarabi v. Weltman, Weinberg & Reis Co., L.P.A.,
    No. 3:10-cv-01777-AJB-NLS, Dkt. No. 42 (S.D. Cal. Feb. 15, 2013)....................14

Schulte v. Fifth Third Bank,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .............................................13, 22

Schulte v. Fifth Third Bank,
    No. 09 C 6655, 2012 WL 2254197 (N.D. Ill. June 15, 2012) .............................15

St. Louis, Iron Mt. & S. Ry. Co. v. Williams,
    251 U.S. 63, 40 S. Ct. 71, 64 L. Ed. 139 (1919)....................................10

Steinfeld, et al. v. Discover Financial Servs.,
    No. 3:12-cv-1118, Dkt. No. 97 (N.D. Cal. March 31, 2013)............................14

Superior Beverage Co. v. Owens-Illinois, Inc.,
  827 F. Supp. 477 (N.D. Ill. 1993) ...................................................................24

Synfuel Techs., Inc. v. DHL Express (USA), Inc.,
  463 F.3d 646 (7th Cir. 2006) .........................................................................8

Texas v. Am. Blastfax, Inc.,
  164 F. Supp. 2d 892 (2001) ..........................................................................11

Trombley v. Bank of Am. Corp.,
  No. 08-CV-456-JD, 2013 WL 5153503 (D.R.I. Sept. 12, 2013)...........................5

United States v. Citrin,
  972 F.2d 1044 (9th Cir. 1992) .......................................................................10

Weller v. HSBC Mortg. Servs., Inc.,
  No. 13-CV-00185-REB-MJW, 2015 WL 4178448 (D. Colo. Apr. 20, 2015) .........13

Wilkins v. HSBC Bank Nevada, N.A. and HSBC Card Services, Inc.,
  N.D. Ill., No. 1:14-cv-00190, Dkt. No. 117 (Feb. 27, 2015) .....................8, 12, 15

Williams v. Gen. Elec. Capital Auto Lease, Inc.,
  159 F.3d 266 (7th Cir. 1998) ...................................................................15, 16

**Statutes**

47 U.S.C. § 227, et seq............................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................12, 18, 20

Fed. R. Civ. P. 23(b)(1)...............................................................................17

Fed. R. Civ. P. 23(b)(2)...............................................................................17

Fed. R. Civ. P. 23(b)(3)...........................................................................4, 17

Fed. R. Civ. P. 23(c)(2)...............................................................................6

Fed. R. Civ. P. 23(e)(1)...........................................................................2, 17

Fed. R. Civ. P. 23(e)(2)...............................................................................7

Judges' Class Action Notice and Claims Process Checklist and Plain Language
  Guide, FEDERAL JUDICIAL CENTER (2010) ........................................................2

Manual for Compl. Litig. (2015) at § 21.312 ...............................................17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants, Chase Bank USA, N.A. and JPMorgan Chase Bank, N.A. (collectively, "Chase"), urge this Court to overrule the various Objections filed in connection with the final approval of this Settlement.[1]  Tellingly, the low number of requests for exclusion from the Settlement and Objections speak for themselves — a mere 0.00063% of the persons in the Settlement Class submitted requests for exclusion, and even fewer — 0.000034% — objected to the Settlement.  It is clear that the Settlement Class overwhelmingly favors the Settlement.  Of the Settlement Class Members who expressed their opinion of the Settlement by either claiming, objecting, or submitting an exclusion request, more than 99.93% approve of the Settlement and want this Court to approve it.  This alone indicates that the Settlement is fair, reasonable, and adequate.

Objectors challenge the Settlement notwithstanding that, if the Settlement is rejected, over 340,000 Settlement Class Members who submitted claim forms are unlikely to receive relief of any kind.  The eighteen Objectors — Cindy Bray, Maritza Cabrera, Sam P. Cannata, David D. Dishman, Tamiqueca J. Doyley, Nicholas Owen Gunden, Susan House, Kristina Lopez, Mark Millen, Ken Murphy, Michael Narkin, Joe Oliver, David H. Pierce, Steve Purgahn, Francis Vincent Russo, David Schlagel, Dawn Weaver, and Mark Yost (collectively, the "Objectors") — object to the Settlement Agreement, and would deny recovery to the over 340,000 claiming Settlement Class Members, on four basic grounds: (1) the amount of compensation to Settlement Class Members; (2) the scope of the release; (3) the class notice process; and (4) the Settlement

---

[1]  Chase joins in Plaintiffs' Response to Objections to Class Action Settlement ("Plaintiffs' Response to Objections"), filed concurrently, except as to Plaintiffs' response to Objections as to Class Counsel's fees and costs and the adequacy of class representatives, Chase takes no position.

1

Agreement's provision for *cy pres* payments. [2]  However, the Objections lack merit.  The

Settlement easily satisfies Federal Rule of Civil Procedure 23(e) and should be approved.

First, the Settlement compensates Settlement Class Members generously.  The amount

provided to claimants is in line with, and in many instances, exceeds, amounts paid pursuant to

numerous other similar settlements finally approved by district courts across the nation,

including by courts in this District.  Further, all Settlement Class Members receive benefits in

exchange for the release — some receive monetary payment and others receive, more

appropriately, information about how to opt out of automatic alerts.  The *cy pres* distributions

also deliver consideration to the Settlement Class.

Second, the release language is appropriate and provides no grounds for disapproval.

Similar language in other settlements is routinely approved.  Settlement Class Members are

releasing only those claims that arise out of calls to a cell phone made through the use of an

automatic telephone dialing system.  The release is tied appropriately to the allegations in the

litigation and is supported by valid consideration.  Chase is entitled to peace and is paying dearly

for it.  Thus, the release negotiated at arm's-length is fair and appropriate.

Third, the notice program was proper and achieved an effective reach of almost 80%,

well within the range described in the Federal Judicial Center guidelines for class settlements.

See Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide,

FEDERAL JUDICIAL CENTER (2010) (describing 70-95% reach as "high percentage").  The

Settlement Class received direct notice via mail or email, and additional notice was provided via

---

[2]  Certain Objectors also challenge Plaintiffs' request for attorneys' fees and incentive awards, and
otherwise dispute Plaintiffs' adequacy as class representatives.  Chase does not address these matters
here because they will be addressed in Plaintiffs' papers.  Because the Settlement Agreement provides
that "Court approval of attorneys' fees and costs, or their amount, will not be a condition of the
Settlement" (see Settlement Agreement, ¶ III.K), they present no obstacle to approval of the overall
fairness of the Settlement.

print publication and a dedicated settlement website. Each of these forms of notice clearly provided Settlement Class Members with the information required by the Federal Rules of Civil Procedure as well as Due Process requirements.

Fourth, the *cy pres* terms were properly disclosed in the class notice and fully complied with Seventh Circuit authority. The Dedicated *Cy Pres* Distribution is made on behalf of the Alert Call Subclass, and the Residual *Cy Pres* Distribution will comprise of only funds that could not be distributed to Settlement Class Members and be made only after the settlement administrator has thoroughly tried to distribute the Settlement Fund to claiming Settlement Class Members. Neither distribution will result in any Settlement Class Member who submitted a claim to receive less than what was indicated in the class notice.

Accordingly, the Objections should be overruled and the Settlement finally approved.

## II. BACKGROUND

### A. The Settlement Class Overwhelmingly Supports The Settlement.

This Settlement is a culmination of extensive adversarial, arm's-length negotiations between Plaintiffs and Chase, including three formal mediation sessions before an experienced retired federal magistrate judge.[3] On August 12, 2015, this Court granted Plaintiffs' Motion for Preliminary Approval and tentatively found that "the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class [. . .]. The Court further [preliminarily found] that the Settlement Agreement substantially fulfills the purposes and objectives of the class action, and provides substantial relief to the Settlement Class without the risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal." (Dkt. No. 117.)

---

[3]   For a more detailed history of this Action and the Parties' negotiations, see Plaintiffs' Memorandum In Support Of Unopposed Motion For Preliminary Approval Of Class Action Settlement And For Conditional Certification Of Settlement Class ("Motion for Preliminary Approval") (Dkt. No. 107).

Under the terms of the Settlement Agreement, Chase committed to pay $34,000,000 into a <u>non-reversionary</u> Fund. All persons who received a call or a text message from Chase during the class period to a cellular telephone through the use of an automatic telephone dialing system and/or artificial or prerecorded voice, not only those who were called without prior express consent, are entitled to submit a claim. Moreover, the *cy pres* programs benefit the Settlement Class as a whole, even those Settlement Class Members who chose not to participate in the claims process.

The Settlement Class consists of a total of 32,297,356 persons, of which only 204 individuals submitted timely requests for exclusion from the Settlement and 11 individuals timely filed Objections to the Settlement before the deadlines set by the Court. (See Supplemental Declaration of Lael Dowd Concerning Implementation of Notice Plans ("Dowd Decl."), ¶¶ 37-38, 40.) In contrast, as of October 4, 2015, a total of 349,206 timely and an additional 192 untimely claims had been submitted.[4] (Id., ¶ 48.) Chase has agreed that untimely claims received by the date of entry of the final approval order should still be honored.

**B.    The Claim Value Is Substantial.**

Claims are valued based on subclass membership, not based on volume of calls received.[5] Assuming the Court approves the amount of attorneys' fees and costs, class representative fees and settlement administration costs sought by Plaintiffs, each claiming Settlement Class Member will receive on average approximately $19.40 to $77.60 in a settlement award, depending on

---

[4]    The claims validation and deduplication process is still underway, but it appears that significantly more than 340,000 unique claims ultimately will be deemed valid and payable.

[5]    This issue was addressed at the August 12, 2014 hearing on Plaintiffs' Motion for Preliminary Approval. The Parties explained that to conduct an individualized inquiry into how many calls each Settlement Class Member received would be administratively unmanageable, thus violating Fed. R. Civ. P. 23 (b)(3)(D), and would require individualized inquiry into each Settlement Class Member's account.

LA 51918006

subclass membership (and perhaps more after duplicate and invalid claims are taken into account). (See Dowd Decl., ¶ 50.) The claims process was simple, as Settlement Class Members were asked only to confirm that they received a certain type of call and to identify the cell phone number called.

## C. The *Cy Pres* Recipients Are Appropriate.

The Settlement Agreement additionally provides that $1,000,000 be donated to a dedicated *cy pres* recipient, the Consumer Federation of America ("CFA"), on behalf of the Alert Call Subclass,[6] and if claims do not fully deplete the Fund or if checks are not cashed, then residual monies will be donated to a residual *cy pres* recipient, the Electronic Frontier Foundation ("EFF"). No residual funds will be paid to EFF until after there is an effort to distribute excess money to the Settlement Class Members. (See Settlement Agreement, ¶ III.H.) Both CFA and EFF have been deemed appropriate *cy pres* recipients in other cases. See, e.g., Trombley v. Bank of Am. Corp., No. 08-CV-456-JD, 2013 WL 5153503, at *2 (D.R.I. Sept. 12, 2013) (CFA); In re Apple iPhone/iPod Warranty Litig., 2014 U.S. Dist. LEXIS 64573, at *40 (N.D. Cal. May 8, 2014) (CFA); In re Capital One Tel. Consumer Prot. Act Litig., 80 F. Supp. 3d 781, 791-92 (N.D. Ill.) (EFF approved as residual *cy pres* recipient in Telephone Consumer Protection Act settlement), appeals dismissed (2015).

---

[6]   The Alert Call Subclass consists almost exclusively of Chase's customers who provided their cell phone number to Chase and requested that Chase provide certain automatic alerts to them. Specifically, during the class period, Chase offered its customers an option to receive informational automatic alerts to their cellular telephones when certain account activities occurred, including, for example, low account balance, overdrafts, withdrawals over a certain amount, and daily activity summaries. During the class period, automatic alerts were sent to a customer's cellular telephone number only if several affirmative steps were successfully completed by the customer, and automatic alerts were only sent until such time that the customer requested that automatic alerts cease. As part of the Settlement, each of the Settlement Class Members who previously enrolled to receive automatic alerts but no longer wishes to receive such alerts has received clear instructions on how to stop them. To the extent that some of the members of this subclass are "wrong-parties," these individuals had the opportunity to submit a claim form and receive a settlement award under the Settlement.

