IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JONATHAN I. GEHRICH, ROBERT LUND,
COREY GOLDSTEIN, PAUL STEMPLE and
CARRIE COUSER, individually and on behalf
of all others similarly situated,

                     Plaintiffs,

     v.

CHASE BANK USA, N.A., and JPMORGAN
CHASE BANK, N.A.,

                  Defendants.

NO. 1:12-CV-5510

Honorable Gary Feinerman

## **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page No.**

I.   INTRODUCTION ......................................................................................................... 1

II.  AUTHORITY AND ARGUMENT .............................................................................. 1

    A.    The Settlement Is the Result of Informed, Arm's Length Negotiations .............. 2

    B.    Class Members Received the Best Notice Practicable ......................................... 3

    C.    The Settlement Satisfies the Criteria for Settlement Approval ............................ 9

        1.    The Strength of Plaintiffs' Case Compared to the Amount of the Settlement ...................................................................................... 9

        2.    Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive .................................................................................... 12

        3.    Little Opposition to the Settlement and Counsel Support Favor Settlement ................................................................................. 12

        4.    The Extent of Discovery Completed and the Stage of the Proceedings .............................................................................. 13

        5.    The Settlement Is Reasonable in Light of the Requested Attorneys' Fees ........................................................................................... 14

    D.    The Settlement Comports with *Redman, Pearson, and Eubank* ........................ 15

III. CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

Page No.

## FEDERAL CASES

*Adams v. AllianceOne Receivables Mgmt. Inc.*,
    No. 08-cv-00248 (S.D. Cal.) ............................................................................ 10

*Aliano v. Joe Caputo & Sons-Algonquin, Inc.*,
    No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) ............................ 11

*AT&T Mobility LLC v. Concepcion*,
    --- U.S. ---, 131 S.Ct. 1740 (2011) ................................................................ 11

*Balschmiter v. TD Auto Fin., LLC*,
    303 F.R.D. 508 (E.D. Wis. 2014) .................................................................. 11

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014) .................................................................... 11

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) .............................................................. 1, 8, 15

*Gusman v. Comcast Corp.*,
    298 F.R.D. 592 (S.D. Cal. 2014) .................................................................. 10

*Hughes v. Kore v. Indiana Enter., Inc.*,
    731 F.3d 672 (2013) ........................................................................................ 7

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) ............................................................ 10, 14

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ..................................................................... 1, 9

*Jamison v. First Credit Servs.*,
    290 F.R.D. 92 (N.D. Ill. 2013) ...................................................................... 11

*Kramer v. Autobytel*,
    No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ............... 10

*Palmer v. Sprint Nextel Corp.*,
    No. 09-cv-01211 (W.D. Wash.) ...................................................................... 10

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ............................................................................ 1, 7, 9, 15

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .................................................................................*Passim*

*Saf-T-Gard Int'l v. Vanguard Energy Servs.*,
    Case No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012)................................. 11

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .............................................................................. 12

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .................................................................................... 9, 12

*Uhl v. Thoroughbred Tech. & Telecommunc'ns, Inc.*,
    309 F.3d 978 (7th Cir. 2009) ........................................................................................ 1

## OTHER AUTHORITIES

H. Newberg & A. Conte, Newberg on Class Actions § 11:41 (4th ed. 2002) ............................. 2

*Manual for Complex Litigation* (Fourth) § 21.61 (2010) ............................................................ 1

# I. INTRODUCTION

Plaintiffs Jonathan I. Gehrich, Robert Lund, Corey Goldstein, Paul Stemple and Carrie Couser ("Plaintiffs") respectfully submit this memorandum in support of their motion for final approval of the settlement reached in this class action. For the reasons set forth in this memorandum and in the papers previously submitted in support of approval, including Plaintiffs' Response to Objections to Class Action Settlement, the settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court grant final approval to the settlement by: (1) approving the proposed Settlement Agreement as fair, adequate, and reasonable for the certified Settlement Class; (2) determining that adequate notice was provided to the Settlement Class; (3) approving Class Counsel's requested attorneys' fees (including costs) of $9,507,603; and (4) approving service awards in the amount of $1,500 for each Class Representative ($7,500).

# II. AUTHORITY AND ARGUMENT

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985)). When faced with a motion for final approval of a class action settlement under Rule 23, a court's inquiry is limited to whether the settlement is "lawful, fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecommunc'ns, Inc.*, 309 F.3d 978, 986 (7th Cir. 2009). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

After Plaintiffs filed their motion for preliminary approval, the Court ordered the parties to file a supplemental memorandum explaining why this class action settlement comports with recent Seventh Circuit decisions in *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), and *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014). (*See* Dkt. Nos. 120, 123.) After the parties submitted their memorandum, the

Court entered an order, indicating that it would address these decisions at the final approval hearing. (Dkt. No. 125.) Thus, in addition to addressing the criteria for final approval, Plaintiffs specifically address these three cases as well.

