UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN I. GEHRICH, ROBERT LUND, COREY GOLDSTEIN, PAUL STEMPLE and CARRIE COUSER, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>CHASE BANK USA, N.A. and JPMORGAN CHASE BANK, N.A.,<br><br>      Defendants. | CASE NO. 1:12-CV-5510<br><br>Honorable Gary Feinerman |

**OBJECTOR, TAMIQUECA J. JOHNSON D'OYLE'S MOTION FOR APPROVAL OF INCENTIVE AWARD IN CONNECTION WITH OBJECTION AND FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

Pursuant to any and all applicable Rules of the Federal Rules of Civil Procedure and this Court's local rules, Objector, Tamiqueca J. Johnson D'oyley, moves this Court for approval of incentive award in connection with objection and for an award of attorney's fees and costs. In support thereof, Objector D'oyley states:

## I.     BACKGROUND

**A.     Relevant Facts:**

1.     The proposed settlement in this action included, in relevant part, a $1,000,000 payment to the Consumer Federation of America on behalf the Alert Call Subclass members ("Dedicated *Cy Pres* Distribution").

2.      On August 7, 2014, Plaintiffs filed their motion seeking preliminary approval of the class action settlement [DE 107].

3.      On August 12, 2014, This Court entered an order preliminarily approving the class action settlement [DE 116].

4.      In connection with the proposed settlement, claims forms were transmitted to class members. The claim forms provided that the deadline for submitting objections to the proposed settlement was February 9, 2015.

5.      On February 9, 2015, Objector D'oyley, a member of the Collection Call Subclass, filed her objection to the class action settlement. In relevant part, Objector D'oyley argued that the Dedicated *Cy Pres* Distribution violated established law. Objector D'oyley maintained that the Dedicated *Cy Pres* Distribution, which was diverted from the common settlement fund for the benefit of the Alert Call Subclass, was contrary to law because the known class members, i.e. the Collection Call Subclass, would not be made whole [DE 150].

6.      On October 8, 2015, Defendants filed their response to Objector D'oyley's objection [DE 197]. On that same day, Plaintiffs filed their response to the objection [DE 202].

7.      On October 22, 2015, this Court convened a hearing in the referenced matter. A true and correct copy of the hearing transcript is attached hereto and incorporated herein as "Exhibit A."

8.      At the subject hearing, Objector D'oyley, through her counsel, was the only objector to appear before this Court. At such time, Objector D'oyley's counsel articulated the objection to, among other things, the Dedicated *Cy Pres* Distribution.

9.      Objector D'oyley prevailed at the hearing. The Court agreed that the Dedicated *Cy Pres* Distribution was too high to settle the non-viable claims of the Alert Call Subclass and asked undersigned counsel's opinion about the Court's authority to reallocate the subject distribution.

Undersigned counsel, before directly addressing the reallocation issue, began to argue the excessive amount of the Dedicated *Cy Pres* Distribution. Preemptively, this Court acknowledged that Objector D'oyley had already prevailed:

> THE COURT: Okay. You've already -- I wouldn't -- if I were you, I wouldn't focus on things that **you've already won** because the only thing that can happen is things could get worse for you. I would focus on the question of the reallocation.

10. Thereafter, on November 5, 2015, Defendants filed a statement in support of the Dedicated *Cy Pres* Distribution [DE 218]. Objector D'oyley responded thereto on November 15, 2015 [DE 222].

11. On December 15, 2015, this Court convened a status hearing in the referenced matter. At that status hearing, this Court confirmed that it was going to reallocate a portion of the Dedicated *Cy Pres* Distribution for the benefit of the Collection Call Subclass. Specifically, this Court ordered that the Dedicated *Cy Pres* Distribution be reduced from $1,000,000.00 to $100,000.00. This Court further ordred the the $900,000.00 difference be allocated to benefit the Collection Call Subclass.

12. In light of the foregoing, Objector D'oyley has prevailed and is, therefore, entitled to an incentive award and her counsel is entitled to an award of attorney's fees and costs. The Declarations of Alan G. Geffin and Daniel Samson in support of the present motion are attached hereto and incorporated herein as exhibits B and C respectively.

**B.     Objector D'oyley's Counsel Faced Substantial Risk of Nonpayment**

13. Objector D'oyley's counsel took this matter on a pure contingency basis. Objector D'oyley's counsel has invested substantial resources in the preparation and presentation of Objector D'oyley's objection without any guarantee that they would be compensated for their

time or reimbursed for their expenses. Accepting such representation was highly risky because objections to class action settlements are rarely sustained.

