IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN I. GEHRICH, ROBERT LUND, COREY GOLDSTEIN, PAUL STEMPLE and CARRIE COUSER, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>CHASE BANK USA, N.A., and JPMORGAN CHASE BANK, N.A.,<br><br>       Defendants. | NO. 1:12-CV-5510<br><br>Honorable Gary Feinerman |

**PLAINTIFFS' RENEWED MOTION FOR APPEAL BOND AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

## TABLE OF CONTENTS

                                                                                                           **Page No.**

I. INTRODUCTION ............................................................................................................. 1

II. AUTHORITY .................................................................................................................... 2

    A. Standard for Imposing Appeal Bond ..................................................................... 2

    B. Merits of the Appeals ............................................................................................. 3

        1. Objector Schlagel's appeal is meritless ...................................................... 4

        2. Objector Purgahn's appeal is meritless ...................................................... 4

        3. Objector Lopez's appeal is meritless ......................................................... 5

        4. Objector D'Oyley's appeal is meritless ..................................................... 6

    C. Vexatious Nature of the Appeals ............................................................................ 6

        1. The professional objectors' appeals are vexatious..................................... 6

        2. Ms. D'Oyley's appeal is vexatious ............................................................ 9

    D. Financial Ability to Post a Bond ............................................................................ 9

    E. Risk of Nonpayment of Costs ............................................................................... 10

    F. Amount of the Bond .............................................................................................. 10

III. CONCLUSION ................................................................................................................ 11

## TABLE OF AUTHORITIES

Page No.

### FEDERAL CASES

*Adsani v. Miller*,
 139 F.3d 67 (2d Cir. 1998) .................................................................................................. 2

*Allen v. J.P. Morgan Chase Bank, NA*,
 No. 15-3425 (7th Cir. Dec. 4. 2015) .............................................................................. 1, 11

*Berry v. Deautsche Bank Trust Co. Americas*,
 632 F. Supp. 2d 300 (S.D.N.Y. 2009) ............................................................................ 2, 3

*Conroy v. 3M Corp.*,
 No. 00-02810 (N.D. Cal. Aug. 10, 2006) .......................................................................... 11

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ...................................................................... 3

*In re Capital One Tel. Consumer Prot. Act Litig.*,
 80 F. Supp. 3d 781 (N.D. Ill. 2015) ........................................................................ 3, 4, 5, 7

*In re Cardinal Health, Inc. Sec. Litig.*,
 550 F. Supp. 2d 751 (S.D. Ohio 2008) ................................................................................ 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 No. 07-5944, 2012 WL 1319881 (N.D. Cal. Apr. 16, 2012) .............................................. 6

*In re Charles Schwab Corp. Sec. Litig.*,
 No. C 08-01510, 2011 WL 633308 (N.D. Cal. Feb. 11, 2011) .......................................... 7

*In re Ins. Brokerage Antitrust Litig.*,
 Civ. No. 04-5184 (GEB), 2007 WL 1963063 (D.N.J. July 2, 2007) .................................. 2

*In re Lawnmower Engine Horsepower Mktg. & Sales Prac. Litig.*,
 No. 08-md-01999 (E.D. Wis.) ............................................................................................. 8

*In re Polyurethane Foam Antitrust Litig.*,
 Case No. 1:10 MD 2196, 2016 WL 1452005 (N.D. Ohio Apr. 13, 2016) ................... 7-11

*In re Pre-Filled Propane Tank Mktg. & Sales Prac. Litig.*,
 No. 09-md-02086 (W.D. Mo. Nov. 20, 2012) ................................................................... 7

*In re Synthroid Mktg. Litig.*,
  325 F.3d 974 (7th Cir. 2003) .................................................................................. 3, 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 07-md-1827 (N.D. Cal.) ........................................................................................ 7

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
  No. 11-MD-2247 ADM/JJK, 2012 WL 3984542 (D. Minn. Sept. 11, 2012) ............... 2, 3