**D.     The Class Notice Was Effective And Compliant.**

The class notice preliminarily approved by this Court and disseminated by the settlement administrator satisfied all Due Process and Rule 23(c)(2)(B) standards because it effectively reached the Settlement Class and effectively communicated the Settlement Class Members' rights to them.

The class notice reached nearly 80% of the Settlement Class, with a frequency of approximately 1.69 times.[7]  (See Dowd Decl., ¶ 24.).  Each of the class notices (*i.e.*, the postcard notice, the email notice, the publication notice, and the website notice) clearly stated that Class Counsel "estimate" that the value of each claim would be approximately $20-$40 and identified in bold letters the deadlines for Settlement Class Members to submit a claim, opt out, or object to the Settlement.  Additionally, the settlement website provides the relevant deadlines in two places, including under "Important Dates," on the home screen.  Further, each of these notices listed the settlement website address, where Settlement Class Members could find additional information regarding the Settlement.  Even if anyone had misplaced the class notice, a simple Google search of "Chase TCPA Settlement" or "Gehrich TCPA Settlement" would immediately return the settlement website as the first result, and a search for "Chase Settlement" would return the settlement website as the second result.  (Id., ¶ 30.)

Additionally, the class notice clearly explained what claims the Settlement would release. The website notice states: "Unless you exclude yourself, you are staying in the Settlement Class and you will be a Settlement Class Member.  That means that you can't sue, continue to sue or be part of any other lawsuit against Chase on the Telephone Consumer Protection Act, 47 U.S.C.

---

[7] This means that Settlement Class Members, on average, were exposed to the notice on more than one occasion.

6

§ 227, et seq. ("TCPA") claims, and other related claims, that are subject to the Settlement.  It also means that all of the Court's orders will apply to you and legally bind you."

The Settlement is fair, adequate, and reasonable, and the class notices properly informed Settlement Class Members of the material terms of the Settlement and their rights to claim, opt out and object.  Accordingly, all of the Objections should be overruled.

## III.   ARGUMENT

### A.   The Settlement Is Fair, Adequate And Reasonable, And Should Be Approved.

The substantive Objections to the Settlement can be categorized as follows: (1) amount of compensation to Settlement Class Members; (2) breadth of the Class release; (3) quality of the Notice Program; and (4) presence of *cy pres* payments.  As discussed below, each of these Objections lacks merit and should be overruled.

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  When determining whether a settlement is ultimately fair, adequate, and reasonable at the final approval stage, courts in this Circuit consider the following factors: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed.  Isby v. Bayh, 75 F.3d 1191, 1199 (7th Cir. 1996).  In reviewing these factors, courts view the facts "in the light most favorable to the settlement." Id.  In addition, courts "should not substitute their own judgments as to optimal settlement terms for the judgment of the litigants and their counsel." Gautreaux v. Pierce, 690 F.2d 616, 638 (7th Cir. 1982); see also McKinnie v. JP Morgan Chase Bank, N.A., 678 F. Supp.

2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator. . . suggest that the settlement is fair and merits final approval"); In re Mex. Transfer Litig., 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). None of the Objections overcomes the strong presumption of fairness or otherwise justifies disapproval.

**B.** **Settlement Class Members Are Adequately Compensated By The Settlement.**

1. <u>The Claim Value Compares Favorably To The $500 Statutory Damages Available In A Litigated Case</u>.

Several Objectors argue that the Settlement does not provide sufficient relief to Settlement Class Members in light of the $500 statutory damage provision under the TCPA. However, these objections are misplaced because any settlement will discount the hypothetical recovery based on litigation risk and the ability to get an immediate recovery; this is true for any settlement, whether class or individual. The amounts to be paid under this Settlement represent a fair assessment of the Settlement Class Members' significant risk of receiving nothing at all in a litigated case.

The most important factor in evaluating the sufficiency of the settlement consideration is the strength of the plaintiff's case. Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653 (7th Cir. 2006); Wilkins v. HSBC Bank Nevada, N.A. and HSBC Card Services, Inc., No. 1:14-cv-00190, Dkt. No. 117 (N.D. Ill. Feb. 27, 2015). However, in making such a determination, the "district court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." E.E.O.C. v. Hiram Walker & Sons, Inc., 768 F.2d 884, 889 (7th Cir. 1985). Indeed, because a settlement is a compromise, it will not be rejected solely because it does not provide a complete victory to the

8

plaintiffs. Id.; see also In re AT & T Mobility Wireless Data Servs. Sales Litig., 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Because the essence of settlement is compromise, courts should not reject a settlement 'solely because it does not provide a complete victory to the plaintiffs.'" (internal citations omitted)); Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Here, Plaintiffs face genuine litigation risk:

- The Supreme Court may hold that no-injury statutory damage class actions violate Article III standing requirements. See Robins v. Spokeo, Inc., 742 F.3d 409 (9th Cir. 2014), cert. granted, 135 S. Ct. 1892 (U.S. Apr. 27, 2015) (No. 13-1339).

- The FCC's recent Declaratory Ruling and Order may be set aside by the D.C. Circuit Court on the consolidated appeal of the Order by several industry groups, further limiting recovery under the TCPA. See ACA Int'l v. FCC, No. 15-1211 (D.C. Cir. filed Sept. 21, 2015).

- Valid and enforceable agreements between JPMorgan Chase Bank, N.A. and its customers to arbitrate disputes on an individual basis would preclude class certification.