**A.     The Settlement Is the Result of Informed, Arm's-Length Negotiations**

A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg & A. Conte, Newberg on Class Actions § 11:41 (4th ed. 2002). The settlement here satisfies this test.

As the Court recognized in its preliminary approval order, the settlement "resulted from extensive arm's length negotiations." (Dkt. No. 117 ¶ 2.) The parties are represented by highly competent counsel who have years of experience litigating and settling complex class actions, including actions involving alleged violations of the TCPA. (*See* Dkt. Nos. 107-5, 107-7– 107-12.) To reach this settlement, the parties engaged in extensive negotiations, which included three formal mediation sessions with the Honorable Edward A. Infante (Ret.), on April 25, 2013, June 4, 2013 and November 14, 2013. (*See* Dkt. No. 107-5 ¶ 14.) The parties also participated in several subsequent telephonic settlement conferences and calls with Judge Infante. (*Id.*) These sessions culminated in a Settlement Agreement that provides substantial benefits to the Settlement Class, including a non-reversionary payment by Chase of $34 million into a settlement fund that Plaintiffs propose be used to pay (1) Settlement Class Member claims in the amount of $18,331,967.49; (2) a dedicated *cy pres* distribution of $1,000,000; (3) settlement administration expenses of approximately $5,152,929.51; (4) court-approved incentive awards to the five named Plaintiffs in the amount of $1,500 each ($7,500 total); and (5) court-approved attorneys' fees and costs of $9,507,603 (33.33% of the Settlement Fund after deducting the dedicated *cy pres* distribution and settlement administration expenses).

The settlement is the result of a thorough investigation by the parties. During the mediation process, the parties exchanged detailed written submissions setting forth their

respective positions on various substantive issues and participated in numerous telephonic follow-up discussions. (Dkt. No. 107-5 ¶ 14.) After the parties reached an agreement in principle, Plaintiffs insisted that Chase provide information establishing the size of the settlement subclasses. (*Id.* ¶ 12.) Plaintiffs propounded written discovery requests regarding the composition of the Collection Call Subclass and the Alert Call Subclass. (*Id.*) Chase responded to these requests, estimating (1) the number of unique accounts in the Settlement Class connected with attempts to collect debts on Chase USA and JPMC Bank accounts ("Collection Call Subclass") and (2) the number of unique accounts in the Settlement Class connected with SMS text message and/or voice alerts sent to cell phones to provide account information relating to Chase USA and JPMC Bank accounts ("Alert Call Subclass"). (*Id.* ¶ 13.) Chase also provided a declaration from Cathy Marinelli, who is the Digital Services Operations Executive for JP Morgan Chase & Co. (*Id.* ¶ 12.) Plaintiffs deposed a Chase representative pursuant to Rule 30(b)(6) about the composition of the subclasses to confirm their size and scope. (*Id.*) Chase subsequently revised its estimate of the size of the Collection Call Subclass after determining that it had made a de-duplication error. (Dkt. No. 186-1, n. 2.)

In light of Plaintiffs' efforts to obtain information necessary to determine the value of the settlement and their hard work negotiating fair relief for the Settlement Class, the settlement is entitled to a presumption of fairness.

**B.    Class Members Received the Best Notice Practicable**

This Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. (Dkt. No. 117 ¶ 9.) This notice program has been implemented by independent claims administrator, Garden City Group ("GCG"). (*See generally* Declaration of Lael Dowd Concerning Implementation of Notice Plans ("Dowd Decl.").)

Chase originally provided GCG with a list containing records of 15,942,691 Settlement Class members, for whom Chase possesses either a mailing or emailing address (the "Class List"). (Dowd Decl. ¶ 9.) After receiving the Class List, GCG processed the data to ensure adequate formatting. (*Id.*) GCG then sent an email containing a summary of the settlement to all persons on the Class List for whom they had email addresses. (*Id.* ¶ 11.) GCG mailed a postcard summarizing the settlement to Settlement Class members for whom GCG had mailing information only and to the 126,275 Settlement Class members whose emails were undeliverable and for whom GCG had mailing addresses. GCG sent direct notice to 15,198,233 Settlement Class members. (*Id.* ¶ 16.)