### C. Objector D'oyley's Counsel Performed High-Quality Work

14. Objector D'oyley's Counsel was retained approximately a year ago. During the course of that year, Objector D'oyley's Counsel reviewed and analyzed the proposed settlement agreement, conducted legal research regarding *cy pres* issues, drafted Objector D'oyley's objection, reviewed and responded to Plaintiffs' and Defendants' respective responses to the objection, attended a hearing in person and successfully argued Objector D'oyley's objection thereat, reviewed and responded to Defendants' statement in support of Dedicated *Cy Pres* Distribution, and participated in one status conference by telephone during which this Court reallocated most of the Dedicated *Cy Pres* Distribution for the benefit of the Collection Call Subclass.

### D. Objector D'oyley's Counsel's Fee Request

15. Objector D'oyley's Counsel seek a total award of attorney's fees of $297,000.00, or one-third of the benefit bestowed upon the Collection Call Subclass as a result of Objector D'oyley's successful objection. Objector D'oyley's fee request requests the same percentage of the benefit bestowed upon the class by her counsel, as Plaintiff's counsel requested of the benefit they bestowed on the class. In addition thereto, Objector D'oyley's Counsel requests that they be reimbursed for the costs that have been incurred in connection with the preparation and presentation of the objection. Such costs aggregate to $9,216.53.

16. The requested fee amount is reasonable based upon the benefits achieved for the Collection Call Subclass and the applicable legal standards.

## II. ARGUMENT

A.  **Objector D'oyley Should Receive an Incentive Award**

17. Incentive awards compensating objectors for work done that benefits the class are akin to service awards compensating named plaintiffs for wokd done on behalf of the class. Just as an incentive award is necessary to induce individuals to be class representatives, incentive awards are necessary to induce objectors to scrutinize and challenge improper class action settlement agreements. *See e.g. In re Synthroid Mktg. Litig.*, 264 F. 3d 712, 722 (7th Cir. 2001).

Therefore, Objector D'oyley requests an incentive award equal to or greater than the service awards being requested for each Class Representative ($1,500/Representative).

B.  **Objector D'oyley's Counsel Should be Awarded Attorney's Fees and Costs**

  a.  **Objector D'oyley's Counsel are Entitled to an Award of Fees and Costs**

18. Pursuant to Seventh Circuit precedent, "Broad participation in a class action is encouraged by permitting lawyers who contribute materially to the proceeding to obtain a fee." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. Pricewaterhouscoopers, L.L.P.*, 212 F.R.D. 400, 413 (E.D. Wis. 2002); *Am. Int'l Group, Inc., et. al. v. Ace Ina Holdings, Inc., et. al.*, 2012 WL 651727 (N.D. Ill. 2012). "Therefore, 'an attorney whose actions have conferred a benefit upon a given group or class of litigants may file a claim for reasonable compensation for his efforts.'" *Great Neck Capital*, 212 F..R.D. at 413 (citations omitted). "Faced with such a claim, the court should consider 'whether the efforts of objectors' counsel 'improved' the settlement, 'assisted the court,' and/or 'enhanced the recovery' in any discernible fashion." *Id*. (citations omitted).

19. To be sure, "[a]n objector's work benefits the class only when counsel can show that the work 'produce[d] an improvement in the settlement worth more than the fee' being sought." *American International Group,* 2012 WL at *17. *Accord*, *Mav Mirfasihi v. Fleet Mtg. Corp.*,

551 F. 3d 682 (7th Cir. 2008) (objector's value determined by benefit bestowed on class); *Kolinek v. Walgreen Co.*, 2015 WL 7450759 (N.D. Ill 2015) (objector "must show that his objection has secured a benefit for the class that outweighs the fees he is seeking").

20. Objector D'oyley and her counsel have secured a dramatic benefit for the class. As a result of their efforts, this Court reallocated $900,000.00 from the Dedicated *Cy Pres* to benefit the Collection Call subclass. Objector D'oyley seeks a total award of $306,216.53 for fees and costs. After the $900,000.00 reallocation is reduced by Objector D'oyley's fee/cost request, the actual benefit to the class is $593,783.47. Therefore, Objector D'oyley and her counsel have secured a benefit for the class that outweighs the fees she is seeking.

### b. The Common Fund Doctrine

21. The Common Fund Doctrine applies to the present fee request because litigating the objection resulted in a certain and calculable fund for the benefit of the Collection Call Subclass. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Sutton v. Bernard*, 504 F. 3d 688, 691 (7th Cir. 2007). Specifically, the litigation benefited the Collection Call Subclass by $900,000.00. Therefore, the Common Fund Doctrine applies to the present fee request.

22. Pursuant to the doctrine, it is within this Court's discretion to utilize one of the following two methods when awarding attorney's fees: 1) a percentage of the fund; or 2) lodestar plus a risk multiplier. *See, e.g., Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F. 3d 243, 247 (7th Cir. 2014).