*In re Wal-Mart Wage & Hour Employ. Prac. Litig.*,
  MDL No. 1735, No. 06-00225, 2010 WL 786513 (D. Nev. Mar. 8, 2010) ......... 7, 10, 11

*O'Keefe v. Mercedes-Benz USA, LLC*,
  214 F.R.D. 266 (E.D. Pa. 2003) .................................................................................. 8

*Roberts v. Electrolux Home Prods., Inc.*,
  Master File Nos. SACV12-1644-CAS(VBKx), CV13-2339-CAS(VBKx),
  2014 WL 4568632 (C.D. Cal. Sept. 11, 2014) ............................................................ 7

*Singleton v. Wulff*,
  428 U.S. 106 (1976) .................................................................................................. 3

*Snell v. Allianz Ins. Co. of N. Am.*,
  No. 97-2784, 2000 WL 1336640 (D. Minn. Sept. 8, 2000) ......................................... 8

*Wilkins v. HSBC Bank Nev., N.A.*,
  2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ................................................................. 3

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ..................................................................................... 3

**FEDERAL RULES**

Fed. R. App. P. 7 ............................................................................................................... 1

**OTHER AUTHORITIES**

Fed. R. App. P. 7, Adv. Comm. Notes .............................................................................. 2

# I. INTRODUCTION

On July 13, 2016, Plaintiffs filed a motion requesting that the Court impose an appeal bond in the amount of $285,000, which includes the taxable costs Plaintiffs estimate they will incur during the pendency of the appeal and post-judgment interest. On July 14, 2016, the Court denied Plaintiffs' motion without prejudice because Plaintiffs had not acknowledged or distinguished a Seventh Circuit Order in *Allen v. J.P. Morgan Chase Bank, NA*, No. 15-3425, Doc. 23 (7th Cir. Dec. 4. 2015) in which the Seventh Circuit reversed a district court's decision to impose a bond that included post-judgment interest. Plaintiffs apologize for this oversight and respectfully renew their motion for a bond in the amount of $5,000, which is consistent with the order in *Allen* and reflects the amount of out-of-pocket costs Plaintiffs will incur on appeal.

Plaintiffs' requested appeal bond is appropriate for all the reasons set forth in Plaintiffs' previous motion. Objectors David Schlagel, Steve Purghan, Kristina Lopez have appealed this Court's Memorandum Opinion and Order (Doc. 241) granting final approval to the class action settlement reached in this action and awarding Class Counsel fees and costs for prosecuting this case. (*See* Docs. 248, 253, 256.) All three objectors are represented on appeal by notorious serial objectors, John Pentz, Jonathan E. Fortman, and Christopher Bandas. These lawyers — none of whom bothered to attend the final approval hearing — have a reputation of objecting to class action settlements across the country for their own personal gain. Because these appeals have not been filed in good faith, Plaintiffs ask this Court to impose an appeal bond pursuant to Federal Rule of Appellate Procedure 7 in the amount of $5,000. The requested bond includes the costs that will necessarily be incurred on appeal. This bond will ensure the payment of those costs to defend against a vexatious and meritless appeal.

Plaintiffs also respectfully request that objector Tamiqueca J. D'Oyley, who has appealed this Court's Memorandum Opinion and Order (Doc. 266) denying her motion for an award of the fees and costs, be jointly and severally responsible for paying the appeal bond. (*See* Doc. 267.) Ms. D'Oyley's appeal is meritless, she has the financial ability to pay the bond, and a high risk

exists that she will not pay the appellee's costs of an unsuccessful appeal. Thus, an appellate bond is necessary to ensure payment of appellate costs to which Plaintiffs will be entitled in the likely event the appeal is not successful.