- The issue of individualized consent would preclude certification on a motion for class certification because:

  o A large portion of any purported class, including the Alert Call Subclass almost in its entirety, had, in fact, provided consent to the calls. Identification of the small population of those calls for which defendants cannot produce evidence of consent would involve a highly individualized inquiry that would preclude class certification. See, e.g., Jamison v. First Credit Servs., Inc., 290 F.R.D. 92, 102-09

9

(N.D. Ill. 2013) (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); Fields v. Mobile Messengers Am., Inc., No. C 12-05160 WHA, 2013 WL 6073426, at *4 (N.D. Cal. Nov. 18, 2013) (denying certification because plaintiff could not establish that consent issue was appropriate for class treatment);

- o The inclusion of lack of consent as part of the definition would create an improper fail-safe class, in that class membership is defined by reference to a legal determination. See, e.g., Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa. 1995) (declining to certify TCPA class where the class definition included the issue of consent because such a definition "flies directly in the face of a basic tenet of class certification: a court may not inquire into the merits of the case at the class certification stage"); and

- o The definitions of prior express consent and revocation of consent are disputed, and determining whether particular communications were or were not consent, and were or were not revocation, requires highly individualized analysis, also precluding class certification.

- The Due Process Clause and the Eighth Amendment's Excessive Fines Clause will limit the value of any class judgment because "the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." United States v. Citrin, 972 F.2d 1044, 1051 (9th Cir. 1992) (quoting St. Louis, Iron Mt. & S. Ry. Co. v. Williams, 251 U.S. 63, 66-67, 40 S. Ct. 71, 64 L. Ed. 139 (1919)).[8]

---

[8]   See also Murray v. GMAC Mortg. Corp., 434 F.3d 948, 954 (7th Cir. 2006) (holding that "[a]n award that would be unconstitutionally excessive may be reduced" even if a class is certified); N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig., 526 F. Supp. 887, 899-900 (N.D. Cal. 1981), rev'd on

As other courts already recognized in approving other settlements, if even <u>one</u> of these risks comes to pass, the proposed class could get zero after traveling a very long litigation road.

Judge Holderman addressed identical issues in granting final approval of a similar TCPA settlement in this District earlier this year.  He explained, "In light of Capital One's potentially meritorious defenses and the legal uncertainty concerning the application of the TCPA, the court concludes that Plaintiffs would probably face an uphill battle to trial and, once there, obtaining relief.  The settlement provides value that is fair considering the very real possibility that Plaintiffs may recover nothing if they were to proceed further with the litigation."  <u>In re Capital One Tel. Consumer Prot. Act Litig.</u>, 80 F. Supp. 3d at 791-92.  In addition, the reality of lengthy, contested litigation as well as the substantial possibility that any award in favor of the Settlement Class would be subject to appellate review given the statutory damages involved fully justifies the Settlement.  <u>See</u> <u>Rose v. Bank of Am. Corp.</u>, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *5 (N.D. Cal. Aug. 29, 2014) (approving similarly-structured TCPA class action settlement). Any litigated result favorable to the proposed class would be appealed, potentially reversed, and litigation would not be resolved for a significant amount of time.  As a result, the Settlement as a whole, in light of the obstacles faced by Plaintiffs and the Settlement Class, is fair, reasonable and adequate.

---

<u>other grounds</u>, 693 F.2d 847 (9th Cir. 1982), <u>cert. denied</u>, 459 U.S. 1171, 103 S. Ct. 817 (1983) ("A defendant has a due process right to be protected against unlimited multiple punishment for the same act . . . [c]ommon sense dictates that a defendant should not be subjected to multiple civil punishment for a single act or unified course of conduct which causes injury to multiple plaintiffs."); <u>Centerline Equip. Corp. v. Banner Pers. Serv., Inc.</u>, 545 F. Supp. 2d 768, 778 (N.D. Ill. 2008) (stating that, if defendant on a TCPA claim is "able to show that the statutory damages are in fact so excessive as to be improper, the appropriate remedy would be a reduction of the aggregate damage award. . . .") (citing <u>Texas v. Am. Blastfax, Inc.</u>, 164 F. Supp. 2d 892, 900-01 (2001)); <u>Maryland v. Universal Elections, Inc.</u>, 862 F. Supp. 2d 457, 465 (D. Md. 2012) <u>aff'd</u>, 729 F.3d 370 (4th Cir. 2013) ("While the TCPA's damages provisions appear constitutional on their face, damages may become unconstitutional as applied in an individual case.  In such situations, a damages award may violate due process. . . .").

11

<u>A Per-Call Settlement Structure Is Impossible</u>.

Nor is there any merit to the argument that the Settlement is structurally unfair because the claimants share in the Fund <u>pro rata</u> based on allocations of "Award Units" that depend on subclass membership.[9]  Rule 23 does not require claims to be weighted differently based on relative call volume, and Objector Lopez's arguments to the contrary should be rejected.  The "Award Units" system allocates the Fund fairly and with minimal administrative burden.

The Court already addressed this very issue at the August 12, 2014 hearing on Plaintiffs' Motion for Preliminary Approval.  As explained at the hearing, to conduct an individualized inquiry into how many calls each Settlement Class Member received would be administratively unmanageable and would require individualized inquiry into each Settlement Class Member's account, depleting the Fund through unnecessary administrative expense, delaying payment of claims and defeating the very purpose of this Settlement — to compensate Settlement Class Members fairly and promptly.  Several courts, including courts in this District, have agreed with the proposed settlement structure here for precisely these reasons.[10]  <u>See, e.g.</u>, <u>In re Capital One Tel. Consumer Prot. Act Litig.</u>, 80 F. Supp. 3d at 793; <u>Wilkins</u>, No. 1:14-cv-00190, Dkt. No. 117 (N.D. Ill. Feb. 27, 2015).  Judge Holderman, for example, recognized that a call-based claims process would in fact be worse for the settlement class — diminishing overall fairness — because increased administration costs would deplete settlement funds.  <u>Id.</u>

---

[9]    <u>See</u> Plaintiffs' Response to Objections for a detailed discussion of Award Units and a calculation of settlement awards for each of the subclasses.