Before the final approval hearing, the parties realized GCG had not been provided names and contact information for what they understood were approximately 7.1 million persons in the Settlement Class. Chase investigated the issue and subsequently provided GCG with a list of names and contact information for 7,103,530 Settlement Class members. (Dowd Decl. ¶ 19.) GCG eliminated duplicate names and addresses and determined that 4,990,596 Settlement Class members inadvertently were not provided direct notice by U.S. Mail or E-mail as set forth in the Settlement Agreement and the Court's Preliminary Approval Order (Dkt. 117). The parties agreed that the final approval hearing should be continued so that GCG could send notice to these Settlement Class members and provide them with an opportunity to object to, or exclude themselves from, the settlement. (Dkt. No. 176.)

The parties also agreed that a supplemental "reminder" notice should be sent to Settlement Class Members who originally received notice but, for whatever reason, did not submit a claim. The Court entered an order approving the parties' proposal. (Dkt. No. 178.) Although one month remains in the claims period, 349,206 timely potentially valid claims have been submitted. (Dowd Decl. ¶ 48.) In addition, 192 untimely claims were submitted. *Id.* In contrast, only 14 Settlement Class Members filed objections to the settlement. (Dowd Decl. ¶ 40.) Four other Settlement Class Members objected but did not file their objections with the

Court.  (*Id.*)  Only 225 Settlement Class members requested to opt out.  (Dowd Decl. ¶¶ 37–39.)  Of the exclusion requests, 23 were untimely and 97 are potentially invalid under the terms of the Settlement Agreement.  (*Id.*)

As of September 30, GCG had incurred $5,152,929.51 in total settlement administration expenses.  (*Id.* ¶ 28.)  GCG expects total settlement administration expenses to total over $5.5 million dollars but has agreed to limit the fees and expenses to the $5,152,929.51 incurred to date.  (*Id.*)

The notices emailed and mailed to Settlement Class members informed them of: (1) the settlement's benefits; (2) deadlines for all Settlement Class members to file a claim form, opt out of the settlement, and object to the settlement and/or Class Counsel's fee request; (3) the amount being sought by Class Counsel in attorneys' fees and costs; (4) the address for the settlement website where they can obtain more information, download forms, and file claims; and (5) the date and location of the final approval hearing.  (Dowd Decl., Exs. A–E.)

If an email notice was returned undeliverable, GCG mailed a postcard to that person, to the extent GCG had a mailing address.  If a mailed notice was returned as undeliverable, GCG attempted to locate updated addresses and then re-mailed the notices to the updated addresses.  (Dowd Decl. ¶¶ 10–16, 19–26.)  If notices were returned with forwarding addresses, GCG re-mailed the notices to the Settlement Class members at their forwarding addresses.  (*Id.*)  GCG estimates postcard notices reached 78.65% of the Settlement Class members for whom GCG had mailing addresses.  (*Id.* ¶ 27.)  In total, approximately 19,969,177 Settlement Class members were sent direct notice that was not returned to GCG, which amounts to 82% of the Settlement Class members for whom records existed.  (*Id.* ¶¶ 16, 26)

Email and mailing addresses could not be obtained for the entire class.  To reach people for whom no contact information was available, GCG published notice of the settlement in three national magazines, including *People*, *Better Homes and Gardens*, and *Sports Illustrated*.  (Dowd Decl. ¶¶ 17–18.)  GCG also established a settlement website

([www.gehrichtcpasettlement.com](www.gehrichtcpasettlement.com)) where Settlement Class members may go for information or to submit a claim electronically. (*Id.* ¶¶ 29–33.) The Settlement Agreement, Preliminary Approval Order, Class Counsel's Fee petition have been continuously posted on the website. On February 18, 2015, GCG posted the Second Amended Complaint. After the Court entered the order rescheduling the final approval hearing so that (1) direct notice could be provided to Settlement Class members for whom contact information had been located, and (2) a reminder notice could be sent to Settlement Class members who had not yet submitted claims, GCG updated the Settlement Website to inform Settlement Class Members of the new deadlines. (Dowd Decl. ¶ 33.)

The notice program has been successful. As of October 4, 2015, GCG had received a total of 178,000 telephone calls to its toll free line and there have been approximately 15,154,322 "hits" on the website. (Dowd Decl. ¶ 33.)

Plaintiffs are aware that in *Redman* the Seventh Circuit commented on the fact that only a portion of the class (approximately 41% in that case) had been notified directly and a very small percentage submitted claims. *See Redman*, 768 F.3d at 628. On this basis, the Seventh Circuit took issue with the district court's statement that "the vast majority" of the class "accepted" the settlement because they had not objected to it. *Id.* ("The fact that the vast majority of the recipients of notice did not submit claims hardly shows 'acceptance' of the proposed settlement; rather it shows oversight, indifference, rejection, or transaction costs").