23. In the Seventh Circuit, however, calculating attorney's fees as a percentage of the fund is the preferred method. *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011). It is advantageous because it is relatively simple to administer. *Florin v. Nationsbank of Ga., N.A.*, 34 F. 3d 560, 566 (7th Cir. 1994).

24. In light of the foregoing, the percentage-of-the-fund method should be used here.

### b. Objector D'oyley's Counsel's Requested Fee Award is Reasonable

25. The total money going to class members as a result of Objector D'oyley's objection is $900,000.00. Thus, Objector D'oyley's request for 33% of that fund is presumptively reasonable under *Pearson*.

26. Further, Objector D'oyley's fee request is in line with fee awards in similar cases and with Class Counsel's fee request in this case. *See Taubenfeld v. AON Corp.*, 415 F. 3d 597, 600 (7th Cir. 2005); *Martin v. Dun & Bradstreet, Inc. et. al.*, 1:12-cv-00215 (N.D. Ill. Jan 16, 2014) (Dkt. No. 63); *Cummings v. Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013); *In re Ky. Grilled Chicken*, 280 F.R.D. at 380-81; *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908-09 (S.D. Ill. 2012).

27. In addition to the analogous cases cited above, the retainer agreement between Objector D'oyley and her counsel permits this Court to award the requested fee. In relevant part, the retainer agreement provides:

> If recovery is made by court order either by the District Court's sustaining of the Client's objection, or after a successful appeal, it is understood by the Client that any recovery for herself and any attorney's fee award will be determined by court order.

28. The following additional factors support the present fee request:

   i. Objector D'oyley's counsel assumed a significant financial risk by agreeing to the subject representation because, typically, class action objections are not sustained. Objector D'oyley's counsel assumed such risk with no guarantee of recovery whatsoever. Although Objector D'oyley's counsel was confident in their legal position, there was no assurance that they would prevail.

    ii.      The quality of Objector D'oyley's counsel's performance supports the fee request. Despite the odds of success, Objector D'oyley's counsel was able to obtain an extraordinary result for the Collection Call Subclass. As a result of Objector D'oyley's counsel's efforts, such subclass has been enriched by $900,000.00. Such enrichment should ensure that every eligible class member who fills out a simple claim form will receive more than the $140-$150 range that is estimated in Class Counsel's Motion for Attorney's Fees.

    iii.     Objector D'oyley's counsel has invested a significant number of hours to investigate, research, and successfully argue the objection. The amount of work invested supports awarding the requested fee.

    iv.     The stakes of the case justify the fee requested. As explained above, it is rare for an objection to a class action settlement to be sustained. But for Obejctor D'oyley's counsel's willingness to take on this matter, the Dedicated *Cy Pres* Distribution would not have been reallocated for the benefit of the Collection Call Subclass. This is particularly the case where none of the other objectors even appeared before this Court to argue the issue.

    **c.**    **Lodestar**

29. The common fund doctrine is the appropriate method for determining the amount of attorney's fees that should be awarded to Objector D'oyley's counsel. Therefore, Objector D'oyley adopts and incorporates the various arguments presented by Class Counsel in opposition to the application of the lodestar or a declining marginal fee scale articulated in their supplemental brief in support of class counsel's motion for an award of fees and approval of service awards in connection with settlement [DE 219].

30. However, notwithstanding the foregoing, Objector D'oyley and her counsel are cognizant of this Court's request that Class Counsel submit a memorandum to the Court analyzing *their* fee request under the lodestar method. Therefore, undersigned is providing the Court with a lodestar analysis of the legal services provided by Objector D'oyley's counsel in this matter.

31. As reflected by Objector D'oyley's counsel's detailed time records, they have spent 155.1 hours on the matter. The attached time records reflect the hourly rates which Objector D'oyley counsel charge in the South Florida market. As reflected by the various affidavits filed by class counsel in this matter, those rates are, however, lower than the reasonable rate charged by attorney's litigating class action cases before this Court. In light of those affidavits, Objector D'oyley's counsel's lodestar analysis is based upon an hourly rate of $500.00. Based upon that hourly rate, Objector D'oyley's lodestar is $77,550.00. In addition thereto, Objector D'oyley's counsel have paid $9,216.53 in out-of-pocket expenses.

32. Should the Court depart from this Circuit's ordinary method to establish counsel fees in the class context, and, instead utilize a lodestar analysis, Objector D'oyley maintains that 3 is an appropriate multiplier given the contingent nature of Objector D'oyley's counsel's representation, the low risk of success at the time that the representation was undertaken, and the remarkable achievement that Objector D'oyley's counsel secured for the class.

### III. CONCLUSION

33. BASED UPON THE FOREGOING, Objector D'oyley's counsel respectfully requests that this Court grant their motion and award them $297,000.00 in attorney's fees and $9,216.53 in costs. Additionally, Objector D'oyley requests that this Court approve an incentive award of $1,500.00.