## II.  AUTHORITY

### A.  Standard for Imposing Appeal Bond.

Federal Rule of Appellate Procedure 7 provides: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The Advisory Committee Notes to the Rule indicate that it leaves "the question of the need for a bond for costs and its amount in the discretion of the [district] court." Fed. R. App. P. 7, Adv. Comm. Notes. The purpose of Rule 7 is to protect an appellee against the risk of non-payment by an unsuccessful appellant. *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998); *see also In re Ins. Brokerage Antitrust Litig.*, Civ. No. 04-5184 (GEB), 2007 WL 1963063, at *2 (D.N.J. July 2, 2007) (observing "[i]n many cases, an appeal bond is necessary to provide some level of security to Lead Plaintiffs who have no assurances that Appellants have the ability to pay the costs and fees associated with opposing their appeals") (quotation and internal marks omitted). Furthermore, bonds are often required to protect plaintiffs and the class from delay "because the appeal effectively stays the entry of final judgment, the claims process, and payment to all class members." *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012) (citation omitted).

The Seventh Circuit has not articulated a specific test, but when deciding whether to impose a bond, courts in other jurisdictions generally consider four factors, including (1) the merits of the appeal; (2) whether the appellant has shown any bad faith or vexatious conduct; (3) the appellant's financial ability to post a bond; and (4) the risk that the appellant will not pay the appellee's costs of an unsuccessful appeal. *See, e.g., Berry v. Deautsche Bank Trust Co.*

*Americas*, 632 F. Supp. 2d 300, 307 (S.D.N.Y. 2009); *Uponor*, 2012 WL 3984542, at *2. Each of these factors supports imposing an appeal bond here.

**B.    Merits of the Appeals.**

On appeal, each objector will be limited to the issues the objector raised in his or her objection. *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 121 (1976). And the objectors must show that this Court abused its discretion when it granted final approval of the settlement. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) (citing *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). The objectors do not have a reasonable expectation of prevailing under this deferential standard, as the record amply supports this Court's thoughtful, detailed rulings.

For example, the Court held that the settlement provides "fair actual cash value" in light of the "legal uncertainty concerning the application of the TCPA, and the time and expense inherent to litigation, proceeding to trial, and obtaining relief." (Doc. 241 at 19.) Indeed, even if Plaintiffs have proceeded to trial they may have recovered nothing due to the large size of the prospective judgment which they would have had to "chase through the bankruptcy courts." (*Id.* at 18–19.)

Ample authority also supports the Court's attorney fee ruling, in which the Court adopted the "sliding scale" approach for determining an appropriate percentage of the fund. (*Id.* at 33.) The Seventh Circuit approved such an approach in *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 980 (7th Cir. 2003) and courts in this district have recently applied it in the TCPA context. *See Craftwood Lumber Co. v. Interline Brands, Inc.*, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 804 (N.D. Ill. 2015); *Wilkins v. HSBC Bank Nev., N.A.*, 2015 WL 890566, at *10–11 (N.D. Ill. Feb. 27, 2015).

Finally, the Court properly denied Ms. D'Oyley's request for attorneys' fees, finding that Ms. D'Oyley did not contribute materially to the settlement class's recovery because the Court did not sustain her objections. (Doc. 266 at 7.) The Seventh Circuit is almost certain to affirm this ruling as well as the Court's decision to overrule the other appellants' objections as well.

1. <u>Objector Schlagel's appeal is meritless.</u>

Objector Schlagel challenged Class Counsel's request for fees, asserting that Class Counsel is entitled to only 10% of the Settlement Fund. (*See* Doc. 143 at 3, Ex. 2; Doc. 192 at 1–2.) Objector Schlagel relied on an "expert report" from Todd Henderson that an objector submitted in *In re Capital One TCPA Litigation*, *supra*. Objector Schlagel neglected to inform the Court that the court in *Capital One* declined to rely on Professor Henderson's analysis, finding that it did not accurately approximate the market rate had a fee been negotiated ex ante. *See Capital One*, 2015 WL 2015 at *18–19.

Instead of relying on expert analysis submitted in a separate action that had not been adopted in that, or any other, action, this Court relied upon *In re Synthroid Marketing Litigation*, 325 F.3d 974 (7th Cir. 2003) and recent persuasive decisions in similar cases from courts in this district. The Seventh Circuit is unlikely to reverse the Court's decision, which resulted in a reasonable attorneys' fee award of 21.35% of the $34 million common fund.