[10]    Indeed, due to the difficulty of locating in existing records the small population of persons who might not have given consent (or who might have revoked consent at some time), the Settlement Class definition is framed simply around persons who were called.  It would make little sense to provide recovery based on the number of calls, as 100 calls made with the recipient's prior express consent would be valued less than 1 call made without the prior express consent if litigated.  Thus, unless consent also is considered, the volume of calls is not useful in valuing a claim.

3.    <u>The Low Opt-Out Rate And High Claim Volume Confirm The Settlement Amount And Structure Are Fair</u>.

All Settlement Class Members could have opted out of the Settlement and individually pursued their claims against Chase if they believed that their claims would be worth more in litigation or if they disagreed with the Settlement's pro rata structure.  As a group, they did not.  Their collective decision to claim demonstrates their belief that the Settlement is in fact fair and better than the alternative of continued litigation.  That the settlement could have been richer (every settlement could be, just as it also could be poorer) is not a valid objection.  <u>Schulte v. Fifth Third Bank</u>, 805 F. Supp. 2d 560, 591, 595 (N.D. Ill. 2011).

Similarly, Objector Purgahn's argument that debt relief should have been provided as settlement consideration, in addition to claim payments, is not a valid basis for objection; this is another species of the argument that the Settlement is not rich enough.  It is no surprise that Settlement Class Members remain obligated on their underlying debt to Chase.  In fact, this is a standard provision routinely approved by other courts.  <u>See</u>, <u>e.g.</u>, <u>Davis v. Chase Bank USA, N.A.</u>, Case No. 06-cv-04804, Dkt. No. 355 (C.D. Cal. Oct. 29, 2014); <u>Diaz v. HSBC USA, N.A.</u>, No. 1:13-CV-21104, 2014 WL 5488161 (S.D. Fla. 2014); <u>Weller v. HSBC Mortg. Servs., Inc.</u>, No. 13-CV-00185-REB-MJW, 2015 WL 4178448 (D. Colo. Apr. 20, 2015).  There is no reason to relieve Settlement Class Members of their obligations to pay Chase for the debt that they have voluntarily incurred.  Rather, the Settlement Agreement provides separate and sufficient consideration for Settlement Class Members' release of claims that arise out of autodialed calls to Settlement Class Members on their cell phones, whether or not they currently owe anything to Chase.  Moreover, no Objector presents any evidence that any debt to Chase <u>resulted from</u> an improper telephone call, so there is no logical basis to make waiver of debts part of the settlement consideration here.

13

As of October 4, 2015, a total of 349,206 timely and an additional 192 untimely claims had been submitted.[11]  As a result, and assuming this Court approves the amount of attorneys' fees and costs, class representative fees and settlement administration costs sought by Plaintiffs,[12] each claiming Settlement Class Member will receive on average approximately $19.84 to $79.39, depending on subclass membership and the deduplication and claim validation process.  This range compares favorably to other settlements, such as a recent TCPA settlement approved by Judge Holderman in In re Capital One Tel. Consumer Prot. Act Litig., 80 F. Supp. 3d at 789-90, which provides for a claim value of approximately $34.60.[13]  The recovery in the instant case is comparable to most other TCPA class settlements, and the Settlement should be finally approved.

### C.     The Release Is Proper And Not Overbroad.

The reverse side of the argument that the Settlement pays too little is the argument that the Settlement releases too much, in light of what is paid.  Objections on this basis also fail.  The release here is tied closely to the allegations in the pleadings and is consistent with other

---

[11]  Although this number may change as the settlement administrator de-duplicates and identifies invalid claims, it is close to a final count.

[12]  Again, Chase takes no position on Plaintiffs' Motion or Class Counsel's revised fee request.

[13]  See also Connor v. JPMorgan Chase Bank, N.A., No. 3:10-cv-01284-GPC-BGS, Dkt. No. 160 (S.D. Cal. Feb. 5 2015) (finally approving TCPA settlement providing for $69.97 recovery to each claimant); Rose, 2014 WL 4273358, at *5 (collecting cases and finally approving a TCPA class action settlement where class members were estimated to receive in the range of $20-$40); Adams v. AllianceOne Receivables Management, Inc., No. 08-cv-0248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (granting final approval of TCPA settlement with a maximum recovery amount of $40 per person); Steinfeld, et al. v. Discover Financial Servs., No. 3:12-cv-1118, Dkt. No. 97 (N.D. Cal. March 31, 2013) (same); Maria Agne, et al. v. Papa John's Int'l, Inc., et al., No. 2:10-cv-01139, Dkt. No. 389 (W.D. Wash. Oct. 22, 2013) (granting final approval of TCPA settlement where each class member would automatically receive a merchandise certificate enabling him/her to order a free Papa John's pizza and each claimant would receive a $50 payment); Sarabri v. Weltman, Weinberg & Reis Co., L.P.A., No. 3:10-cv-01777-AJB-NLS, Dkt. No. 42 (S.D. Cal. Feb. 15, 2013) (granting final approval of TCPA settlement where each class member would receive $70 or pro rata share of amount remaining in the settlement fund); Kevin Lemiuex v. Global Credit & Collection Corp., No. 3:08-cv-01012-IEG-POR, Dkt. No. 46 (S.D. Cal. Sept. 20, 2011) (same).

LA 51918006

previously-approved TCPA settlements. "[A] federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." Schulte v. Fifth Third Bank, No. 09 C 6655, 2012 WL 2254197, *2 (N.D. Ill. June 15, 2012) (quoting Williams v. Gen. Elec. Capital Auto Lease, Inc., 159 F.3d 266, 273-74 (7th Cir. 1998)). Other circuits also agree that broad releases in class action settlements are appropriate and enforceable. See, e.g., In re Gen. Am. Life Ins. Co. Sales Practices Litig., 357 F.3d 800, 805 (8th Cir. 2004); City P'ship Co. v. Atl. Acquisition Ltd. Partnership, 100 F.3d 1041, 1044 (1st Cir. 1996); In re Corrugated Container Antitrust Litig., 643 F.2d 195, 222 (5th Cir. 1981). Even so, the release here is appropriately limited to claims based on telephone calling methods challenged in the pleadings.