Although similar facts exist here (contact information for only a portion of the class is available and the claims rate is low), there are substantial differences between this case and *Redman*. Unlike *Redman*, which involved a coupon, claims-made settlement, in which the defendant ultimately only issued $830,000 worth of coupons to a class estimated to contain 16 million class members, this settlement requires Chase to pay $34,000,000 into a non-reversionary Settlement Fund out of which $18,331,967 will be distributed in its entirety in cash payments to the Settlement Class Members who timely filed valid claim forms. Thus, no

incentive exists in this case for Chase to underestimate the number of class members for whom contact information exists as the Seventh Circuit suggests happened in *Redman*.

This case is more like *Hughes v. Kore v. Indiana Enter., Inc.*, 731 F.3d 672, 676–77 (2013) in which the Seventh Circuit held that due process requires only the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* "When reasonable effort would not suffice to identify the class members, notice by publication, imperfect thought it is, may be substituted." *Id.* at 677 (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012); Federal Judicial Center, Manual for Complex Litig. § 21.311, pp. 287–88 (4th ed. 2004)). Here, Class Counsel confirmed that Chase made a reasonable effort to identify Settlement Class members. (Terrell Decl. ¶ 2.) Thus, publication notice was proper and the notice program should be approved.

This case also does not present concerns of an overly complicated claims process that were present in *Pearson* and *Eubank*. *Pearson* involved claims that a manufacturer of "glucosamine" supplements and its subsidiary violated consumer protection laws by making false claims about the product's effectiveness. The *Pearson* settlement required defendants to pay eligible claimants $3 for each bottle of glucosamine they had purchased up to four bottles and $5 for each bottle purchased up to ten bottles so long as they provided proof of purpose, but there was no dedicated "fund" from which those amounts would be paid. Because defendants only had to pay "claims made," there was incentive to negotiate a settlement with a notice and claims process designed to keep claims to a minimum. And the Seventh Circuit suggested the parties had done just that by "structur[ing] the claims process with an eye toward discouraging the filing of claims." *See Pearson*, 772 F.3d at 782–83. The claim form required claimants to list cash register receipts or other documentation indicating the date and place at which he or she had bought the product. *Id.* at 783. The form advised the claimant that the claim could be audited "for completeness, waste, fraud, and abuse;" warned the claimant that a false claim "may

violate certain criminal and civil laws;" and required the claimant, in boldface, "to certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge." *Id.*

In *Eubank*, the Seventh Circuit similarly found that the settlement "strews obstacles in the path" of class members through the use of a complicated claim process and claim forms that were long and complicated (12–13 pages). *See Eubank*, 753 F.3d at 725 (finding the claim form and notices required class members to supply "a slew of arcane data…"). Class members could choose to file a claim but if they chose to do so were limited to a maximum damages award of $750 per structure. There also was a "per window" cap and the cap falls to zero unless the class member gave "notice" to the defendant before replacing the defective window. Some claimants only were entitled to coupons or a warranty extension that the defendant had adopted before the settlement. As an alternative to filing claims, class members could choose to arbitrate their claim but then would be subject to various defenses, including the statute of limitations. *Id.*

In comparison to the notice and claim forms that caused the Seventh Circuit concern in *Eubank* and *Redman*, the notice and claim forms here are clearly-written, informative, and to the point. (Dowd Decl., Exs. A–E.) Settlement Class Members who want further information regarding the Settlement may visit the website dedicated to the Settlement where they may read a detailed notice that also is written in plain language with illustrative examples provided if appropriate. The email and postcard notices are designed to encourage claims, allowing a Settlement Class Member to submit the form by mail or online, and, importantly, only requiring the Settlement Class Member to check a box and sign his or her name to receive a cash payment. A telephone line was set up to assist Settlement Class Members with submitting claims. Finally, GCG sent a reminder notice to all individuals who had not yet submitted a claim.

In sum, the notice program implemented by GCG has provided due and adequate notice of these proceedings and satisfies the requirements of due process.

**C.** **The Settlement Satisfies the Criteria for Settlement Approval**

In evaluating a settlement, a district court must consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1999 (7th Cir. 1996)). "The 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)).

The judge also "must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher fees the less compensation will be received by the class members." *Redman*, 768 F.3d at 629. The judge evaluating the settlement is "a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson*, 772 F.3d at 780.

1. <u>The Strength of Plaintiffs' Case Compared to the Amount of the Settlement</u>

The settlement reached in this case requires Defendants to pay $34,000,000 into a Settlement Fund, out of which $18,330,284 will be distributed to the Settlement Class Members who have filed timely valid claims.[1] Settlement Class Members who file a timely claim will receive $19.40, $58.20, or $77.60 depending on whether they received calls regarding a Chase bank account, credit card, both, or were not Chase customers and received "wrong-party" calls.[2] The Settlement Fund is non-reversionary. No amount will return to Chase.