2. <u>Objector Purgahn's appeal is meritless.</u>

Objector Purgahn lodged several objections to the settlement. (Doc. 153.) The Court addressed them all. For example, relying on Seventh Circuit authority, the Court noted that a federal court may release not only those claims alleged in the complaint but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action. Thus, the Court overruled Objector Purgahn's arguments regarding the scope of the release. (Doc. 241 at 22.) The Court also overruled Objector Purgahn's objections to the settlement's cy pres provisions, again relying on established Seventh Circuit case law. (*See generally id*. at 25–29.) The Court made detailed findings regarding the lack of collusion during settlement negotiations, overruling Purgahn's objection that the settlement's "clear sailing" clause warranted rejection of the settlement. (*Id.* at 21.) And the Court correctly noted that "debt relief" is not related to the TCPA allegations in this case and thus overruled Objector Purgahn's objection that the settlement should have included such relief. (*Id.* at 25.)

The Court thoroughly addressed Objector Purgahn's objections to Class Counsel's fee request, including Objector Purgahn's assertion that the Court should base its award on the amount of work performed in the action. (Doc. 241 at 29–39 (describing the basis for using a declining sliding scale approach to fees in this case).)

3. <u>Objector Lopez's appeal is meritless.</u>

Objector Kristina Lopez, who was represented below by Jeffrey Thut and is now represented by both Mr. Thut and Mr. Bandas, will not succeed on her appeal. Ms. Lopez primarily objected to Class Counsel's fee request, erroneously asserting that the Seventh Circuit's "market approach" to attorney fee awards requires a lodestar crosscheck. (*See* Doc. 152.) This Court thoroughly explained why a sliding scale best approximates the market in this case. The Seventh Circuit, which has disapproved using the "lodestar" approach to fee awards, is unlikely to disagree.

Objector Lopez also objected that it was not fair that a person who received one call received the same cash payment as a person who received multiple calls. The Court reasonably overruled this objection, finding individualized inquiries into the number of violations for each class member "either would be administratively unmanageable or, if it were not, would deplete the settlement fund through vastly increased administrative expenses, reducing the amount available to claimants and increasing the delay in receiving their awards." (Doc. 241 at 23 (quoting *In re Capital One*, 80 F. Supp. 3d at 793).)

The Court properly overruled Objector Lopez's objection that a conflict of interest existed amongst the subclasses, finding that "the larger awards available to Chase credit card holders is a product not of inadequate counsel, but of the stronger claims available to credit card holders as compared to Chase bank account customers, who as a condition of opening their accounts agreed to submit disputes to arbitration." (Doc. 241 at 10 (citing cases).) Again, the Seventh Circuit is unlikely to reverse this Court's thoughtful ruling.

        4.      <u>Objector D'Oyley's appeal is meritless.</u>

Objector D'Oyley is also highly unlikely to prevail on appeal. As this Court pointed out in its ruling on Ms. D'Oyley's request for fees, the Court did not sustain her objection. (Doc. 266 at 7.) Under well-established Seventh Circuit authority, which requires an objector to contribute materially to a settlement, she is not entitled to fees. (*See id.* at 5–7.) The Court also properly denied Ms. D'Oyley's request for an incentive award, again noting D'Oyley's lack of contribution to the proceedings and observing the fact the other objectors did not seek a fee means the market rate for an incentive award for objectors in this case is effectively zero. (*Id.* at 10–11.)

Simply put, this Court considered all four appellants' objections and in its sound discretion rejected them all. The appeals are meritless and this factor favors imposing bonds.