That the release broadly covers a wide range of legal theories that might be asserted based on calling activity (such as statutes regulating debt collection activity) does not render the release defective, as Judge Holderman recognized in Wilkins. See No. 1:14-cv-00190, Dkt. No. 117 (N.D. Ill. Feb. 27, 2015). Because the only released claims were those based on allegations of use of an automatic telephone dialing system or an artificial or prerecorded voice (as is the case here), the release was not overbroad. Id. This Court should reach the same conclusion.

Objector Purgahn argues that the scope of the release is overbroad because Alert Call Subclass Members who received calls regarding their own accounts release their claims against Chase without receiving any monetary payment and because Settlement Class Members remain obligated on their debt to Chase while releasing their right to sue Chase. But these objections simply repackage the argument that the Settlement does not pay Settlement Class Members enough, and likewise fail. The Seventh Circuit has recognized that it is "not at all uncommon for

15

settlements to include a global release of all claims past, present, and future, that the parties might have brought against each other." Williams, 159 F.3d at 274; see also Fair v. Int'l Flavors & Fragrances, Inc., 905 F.2d 1114, 1115-16 (7th Cir. 1990) (holding that the parties' general release was enforceable even though one claim was technically "nonexistent" at the time of settlement). "A settlement offer is a compromise and may include a release of claims not before the court." Oswald v. McGarr, 620 F.2d 1190, 1198 (7th Cir. 1980); see also AT & T Mobility Wireless Data Servs. Sales Tax Litig., 789 F. Supp. 2d 935, 944 (N.D. Ill. 2011) (approving a release that would "forever discharge AT & T Mobility from any and all claims ... causes of action, obligations, ... and costs ... relating in any way or arising out of [AT & T's alleged violation]"). The release here is unremarkable and provides no grounds to disapprove the Settlement.

Finally, if any Settlement Class Members did not wish to be bound by the release set forth in the Settlement, they had the choice to exclude themselves from the Settlement. The website notice very clearly states: "Unless you exclude yourself, you are staying in the Settlement Class and you will be a Settlement Class Member. That means that you can't sue, continue to sue or be part of any other lawsuit against Chase on the TCPA claims, and other related claims, that are subject to the Settlement. It also means that all of the Court's orders will apply to you and legally bind you." No Objector claims the scope of the release was not clearly communicated. That the opt-out rate is so low confirms that the release is not overbroad. See Murray, 434 F.3d at 953. All objections to the scope of the release should be overruled.

LA 51918006

**D.     The Notice Program Was Excellent And Fully Compliant.**

1.     The Law Only Requires The Best Practicable Notice Under The Circumstances.

The Objections to the Notice Program are meritless and also should be overruled.  "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  Manual for Compl. Litig. (2015) at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  Notably, "Class notice is not intended to serve as a complete source of information[.]"  In re Brand Name Prescription Drugs Antitrust Litig., No. 94 C 897, 1996 WL 167347, at *4 (N.D. Ill. April 4, 1996).

Here, Objectors argue that the class notice was deficient because:  (1) the settlement website URL does not contain the word "Chase"; (2) the settlement website allowed only one phone number to be entered into the claim form; (3) the notice provides misleading statements regarding the value of a claim and the number of claims each Settlement Class Member may submit; (4)  the deadlines were not clearly listed in the website notice; and (5) the Second Amended Complaint and the final approval motion were not posted on the settlement website. Each of these Objections lacks merit, as the class notice, including the settlement website, was sufficient and gave the best notice practicable under the circumstances.[14]

---

[14]   For a complete description of the Notice Program, see Plaintiffs' Response to Objections.

LA 51918006

2.     The Settlement Website Address Was Appropriate And Was Provided On Multiple Forms of Notice.

The arguments of Objectors Weaver and House that notice was deficient because the settlement website's address (its "Uniform Resource Locator" or "URL") did not contain the word "Chase" are frivolous. The mailed notice, email notice, and publication notice all listed the settlement website address. (See Dowd Decl., Exh. A-F.) No class member was required to "memorize" the address. Instead, he or she simply had to look at the notice that was provided and type the address into an Internet browser. The argument is akin to one that no one can find their way to the courthouse here because its address is Dearborn Street, not Court Street, or to the Art Institute because its address is Michigan Avenue, not Museum Avenue.

There absolutely is no requirement under Rule 23 or any reported case that the settlement website URL contain Chase's name, and URLs often are different from the name of who they are connected with. Nor was it even necessary for Settlement Class Members to type the URL, as typing the words "Chase TCPA Settlement" or similar into a search engine like Google would immediately return the Gehrich settlement website if anyone who lost his or her notice searched for it that way. (See Id., ¶ 30). This Objection lacks merit and should be overruled.

3.     The Online Claim Form Is Adequate.

Another misguided Objection by Objector Murphy is to the online claim form, asserting that only one phone number could be entered into the phone number field on the claim form deprived Settlement Class Members of an ability to recover settlement awards. However, although Settlement Class Members were asked to provide the cell phone number allegedly called by Chase during the class period, settlement awards will not be withheld because an incorrect phone number was provided on the claim form. On a related note, Objector Purgahn complained that the website notice failed to adequately inform Settlement Class Members how

18

many claims they each may submit.  A review of the settlement website confirms that this is incorrect.  All class notices clearly directed Settlement Class Members that they may each "submit a claim" and the claim form included clear instructions to "check all the boxes that apply," and included boxes for each subclass.  Thus, the claim form and instructions to submit a claim form could not be more clear.