---

[1] An analysis of potentially invalid claims has not been completed. (Dowd Decl. ¶¶ 48–49, n. 4.)

[2] The Settlement Agreement provides that cash awards will be calculated using a weighted "Award Unit" system. Settlement Class Members who received collection calls regarding a bank account will receive $19.40 (one Award Unit). (Dowd Decl. ¶ 50.) Settlement Class Members who received collection calls regarding a credit card will receive $58.20 (three Award Units). *Id.* Settlement Class Members who received collection calls regarding both a bank account and a

The $19.40, $58.20, or $77.60 cash awards do not constitute the full measure of statutory damages potentially available to the Settlement Class but this fact alone should not weigh against final approval. A settlement is a compromise, and courts need not reject a settlement "solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (St. Eve, J.). The settlement compares favorably to other TCPA class action settlements involving similarly large classes. *See, e.g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash.) (approving $5.5 million settlement to benefit 18.1 million class members); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal.) (approving $9,000,000 settlement to benefit 6,696,743 class members).

Although Plaintiffs have thoroughly investigated the factual and legal bases for their claims, Plaintiffs faced a number of difficult challenges if the litigation were to continue. First, Plaintiffs faced the very real risk that they would not be able to identify the class. Defendants challenged Plaintiffs efforts during discovery to obtain information necessary to understand the size and scope of the class. At the time this case was stayed pending mediation, Plaintiff Gehrich had moved to compel such information and the parties had fully briefed the issue. As Plaintiffs pointed out in their fee petition (Dkt. No. 140), TCPA plaintiffs sometimes lose such motions and are unable to proceed on a class basis as a result. *See, e.g., Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596–97 (S.D. Cal. 2014) (denying motion to compel production of the defendant's call data). Even if Plaintiffs had prevailed, they would have been required to expend substantial time and money working with an expert to analyze the data that they received.

Second, Chase maintains that JPMC Bank account holders signed arbitration agreements that purported to waive the account holders' right to bring a class action lawsuit. The United

credit card will receive $77.60 (four Award Units). *Id.* Settlement Class Members who received "wrong-party" calls or texts will receive $58.20 (three Award Units). *Id.*

States Supreme Court has held that such agreements are enforceable. *AT&T Mobility LLC v. Concepcion*, --- U.S. ---, 131 S.Ct. 1740, 1748–49 (2011). Chase very likely would have moved to dismiss this portion of the class and compel arbitration had the case not settled.

Third, Plaintiffs faced challenges at class certification. Courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin., LLC*, 303 F.R.D. 508, 527–28 (E.D. Wis. 2014) (same); *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, Case No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a TCPA class and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Fourth, even if Plaintiffs survived a motion to compel arbitration and class certification, at trial Plaintiffs would have had the burden to rebut Chase's consent defense. Chase has maintained that many potential "collection call" members provided their cell phone numbers either on credit applications or through subsequent dealings with Chase. According to Chase, class members also provided their cell phone numbers when they signed up online to receive "alerts" regarding their Chase accounts. Rebutting this defense could have proven very difficult and, regardless of the outcome, the losing party almost certainly would have appealed thereby delaying class recovery even longer.

Fifth, Plaintiffs faced challenges even if they prevailed at trial. Some courts view awards of aggregate, statutory damages with skepticism and either refuse to certify a class or reduce such awards on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons-Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights ….

Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). Even if the Court permitted such an award, Plaintiffs could have had difficulty collecting any judgment since Chase faced exposure of between $17 and $50 billion assuming class members received only one call (32,297,356 class members x $500 = $16,148,678,000; 32,297,356 class members x $1,500 = $48,446,034,000).

Simply put, this case presented serious challenges — in fact, more challenges than the typical TCPA case in light of the presence of the arbitration agreement and the fact that many Settlement Class Members may have requested to receive alert calls and texts. For these reasons, the $19.40, $58.20, or $77.60 cash awards, which are similar to other results in TCPA settlements, are an excellent result for the Settlement Class.

2.      Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive

"Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). To prepare this case for trial, the parties would need to engage in significant additional discovery, including depositions and expensive, time-consuming expert work. Chase has indicated it will vigorously challenge efforts to obtain data regarding the calls. Before this case was stayed pending mediation, Plaintiffs had filed a motion to compel call data and the motion was fully briefed. The parties also will need to brief Plaintiffs motion for class certification and Chase very likely will file one or more motions for summary judgment. Any judgment obtained in favor of Plaintiffs and the proposed class could be further delayed by the appeal process. This factor favors settlement approval.