**C.**    **Vexatious Nature of the Appeals.**

        1.      <u>The professional objectors' appeals are vexatious.</u>

Christopher Bandas, John Pentz, and Jonathan Fortman are well known in courts across the United States as "professional" or "serial" objectors. In a 2013 study by the Federal Judicial Center, Mr. Bandas was identified as one of the country's most prolific objectors' counsel. (Ex. A.) Mr. Bandas and Mr. Thut were also profiled in a recent article about serial objectors in Reuters, which described Mr. Bandas's attempt to obtain $400,000 from one law firm in order to withdraw his objections (Ex. B), as well as U.S. District Court Judge James Robart's order barring Bandas from practicing in the Western District of Washington for bad faith conduct. (*Dennings v. Clearwire Corp.*, No. 2:10-CV-01859-JLR, Dkt. No. 166 (W.D. Wash. Aug. 20, 2013), attached as Ex. C.). As one court put it, Mr. Bandas "routinely represents objectors purporting to challenge class action settlements and does not do so to effectuate changes to settlements, but does so for his own personal financial gain …." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2012 WL 1319881, at *2 (N.D. Cal. Apr. 16, 2012). Another court noted that Bandas has a "documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when [he] and [his] client[]

were compensated by the settling class or counsel for the settling class." *In re Wal-Mart Wage & Hour Employ. Prac. Litig.*, MDL No. 1735, No. 06-00225, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) (noting that). One objector publicly disassociated himself from Mr. Bandas because his conduct "was putting him at risk of sanctions." *In re Capital One Tel. Consumer Prot. Act Litig.*, Nos. 15-1546 and 15-1490 consolidated with Nos. 15-1514, 15-1546, 15-1586, 15-1639, Doc. 60-2 (Declaration of Theodore H. Frank ¶ 26) (7th Cir. June 10, 2015), attached as Ex. D.

Like Mr. Bandas, Mr. Pentz also is a well-known professional objector. One court observed Mr. Pentz "has been shameless in his quest to extort settlement fees from parties to meritorious class settlements." *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510, 2011 WL 633308, at *2 (N.D. Cal. Feb. 11, 2011) (overruling Mr. Pentz's objection). Another court recently noted that Mr. Pentz seeks to "make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements." *See In re Polyurethane Foam Antitrust Litig.*, Case No. 1:10 MD 2196, 2016 WL 1452005, at *2 (N.D. Ohio Apr. 13, 2016) (quoting *Barnes v. Fleetboston Fin. Corp.*, C.A. No. 01-10395–NG, 2006 WL 6916834, at *1–2 (D. Mass. Aug. 22, 2006)).

Mr. Fortman also is "well-known and recognized by Courts for routinely filing meritless objections to class action settlements." *Roberts v. Electrolux Home Prods., Inc.*, Master File Nos. SACV12-1644-CAS(VBKx), CV13-2339-CAS(VBKx), 2014 WL 4568632, at *15 (C.D. Cal. Sept. 11, 2014) (overruling Fortman's objection and characterizing it as having been "made with an improper motive (to extract a fee and not to benefit the Class)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, Dkt. Nos. 7807 & 9096 (N.D. Cal.) (Fortman, Miller, and Kress appealed the court's order overruling their objection, which they voluntarily dismissed over a year later without having obtained anything for the class); *In re Pre-Filled Propane Tank Mktg. & Sales Prac. Litig.*, No. 09-md-02086, Dkt. No. 311 (W.D. Mo. Nov. 20, 2012) (Miller and Fortman filed notices of appeal of a final approval order overruling their objections, which

they later agreed to voluntarily dismiss without having gained any benefit for the class); *In re Lawnmower Engine Horsepower Mktg. & Sales Prac. Litig.*, No. 08-md-01999, Dkt. Nos. 481 & 486 (E.D. Wis.) (Fortman, Kress, and Miller filed notices of appeal on September 14, 2010, which they voluntarily dismissed in February 2011 without having gained any benefit for the class).

Federal courts have grown "increasingly weary of professional objectors" such as Bandas, Fortman, and Pentz, *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) because they are "a pariah to the functionality of class action lawsuits, as they maraud proposed settlements—not to assess the merits on some principled basis—but in order to extort the parties, and particularly the settling defendants, into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process." *Snell v. Allianz Ins. Co. of N. Am.*, No. 97-2784, 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 2000). Professional objectors cause real harm to the class, because payments from the settlement fund are delayed until the appeals are resolved. An Ohio federal district court judge noted:

> [C]lass actions … attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors ….

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008).