4.     The Estimated Claim Value Was Accurately Disclosed In The Notice.

Objector Purgahn alleges that the estimated value of the claim was inconsistent in the class notices, in some places estimating that claiming Settlement Class Members would receive $20-$40 per claim, and in others, that they would receive $140-$155 per claim.  This simply is factually incorrect.  Each of the class notices clearly states that Class Counsel "estimate" that the value of each claim would be approximately $20-$40.  This approximation provided in the class notice was based on Class Counsel's estimation of the <u>expected</u> claims rate made at the outset of the settlement administration.  Later, in their Motion for Attorneys' Fees and Costs filed on January 9, 2015, Class Counsel provided an updated approximation of the value of each claim based on the <u>actual</u> pace of claims filing, so the Court had complete information about how the administration was progressing.  The form of <u>notice</u> to Settlement Class Members was never altered.  Nor does this Objector explain how any Settlement Class Member would be harmed by ultimately receiving a settlement award that is <u>larger</u> than what was estimated in the class notices.  This Objection should be overruled.

5.     All Deadlines Were Clearly Listed In The Class Notices.

Objectors Weaver and House allege that the deadlines were not sufficiently clear.  This Objection also is entirely unfounded.  The class notices were approved by the Court in the Preliminary Approval Order prior to their dissemination.  There is <u>no</u> requirement that the

deadlines be listed in the "summary chart" as alleged by the Objectors. The deadlines actually are listed in bold letters in the website notice within the relevant section under each response option for the Settlement Class Members. Further, each deadline is listed in bold letters on the postcard notices emailed, mailed, and published to the Settlement Class Members. Lastly, the settlement website provides the relevant deadlines in two places, including under "Important Dates," on the home screen. It is no wonder that almost 350,000 Settlement Class Members were able to comply with the clearly-laid-out deadlines and that the settlement administrator — an <u>expert</u> in the field — agrees that the Notices were sufficient to apprise the Settlement Class of the relevant deadlines. These Objectors present no expert of their own to support their purported Objection, and they are clearly not qualified to opine on the sufficiency of the class notices. See generally Loef v. First Am. Title Ins. Co., 281 F.R.D. 58, 59 (D. Me. 2012) (finding that parties' opinions on the notice must be supported by a declaration from an "qualified professional or other expert"). Consequently, any Objection that the class notices did not sufficiently apprise the Settlement Class Members of the relevant deadlines for their responses has no grounds.[15]

> 6.      Posting The Complaint On The Settlement Website Is Not Required.

Objectors Weaver and House complain that the operative complaint was not made available on the settlement website. No requirement to provide a copy of the pleadings in the litigation exists either under Federal Rule of Civil Procedure 23 or pursuant to Due Process. See Mangone v. First USA Bank, 206 F.R.D. 222, 233-34 (S.D. Ill. 2001) (overruling similar objection where settlement agreement was available and class members could direct questions to class counsel). The class notices provided in this Settlement "reasonably apprised" Settlement Class Members of the terms of this Settlement and their options. Thus, the absence of the

---

[15]   Furthermore, Chase has agreed to honor late claims submitted through the date of entry of the final approval order.

operative complaint or any other item from the Court's docket from the settlement website cannot be said to deprive the class of any Due Process. Any Settlement Class Member curious about the procedural history of the litigation could have simply requested documents from Class Counsel. Regardless, a copy of the Second Amended Complaint was uploaded to the settlement website on February 18, 2015. These Objectors fail to explain how any Settlement Class Member's understanding of the Settlement was impaired.

### E. The Residual and Dedicated *Cy Pres* Distributions Are Proper And Consistent With Seventh Circuit Authority.

There are several Objections by Objectors Bray, Doyley, Murphy, Narkin, and Purgahn to the residual and dedicated *cy pres* distributions. However, <u>none</u> of the Objectors identify a single other organization that is more suitable to receive the distributions, in contrast to the almost 350,000 Settlement Class Members who have affirmatively shown support for the Agreement as drafted — with *cy pres* distributions to the CFA and EFF — by submitting claim forms to recover from the Settlement. Therefore, each of the Objections as to the *cy pres* distributions lacks merit and should be overruled.

#### 1. The Dedicated *Cy Pres* Distribution On Behalf Of The Alerts Calls Subclass Is Appropriate In Light Of The Facts.

The Settlement Agreement provides for a $1,000,000 donation on behalf of the Alert Call Subclass Members to the CFA, to be paid at the same time the settlement awards are paid to Settlement Class Members. (<u>See</u> Settlement Agreement, at ¶ III.I.1.) Objectors Bray, Doyley, Murphy, Narkin, and Purgahn assert that the dedicated *cy pres* distribution reduces the available funds to compensate Settlement Class Members and instead should be distributed to known Settlement Class Members. These Objections fundamentally misunderstand the structure of the Settlement and the purpose of this donation and should be rejected.

21

Several courts have previously found that "when real and cognizable differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution of the settlement in favor of plaintiffs whose claims comprise the set that was more likely to succeed." Schulte, 805 F. Supp. 2d at 589 (internal citations omitted); see also In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 461–63 (9th Cir. 2000) (finding that a distribution that "leaves a large portion of the class without a recovery" was not improper). The Alert Call Subclass consists almost exclusively of Chase's customers who provided their cell phone number to Chase and requested that Chase provide certain automatic alerts to them.[16] As a result, consent was provided by these Settlement Class Members to the calls at issue, precluding a finding of a TCPA violation.[17]

Thus, because automatic alerts were sent only to consenting Chase customers, the Parties agreed that Alert Call Subclass Members who received only informational calls, as they had requested, regarding their own accounts, should not receive a direct monetary payment. Instead, the Parties agreed that a more appropriate and useful recovery for these individuals would be to receive instructions regarding their entitlement to opt out or withdraw consent to receive automatic alerts.[18] As further consideration for the Settlement, Chase therefore agreed to donate

---

[16] To the extent that some of the members of this Subclass are "wrong-parties," these individuals had the opportunity to submit a claim form and receive a settlement award under the Settlement.

[17] See Section II.A. Above for additional detail regarding the consent provided by the Alert Call Subclass Members.