3.      Little Opposition to the Settlement and Counsel Support Favor Settlement

The amount of opposition to a settlement among affected parties is another factor district courts should consider in deciding whether to approve a class action settlement. *Synfuel*, 463 F.3d at 653. Only 18 Settlement Class Members have objected to the Settlement and 225 have requested to opt out. In contrast, 349,206 Settlement Class Members timely submitted

potentially valid claims.  (Dowd Decl. ¶ 49, n. 4.)  Class Counsel endorse this settlement and believe it is a great result for the class.  (Dkt. Nos. 107-5 ¶ 19, 107-7 ¶ 12, 107-8 ¶ 8, 107-9 ¶ 7, 107-10 ¶ 10, 107-11 ¶ 14, 107-12 ¶ 16.)

In *Redman*, the Seventh Circuit discounted the lack of objections to the settlement and the opinions of counsel, finding "[t]he magistrate judge's statement that 'fact that the vast majority of class members—over 99.99%—have not objected to the proposed settlement or opted out suggests that the class generally approves of its terms and structure' is naïve as is her basing confidence in the fairness of the settlement on its having been based on 'arms-length negotiations by experienced counsel.'" *Redman*, 768 F.3d at 628.  But *Redman* involved a settlement in which class members received $10 coupons rather than cash awards.  Thus, according to the Seventh Circuit, "[t]he bother of submitting a claim, receiving and safeguarding the coupon, and remembering to have it with you when shopping may exceed the value of a $10 coupon to many class members." *Id.*  The same transaction costs do not exist here.  To receive a cash award, Settlement Class Members only had to check a box and sign their names on claim forms, which they could do either electronically on the settlement website on by filling out a paper copy of the claim form and sending it in.

Further, unlike *Redman*, in which the court found that class counsel negotiated minimal relief for class members in the form of $10 coupons to an electronics store that was financially unstable and on the brink of bankruptcy, here Class Counsel have negotiated a settlement that requires Defendants to pay $34,000,000, $18,330,284 of which will be used to pay Settlement Class Member claims.  Reaching a settlement required multiple mediation sessions with an experienced mediator who is a retired judge.  The concerns in *Redman* do not apply.

4.     The Extent of Discovery Completed and the Stage of the Proceedings

Courts consider the extent of discovery completed and the stage of the proceedings in determining whether a class action settlement is fair, adequate and reasonable.  Courts regularly approve prompt settlements achieved prior to the commencement of formal discovery, especially

where counsel "have conducted a significant amount of informal discovery and dedicated a significant amount of time and resources to advancing the underlying lawsuits." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 350 (N.D. Ill. 2010).

Here, Class Counsel have thoroughly analyzed the factual and legal issues involved. (Dkt. Nos. 107-5 ¶¶ 12–13; 186-1 at 10–12.)  Settlement negotiations were prolonged and hard-fought, spanning over a year.  Before the first mediation, the Parties provided the mediator with extensive written analyses of the factual and legal issues involved with the case.  (Dkt. No. 107-5. ¶ 14.)  As negotiations progressed, the Parties provided the mediator with updates and additional analyses.  (*Id.*)  Counsel's thorough legal and factual analyses informed the Settlement.  (*Id.*)  After the Parties reached an agreement in principle, Plaintiffs served Chase with written discovery requests, seeking confirmation of the number of individuals in the Settlement Class.  (*Id.* ¶ 12.)  Since this information is key to establishing the value Plaintiffs' claims, additional formal discovery was not needed and would have been time and cost intensive. Plaintiffs conducted a second round of confirmatory discovery to confirm that Chase had conducted a reasonable search for all contact information relating to Settlement Class members. (Terrell Decl. ¶ 3.)  This factor weighs in favor of settlement.

5.    The Settlement Is Reasonable in Light of the Requested Attorneys' Fees

In *Redman*, the Seventh Circuit instructed that district court judges must "assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman*, 768 F.3d at 629.  "The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Id.* at 630.

Class Counsel originally filed a fee petition, Dkt. No. 140, which sought $11,000,000 in attorneys' fees and costs, which amounted to 33.33% of the Settlement Fund after subtracting the $1,000,000 Dedicated Cy Pres Distribution.  Class Counsel have revised their request to seek a

total award of attorneys' fees of $9,507,603, or 34% of the Settlement Fund after subtracting the Dedicated Cy Pres Distribution <u>and</u> notice expenses of $5,152,929.51. (*See* Dkt. No. 186-1.)[3] Class Counsel's requested fee is consistent with (1) fees awarded in this Circuit and elsewhere; (2) the contingency fee agreements between the Class Representatives and Class Counsel; and (3) the Seventh Circuit's statements regarding presumptively reasonable fees. The fee also is appropriate in light of the risks Class Counsel faced and the excellent work they performed achieving this settlement.