The objectors' appeals are meritless. Moreover, none of the objectors or their counsel called or otherwise contacted Class Counsel to meet and confer as to their objections, and none appeared at the final approval hearing. Indeed, Mr. Bandas did not even participate in the proceedings below, instead appearing through Mr. Thut. To prevent abuse of appellate and class action procedure, Class Counsel requests that this Court order Schlagel, Purgahn, and Lopez to jointly and severally post an appeals bond in accordance with Federal Rule of Appellate Procedure 7. *See, e.g., In re Polyurethane Foam Antitrust Litig.*, 2016 WL 1452005 at *3

(imposing appeal bond and finding objectors' conduct "resembles scavenger ants on a jelly roll, scrambling to extort money from the approved settlements"); *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 294–95 (S.D.N.Y. 2010) (professional objectors' status taken into account in determining that appeal was vexatious, and thus appeals bond was warranted); *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) (upholding imposition of appeal bond under Rule 7 based on possibility that appeal was frivolous).

   2. <u>Ms. D'Oyley's appeal is vexatious.</u>

  Ms. D'Oyley's counsel do not appear to have as lengthy a history objecting to class action settlements. However, their conduct in this action has also been vexatious. Although the Court did not uphold her objection, Ms. D'Oyley did not appeal the Court's decision on the merits. Instead, she has appealed only the Court's decision to deny her request for nearly $300,000 in attorneys' fees and an incentive award of $1,500. Ms. D'Oyley failed to cite a single case awarding hundreds of thousands of dollars to an objector who did not actively participate in the underlying litigation or in settlement negotiations let alone such a fee award to an objector whose objection the Court did not sustain. Ms. D'Oyley's appeal, which will take money from the class and place it in the pockets of her attorneys, is as vexatious as the professional objectors' appeals.

 **D.** **Financial Ability to Post a Bond.**

  Unless an appellant demonstrates otherwise, she or he is presumed to be financially able to post an appeal bond. *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 293; *In re Polyurethane Foam Antitrust Litig.*, 2016 WL 1452005 at *4 (requiring objectors to post bond where objectors failed to demonstrate that a bond would make it impossible to pursue their appeal). Accordingly, the objectors and their attorneys are presumed to be able to post an appeal bond in this matter. More importantly, since three of the four objectors are represented by attorneys who frequently fly and object in class actions across the United States, the appeal bond

requirement should be an expected an reasonable expense. Ms. D'Oyley's counsel, who reside in Florida, flew to Chicago at least twice to attend hearings on the settlement in the district court.

Mr. Bandas in particular should be able to pay an appeal bond. In a declaration submitted in the *Capital One* litigation, objector Theodore Frank stated that Mr. Bandas paid Mr. Frank hundreds of thousands of dollars for Mr. Frank's work on various objections. *See* Ex. D ¶ 30. If Mr. Bandas could offer to pay Mr. Frank, he should have sufficient funds to pay a bond.

### E. Risk of Nonpayment of Costs.

Requiring the objectors to post appeals bonds is necessary. Mr. Bandas previously failed to comply with an order imposing a bond. *See In re Wal-Mart Wage and Hour Litig.*, 2010 WL 2132094, at *1–2 (sanctioning Mr. Bandas and his objector client for failing to comply with the court's order to post an appeal bond). In that case, the court had ordered the appeal bond due to the "frivolous" nature of the appeal, which was "tantamount to a stay of the Judgment entered by [the] Court on November 2, 2009 approving the comprehensive class settlement in this case which provides fair compensation to millions of class members, as well as injunctive relief ensuring against further loss to persons similarly situated." *Id.* at *2. According to the order imposing sanctions, Mr. Bandas and his client were jointly and severally required to "pay to the Plaintiffs' Settlement Fund the sum of $200 per day for each of the intervening days between March 30, 2010 and May 18, 2010, or a total of $10,000" as a sanction for their failure to comply with the court's order requiring them to post an appeal bond. *Id.* at *1.

Here, it is likely that Mr. Bandas and his fellow objectors will fail to pay appellate costs when their appeals fail. An appeal bond is necessary to prevent this conduct.