[18] One Objector alleges that this is insufficient injunctive relief because providing Settlement Class Members the opportunity to stop receiving calls and/or alerts is something that Chase has an independent obligation to honor. Although this Objector is correct that Chase has an independent duty to honor its customers' requests to cease automatic alerts, Chase does not have an independent duty to provide additional instructions to each of the Settlement Class Members (in addition to what Chase already provides in its regular course of business) regarding how customers may cease automatic alerts. Thus, each of the Settlement Class Members who previously enrolled to receive automatic alerts but no longer wishes to receive such alerts has received clear instructions on how to stop them — the only appropriate injunctive relief for this Subclass of individuals who affirmatively requested that Chase send informational automatic alerts to their cell phones.

22

$1,000,000 to the CFA exclusively for the benefit of the Alert Call Subclass Members. Thus, this donation was agreed upon outside of the overall fund for payment of settlement awards, and did not in any way "take away" funds from Settlement Class Members who may have had viable TCPA claims against Chase.

This Court also should reject Objector Purgahn's argument that the CFA's mission is "too remote from the Class Members in this TCPA case." The Parties selected the CFA as the dedicated *cy pres* recipient because of its stated commitment to the advancement of the consumer interest through research, advocacy, and education. Other district courts previously have approved of the CFA as a recipient of a *cy pres* distribution.[19] Thus, the CFA is an appropriate recipient of this donation on behalf of the Alert Call Subclass, and a similar award to other consumer advocacy organizations is unnecessary to render this donation appropriate.[20]

### 2.     The Residual *Cy Pres* Distribution Is Appropriate.

The Objections that the residual *cy pres* distribution is improper and those monies should instead be distributed to Settlement Class Members also miss the mark. A residual *cy pres* distribution will be made only if and after extensive efforts to distribute the Fund to claiming Settlement Class Members. The Seventh Circuit is clear that "[t]he authority to make *cy pres* grants to dispose of the remainder of a class action settlement fund is well established." Glen Ellyn Pharmacy, Inc. v. La Roche–Posay, LLC, No. 11–968, 2012 WL 619595, at *1 (N.D. Ill.

---

[19]   Objector Murphy also objects to the CFA as the recipient of the dedicated *cy pres* distribution, arguing that if the CFA is receiving a donation, then every other consumer advocacy organization in the U.S. should similarly receive an award. This Objection is meritless. There is no requirement that *cy pres* donations be distributed among all, or even most, similarly-oriented organizations; picking only one organization is the accepted practice. To distribute *cy pres* to all of the many thousands of charities in the United States would be an administrative impossibility.

[20]   Plaintiffs provide additional evidence in support of the appropriateness of the CFA and the EFF as *cy pres* recipients in this case in the concurrently-filed Plaintiffs' Response to Objections and declarations in support thereof.

Feb. 23, 2012); see also In re Mex. Transfer Litig., 164 F. Supp. 2d at 1031 ("The Seventh

Circuit and other Courts have recognized that *cy pres* contributions are proper and often are part

of class action settlements."); Keele v. Wexler, 149 F.3d 589, 592 (7th Cir. 1998) (approving *cy*

*pres* contribution to legal aid foundation). Courts in the Seventh Circuit routinely approve of

settlement agreements that contemplate the use of *cy pres* contributions to dispose of settlement

funds that cannot, as a practical matter, be distributed to class members. A *cy pres* fund is "ideal

for circumstances in which it is difficult or impossible to identify the persons to whom damages

should be assigned or distributed." Mace v. Van Ru Credit Corp., 109 F.3d 338, 345 (7th Cir.

1997); see also McKinnie, 678 F. Supp. 2d at 813 (noting that *cy pres* distributions in class

actions are routine, "particularly when locating and ascertaining the status of all individual class

members is prohibitively difficult or expensive"). The residual *cy pres* distribution in this

Settlement meets the aforementioned criteria.

Here, the Settlement Agreement mandates that the settlement administrator first attempt

to distribute the Fund (in two separate distributions) to claiming Settlement Class Members

before any residual *cy pres* donation is made.[21] Only after all efforts to use the Fund for the

benefit of Settlement Class Members have been exhausted, will any monies be donated to the

residual *cy pres* distribution recipient — the EFF.[22] This approach is consistent with Seventh

Circuit authority, as explained above. See also Pearson v. NBTY, Inc., 772 F.3d 778, 784 (7th

---

[21] See Section II.A. above for additional detail regarding the settlement awards distribution process.

[22] Objector Purgahn also objects specifically as to this *cy pres* recipient. The case law is clear that "while use of funds for purposes closely related to their origin is still the best *cy pres* application, the doctrine of *cy pres* and courts' broad equitable powers now permit use of funds for other public interest purposes by educational, charitable, and other public service organizations, both for current programs or, where appropriate, to constitute an endowment and source of future income for long-range programs to be used in conjunction with other funds raised contemporaneously." Superior Beverage Co. v. Owens-Illinois, Inc., 827 F. Supp. 477, 479 (N.D. Ill. 1993). His Objection is meritless.

24

Cir. 2014) (finding that "the choice of an orthopedic institute as a recipient of money left over after all approved class members' claims are paid is consistent with *cy pres*").

All Objections to the *cy pres* distributions should be overruled.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Objectors' arguments should be disregarded, and the Settlement Agreement should be finally approved.

Dated:  October 8, 2015

Respectfully submitted,

For CHASE BANK USA, N.A. and
JPMORGAN CHASE BANK, N.A.

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
STEPHEN J. NEWMAN
ARJUN P. RAO
JULIETA STEPANYAN


By:    */s/ Julia B. Strickland*
Julia B. Strickland
Stephen J. Newman
Arjun P. Rao (admitted *pro hac vice*)
Julieta Stepanyan (admitted *pro hac vice*)
2029 Century Park East
Los Angeles, CA 90067-3086
Telephone:  (310) 556-5800
Facsimile:  (310) 556-5959
Email:  lacalendar@stroock.com

25

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2015, a copy of the foregoing **RESPONSE OF DEFENDANTS, CHASE BANK USA, N.A. AND JPMORGAN CHASE BANK, N.A., TO OBJECTIONS TO PROPOSED CLASS ACTION SETTLEMENT AGREEMENT** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

*/s/ Julia B. Strickland*
Julia B. Strickland