**D.    The Settlement Comports with *Redman*, *Pearson*, and *Eubank***

Throughout their briefing in support of the settlement, Plaintiffs have explained that the various aspects of the settlement comport with the Seventh Circuit's recent decisions regarding class settlements. Unlike *Eubank* and *Redman*, where the class representatives had either personal or professional relationships with class counsel, the Class Representatives here are actual fiduciaries to the Settlement Class. (*See* Dkt. Nos. 124-2 – 124-8.) The concerns in *Redman*, *Pearson*, and *Eubank*, over needlessly complex claim forms are not present in this case. (*See* Section II.B, *supra*.) Class Counsel's original fee request, which amounted to one-third of the common fund after deducting the Dedicated *Cy Pres* Distribution, was well-supported by numerous Seventh Circuit cases approving a similar percentage. However, Class Counsel have reduced their request in light of recent Seventh Circuit authority. Class Counsel's revised request of $9,507,603, which amounts to 34% of the Settlement Fund after deducting settlement administration expenses and the Dedicated *Cy Pres* Distribution is reasonable. Finally, the clear-sailing clause is not an issue because this case involves a cash, non-reversionary settlement and Class Counsel's fee request is well-supported by the law of this Circuit.

### III. CONCLUSION

The settlement is fair, adequate and reasonable in all respects. Therefore, Plaintiffs respectfully request that the Court grant final approval to the settlement.

---

[3] Due to the increase in notice expenses, the percentage of the fund that Class Counsel seeks now amounts to 34% of the fund.

RESPECTFULLY SUBMITTED AND DATED this 8th day of October, 2015.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@tmdwlaw.com
Michael D. Daudt, *Admitted Pro Hac Vice*
Email:  mdaudt@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

Alexander H. Burke
Email:  aburke@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois  60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

Syed Ali Saeed, *Admitted Pro Hac Vice*
Email:  ali@sllawfirm.com
SAEED & LITTLE, LLP
1433 North Meridian Street, Suite 202
Indianapolis, Indiana  46202
Telephone:  (317) 614-5741
Facsimile:  (888) 422-3151

Gayle M Blatt, *Admitted Pro Hac Vice*
Email: gmb@cglaw.com
CASEY, GERRY, SCHENK, FRANCAVILLA,
   BLATT & PENFIELD LLP
110 Laurel Street
San Diego, California  92101-1406
Telephone:  (619) 238-1811
Facsimile:  (619) 544-9232

Mark D. Ankcorn
Email: mark@ankcorn.com
ANKCORN LAW FIRM, PC
11622 El Camino Real, Suite 100
San Diego, California  92130
Telephone:  (619) 870-0600
Facsimile:  (619) 684-3541

Joshua B Swigart, *Admitted Pro Hac Vice*
Email: josh@westcoastlitigation.com
HYDE AND SWIGART
411 Camino Del Rio South, Suite 301
San Diego, California  92108-3551
Telephone:  (619) 233-7770
Facsimile:  (619) 297-1022

Matthew M. Loker
Email: ml@kazlg.com
KAZEROUNI LAW GROUP APC
2700 North Main Street Suite 1000
Santa Ana, California  92705
Telephone:  (800) 400-6808
Facsimile:  (800) 520-5523

Seyed Abbas Kazerounian, *Admitted Pro Hac Vice*
Email: ak@kazlg.com
KAZEROUNI LAW GROUP APC
245 Fischer Avenue, Suite D1
Costa Mesa, California  92626
Telephone:  (800) 400-6808
Facsimile:  (800) 520-5523

Todd M Friedman
Email: tfriedman@attorneysforconsumers.com
LAW OFFICES OF TODD M. FRIEDMAN PC
369 South Doheny Drive, Suite 415
Beverly Hills, California  90211
Telephone:  (877) 206-4741
Facsimile:  (866) 623-0228

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify:

1.      On October 8, 2015, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the following:

Kenneth Michael Kliebard
Email: kkliebard@morganlewis.com
Tedd Macrae Warden
Email: twarden@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois  60601-5094
Telephone:  (312) 324-1774
Facsimile:  (312) 324-1001