### F. Amount of the Bond.

Plaintiffs respectfully request that the objectors be required to post a bond in the amount of $5,000. This amount includes the estimated cost to the class of $5,000 in connection with preparation of the record on appeal and transcript costs. Plaintiffs respectfully request that the objectors be held jointly and severally liable for the cost of posting this bond. *See In re*

*Polyurethane Foam Antitrust Litig.*, 2016 WL 1452005 at *8 (requiring objectors to be jointly and severally responsible for posting an appeal bond and citing cases). For the following reasons, such an amount is necessary and appropriate.

When determining the appropriate amount of an appeal bond, federal courts consider a range of potential costs that includes taxable costs under Federal Rule of Appellate Procedure 39. *See id.* at *5 (citing cases). These costs include (1) preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal. *Id.* Class Counsel estimate these costs to be approximately $5,000.

In total, the objectors should be required to post a bond in the amount of $5,000, which includes $5,000 in potential costs pursuant to Rule 39(e). Such an amount is well within the range of bonds that have been ordered in other cases. *See, e.g., In re Wal-Mart*, 2010 WL 786513, at *2 (requiring Mr. Bandas and his client to post a $500,000 appeal bond); *Conroy v. 3M Corp.*, No. 00-02810 (N.D. Cal. Aug. 10, 2006), Dkt. No. 265 (requiring objectors and Mr. Bandas to jointly and severally post an appeal bond of $431,167); *Allen v. J.P. Morgan Chase Bank, NA*, No. 15-3425, Dkt. No. 23 (7th Cir. Dec. 4, 2015) (unpublished) (imposing bond in the amount of $5,000).

### III. CONCLUSION

For all the above reasons, Plaintiffs respectfully request that the Court require the objectors to jointly and severally post an appeal bond of $5,000 by no later than August 19, 2016.

RESPECTFULLY SUBMITTED AND DATED this 14th day of July, 2016.

TERRELL MARSHALL LAW GROUP PLLC


By:  /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 319-5450

Alexander H. Burke
Email:  aburke@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois  60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

Syed Ali Saeed, *Admitted Pro Hac Vice*
Email:  ali@sllawfirm.com
SAEED & LITTLE, LLP
1433 North Meridian Street, Suite 202
Indianapolis, Indiana  46202
Telephone:  (317) 614-5741
Facsimile:  (888) 422-3151

Gayle M Blatt, *Admitted Pro Hac Vice*
Email: gmb@cglaw.com
CASEY, GERRY, SCHENK, FRANCAVILLA,
  BLATT & PENFIELD LLP
110 Laurel Street
San Diego, California  92101-1406
Telephone:  (619) 238-1811
Facsimile:  (619) 544-9232

Mark D. Ankcorn
Email: mark@ankcorn.com
ANKCORN LAW FIRM, PC
11622 El Camino Real, Suite 100
San Diego, California  92130
Telephone:  (619) 870-0600
Facsimile:  (619) 684-3541

Joshua B Swigart, *Admitted Pro Hac Vice*
Email: josh@westcoastlitigation.com
HYDE AND SWIGART
411 Camino Del Rio South, Suite 301
San Diego, California 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Matthew M. Loker
Email: ml@kazlg.com
KAZEROUNI LAW GROUP APC
2700 North Main Street Suite 1000
Santa Ana, California 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Seyed Abbas Kazerounian, *Admitted Pro Hac Vice*
Email: ak@kazlg.com
KAZEROUNI LAW GROUP APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Todd M Friedman
Email: tfriedman@attorneysforconsumers.com
LAW OFFICES OF TODD M. FRIEDMAN PC
369 South Doheny Drive, Suite 415
Beverly Hills, California 90211
Telephone: (877) 206-4741
Facsimile: (866) 623-0228