Julia B. Strickland
Email: jstrickland@stroock.com
Lisa M. Simonetti
Email: lsimonetti@stroock.com
Arjun P. Rao
Email: arao@stroock.com
Julieta Stepanyan
Email:  jstepanyan@stroock.com
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East Suite 1600
Los Angeles, California 90067-3086
Telephone:  (310) 556-5800
Facsimile:  (310) 556-5959

*Attorneys for Defendants*

Christopher Perez-Gurri, *Admitted Pro Hac Vice*
Email:  chris@gpglawfirm.com
Alan G. Geffin, *Admitted Pro Hac Vice*
Email:  alan@gpglawfirm.com
GPG LAW
101 NE 3rd Avenue, Suite 1110
Ft. Lauderdale, Florida  33301
Telephone:  (954) 533-5530
Facsimile:  (954) 374-6588

*Attorneys for Objector Tamiqueca Doyley*

Norman T. Finkel, #6183246
Email: norm.finkel@sfnr.com
Daniel E. Beederman, #3121545
Email: daniel.beederman@sfnr.com
William R. Klein, #6185715
Email: bill.klein@sfnr.com
SCHOENBERG, FINKEL, NEWMAN & ROSENBERG, LLC
222 S. Riverside Plaza, Suite 2100
Chicago, Illinois 60606
Telephone: (312) 648-2300
Facsimile: (312) 648-1212

*Attorneys for Objector Tamiqueca Doyley*

Daniel M. Samson, *Admitted Pro Hac Vice*
Email: dan@samsonappellatelaw.com
SAMSON APPELLATE LAW
201 S. Biscayne Boulevard, Suite 2700
Miami, Florida 33131
Telephone: (305) 341-3055
Facsimile: (305) 379-3428

*Attorneys for Objector Tamiqueca Doyley*

C. Jeffrey Thut, #6188219
Email: jeff@roachjohnstonthut.com
ROACH, JOLMSTON & THUT
516 N. Milwaukee Avenue
Libertyville, Illinois 60048
Telephone: (847) 549-0600
Facsimile: (847) 549-0312

*Attorneys for Objector Kristina Lopez*

Jonathan E. Fortman
Email: jef@fortmanlaw.com
LAW OFFICE OF JONATHAN E. FORTMAN, LLC
250 St. Catherine Street
Florissant, Missouri 63031
Telephone: (314) 522-2312
Facsimile: (314) 524-1519

*Attorneys for Objector Steve Purgahn*

Steve A. Miller
Email:  sampc01@gmail.com
STEVE A. MILLER, PC
1625 Larimer Street, No. 2905
Denver, Colorado 80202
Telephone:  (303) 892-9933
Facsimile:  (303) 892-8925

*Attorneys for Objector Steve Purgahn*

John C. Kress
Email:  jckress@thekresslawfirm.com
THE KRESS LAW FIRM, LLC
4247 S. Grand Blvd
St. Louis, Missouri 63111
Telephone:  (314) 631-3883
Facsimile:  (314) 332-1534

*Attorneys for Objector Steve Purgahn*

Joseph Darrell Palmer
Email:  darrell.palmer@palmerlegalteam.com
LAW OFFICES OF DARRELL PALMER PC
2244 Faraday Avenue, Suite 121
Carlsbad, California  92008
Telephone:  (858) 215-4064
Facsimile:  (866) 583-8115

*Attorneys for Objectors Dawn Weaver and Susan House*

2.  I further certify that on October 8, 2015, I mailed by United States Postal Service

the foregoing to the following non CM/ECF participants:

David Schlagel
c/o John J. Pentz
19 Widow Rites Lane
Sudbury, Massachusetts 01776

*Attorneys for Objector David Schlagel*

Michael Narkin
████████████████
Eugene, Oregon  97405

*Objector, Appearing Pro Se*

- 20 -

Sam P. Cannata

███████████

Cleveland, Ohio  44022

*Objector, Appearing Pro Se*

Cindy Bray

████████████

Springfield, Missouri  68504-3336

*Objector, Appearing Pro Se*

Nicholas Owen Gunden
ORVANDI PROPERTY OR LLC

████████████

Walnut, California  91789

*Objector, Appearing Pro Se*

David H. Pierce
DAVID H. PIERCE & ASSOCIATES, PC

███████████████

Sherman Oaks, California  91403-3501

*Objector, Appearing Pro Se*

Ken Murphy

███████████

Denver, Colorado 80210

*Objector, Appearing Pro Se*

Maritza Cabrera

█████████

Miami, Florida  33114-5395

*Objector, Appearing Pro Se*

David D. Dishman

█████████

Swampscott, Massachusetts  01907

*Objector, Appearing Pro Se*

DATED this 8th day of October, 2015.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email:  bterrell@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869

*Attorneys for Plaintiffs*