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on July 14, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Kenneth Michael Kliebard
>Email: kkliebard@morganlewis.com
>Tedd Macrae Warden
>Email: twarden@morganlewis.com
>MORGAN LEWIS & BOCKIUS LLP
>77 West Wacker Drive
>Chicago, Illinois  60601-5094
>Telephone:  (312) 324-1774
>Facsimile:  (312) 324-1001
>
>Julia B. Strickland
>Email: jstrickland@stroock.com
>Lisa M. Simonetti
>Email: lsimonetti@stroock.com
>Arjun P. Rao
>Email: arao@stroock.com
>Julieta Stepanyan
>Email:  jstepanyan@stroock.com
>STROOCK & STROOCK & LAVAN LLP
>2029 Century Park East Suite 1600
>Los Angeles, California 90067-3086
>Telephone:  (310) 556-5800
>Facsimile:  (310) 556-5959
>
>*Attorneys for Defendants*
>
>Christopher Perez-Gurri, *Admitted Pro Hac Vice*
>Email:  chris@gpglawfirm.com
>Alan G. Geffin, *Admitted Pro Hac Vice*
>Email:  alan@gpglawfirm.com
>GPG LAW
>101 NE 3rd Avenue, Suite 1110
>Ft. Lauderdale, Florida  33301
>Telephone:  (954) 533-5530
>Facsimile:  (954) 374-6588
>
>*Attorneys for Objector Tamiqueca D'Oyley*

Norman T. Finkel, #6183246
Email: norm.finkel@sfnr.com
Daniel E. Beederman, #3121545
Email: daniel.beederman@sfnr.com
William R. Klein, #6185715
Email: bill.klein@sfnr.com
SCHOENBERG, FINKEL, NEWMAN & ROSENBERG, LLC
222 S. Riverside Plaza, Suite 2100
Chicago, Illinois 60606
Telephone: (312) 648-2300
Facsimile: (312) 648-1212

*Attorneys for Objector Tamiqueca D'Oyley*

Daniel M. Samson, *Admitted Pro Hac Vice*
Email: dan@samsonappellatelaw.com
SAMSON APPELLATE LAW
201 S. Biscayne Boulevard, Suite 2700
Miami, Florida 33131
Telephone: (305) 341-3055
Facsimile: (305) 379-3428

*Attorneys for Objector Tamiqueca D'Oyley*

C. Jeffrey Thut, #6188219
Email: jeff@roachjohnstonthut.com
ROACH, JOLMSTON & THUT
516 N. Milwaukee Avenue
Libertyville, Illinois 60048
Telephone: (847) 549-0600
Facsimile: (847) 549-0312

*Attorneys for Objector Kristina Lopez*

Jonathan E. Fortman
Email: jef@fortmanlaw.com
LAW OFFICE OF JONATHAN E. FORTMAN, LLC
250 St. Catherine Street
Florissant, Missouri 63031
Telephone: (314) 522-2312
Facsimile: (314) 524-1519

*Attorneys for Objector Steve Purgahn*

Steve A. Miller
Email: sampc01@gmail.com
STEVE A. MILLER, PC
1625 Larimer Street, No. 2905
Denver, Colorado 80202
Telephone: (303) 892-9933
Facsimile: (303) 892-8925

*Attorneys for Objector Steve Purgahn*

John C. Kress
Email: jckress@thekresslawfirm.com
THE KRESS LAW FIRM, LLC
4247 S. Grand Blvd
St. Louis, Missouri 63111
Telephone: (314) 631-3883
Facsimile: (314) 332-1534

*Attorneys for Objector Steve Purgahn*

Joseph Darrell Palmer
Email: darrell.palmer@palmerlegalteam.com
LAW OFFICES OF DARRELL PALMER PC
2244 Faraday Avenue, Suite 121
Carlsbad, California 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

*Attorneys for Objectors Dawn Weaver and Susan House*

DATED this 14th day of July, 2016.

                  TERRELL MARSHALL LAW GROUP PLLC

                  By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
                     Beth E. Terrell, *Admitted Pro Hac Vice*
                     Email: bterrell@terrellmarshall.com
                     936 North 34th Street, Suite 300
                     Seattle, Washington 98103-8869

                  *Attorneys for Plaintiffs*